1
```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
```

<pre>
 1                     UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
 3                     Case 10-21612-CIV-Altonaga
 4
    PALADIN SHIPPING, Ltd. and
 5  ANATOLIY CHABAN,
 6                       Plaintiffs,
 7                                   MIAMI, FLORIDA
         vs.
 8                                   MARCH 31, 2011
    STAR CAPITAL FUND, LLC.,
 9  and LEON GOLDSTEIN,
10                       Defendants.
    ------------------------------------------------------------
11
                     TRANSCRIPT OF STATUS CONFERENCE
12             BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                     UNITED STATES DISTRICT JUDGE
13
    APPEARANCES:
14
    FOR THE PLAINTIFF:
15                                  GARY S. PHILLIPS, ESQ.
                                    Phillips Cantor & Berlowitz, P.A.
16                                  4000 Hollywood Boulevard,
                                    Suite 375-South
17                                  Hollywood, FL 33021 - 954.966.1820
                                    gphillips@phillipslawyers.com
18  FOR THE DEFENDANTS:
                                    CHARLES H. LICHTMAN, ESQ.
19                                  Berger Singerman
                                    Las Olas Centre II
20                                  350 East Las Olas Boulevard,
                                    Suite 1000
21                                  Fort Lauderdale, FL 33301
                                    954.525.9900
22                                  clichtman@bergersingerman.com
23                                  MICHAEL I. BERNSTEIN, ESQ.
                                    Michael I. Bernstein, P.A.
24                                  1688 Meridican Avenue, Ste. 418
                                    Miami Beach, FL 33139
25                                  305.672.9544
                                    michael@miblawoffice.com
</pre>

REPORTED BY:

                             BARBARA MEDINA,
                             Official United States Court
                             Reporter
                             Wilkie D. Ferguson, Jr.
                             United States Courthouse
                             400 North Miami Avenue, Ste. 12-2
                             Miami, FL   3128 -   305.523.5518
                                  (Fax) 305.523.5519
                        barbara.medina127@gmail.com
                             - - - -

                    TABLE OF CONTENTS

Page

Reporter's Certificate .................................. 27


                    INDEX TO EXHIBITS

Exhibits                      Marked for        Received
                              Identification      in
Evidence

Description                   Page      Line    Page    Line


                    CITATION INDEX

                                                Page

               SIDEBAR CONFERENCE INDEX

Descriptions                                    Page

               ADMINISTRATIVE CONVENTIONS:

          When counsel does not identify themselves each time

they address the Court during a telephone conference, the

industry-standard speaker identification is indicated by

chevrons, i.e., >>>:

3

1      THE COURT:  Paladin Shipping and Leon Goldstein.

2  Could I have counsel state your appearance, please?

3      MR. PHILLIPS:  Good morning, Your Honor --  good

4  afternoon.  Gary Phillips, on behalf of Paladin and Michael

5  Chaban.

6      MR. BERNSTEIN:  Michael Bernstein, Your Honor, on

7  behalf of myself and my firm.

8      MR. LICHTMAN:  Chuck Lichtman, Berger Singerman,

9  counsel for the defendants.  I have with me Leon Goldstein, to

10  my left, and Oleg Firer, as well.

11      THE COURT:  Please be seated.

12      You all know why you're here and my concern with

13  regard to the motion for a second three-month postponement of

14  all of the dates in the scheduling order and related to the

15  representations made regarding Mr. Bernstein, and I understand

16  that there's an outstanding amount, Mr. Goldstein, that you owe

17  your former lawyer.

18      So, I'll hear from counsel.

19      MR. LICHTMAN:  May I use the podium?

20      THE COURT:  Certainly.

21      MR. LICHTMAN:  I wish to be careful how I make my

22  presentation this morning so as to not waive privilege, but

23  there's a lot to talk about.

24      I think there's some complicating factors in the case

25  and I think that at the end if the Court would indulge me, I

4

1    have a proposal that might be acceptable to the Court.

2          If there is a retaining lien on the file -- I'm

3    familiar with retaining lien law.  My view is I can't write the

4    law.  I can't change the law.  Sometimes I don't think the law

5    is just.  I think this is one of those times, and that's

6    because being familiar, very familiar with Mr. Goldstein's

7    position on why he does not want to pay for access to the file,

8    I, frankly, don't blame him at all, Judge.

9          I've spent time with the client and would make the

10   following proffer, if the Court would accept:  that is, if

11   Mr. Goldstein was to testify, he would tell the Court that he

12   personally never signed an engagement letter in this case, to

13   the best of his knowledge, and I would represent Mr. Firer has

14   told me the same.  Star Capital did sign an engagement letter.

15         He really has no explanation or understanding what

16   happened in the case while Mr. Bernstein was his counsel.  He

17   told me that he had a very firm understanding.  I've confirmed

18   this with him repeatedly.  It was what caused me to write my

19   motion and verify it, that he did not take discovery.  I did

20   not learn until yesterday, as you know, in the midst of,

21   literally, that hearing, that there was discovery.  I still

22   have not seen it.

23         He did, after I raised with him the issue of signing

24   interrogatories, tell me that, "Oh, yes" -- actually, Mr. Firer

25   remembered that Mr. Goldstein had signed the interrogatories,

5

1   but at the time that occurred, it was because an associate or

2   colleague of Mr. Bernstein named Brian called the day before

3   the interrogatories were due and said if we don't get these

4   interrogatories in tomorrow a default will be taken.

5        That's sort of a good jumping-off point because the

6   client also told me that he was unaware of three what I view to

7   be very disturbing orders that were entered in the case.

8        Docket entry 32 was an order by Magistrate Brown where

9   he issued an order granting a motion to show cause with an

10  order to show cause for sanctions early in the case and instead

11  of complying on the issue of providing discovery, which I think

12  should have happened and should have happened sooner, not to

13  the point of filing of that motion, he then, Mr. Bernstein,

14  filed a motion to reconsider which was then denied and that led

15  to sanctions and an order awarding sanctions which my client

16  was not aware of, and that alone would be a red flag for any

17  client to say, "What's going on her?"

18       The second one was the Court, at docket entry 57, on

19  November 29th entered an order to show cause compelling

20  Mr. Bernstein to file an Answer to the Second Amended Complaint

21  and the client was not aware of that either, and what is

22  equally disturbing to now having a lawyer be subject to two

23  orders to show cause in a case in less than 60 days is that

24  having read the order -- and I am going to address with you the

25  prospect for allowing me to amend affirmative defenses -- if

1   you take a look at it -- and I suspect that Mr. Phillips will

2   get to it -- you will see it's, you know, just, quite candidly,

3   woefully inadequate in terms of asserting affirmative defenses

4   and a motion to strike --  I'm here today to be candid with the

5   Court -- and would probably be successful for stating pure

6   conclusions and not a single fact.

7        As I addressed that with the client, without waiving

8   privilege, it became abundantly clear that the principal

9   defense that exists in the case respecting the tender of the

10  boat to pay back this debt was not even raised.

11       Then we get to an order to show cause that Your Honor

12  entered on December 13th for failure to file the corporate

13  disclosure statement.  So, as I sit there and I go over the

14  case with the client, the client is really beside himself, and

15  I could get into the four other cases that I am substituting in

16  for Mr. Bernstein and the things that are going there.  I'm not

17  sure that for purposes of today it's overly relevant, but I

18  will tell you this:  Having had massive experience in

19  attorney's fee litigation, including -- and I'm not here to

20  tout myself -- serving as the expert witness in the largest

21  attorney fee sanction case in the history of the State of

22  Florida, the FPS versus Motorola case where Willie Gary was

23  asking for something like a billions dollars before a Judge in

24  Broward.  I know what the standard is.  I sit here.  I manage a

25  number of attorneys at Berger Singerman and look at their bills

1  every month.

2        With respect to an engagement I've got going right now

3  for Mr. Stettin, as trustee for Rothstein, Rosenthal & Adler, I

4  know what time looks like and doesn't look like when I see a

5  bill, and when they tell me what the bill is and when I see the

6  lack of work, whether he did or didn't do discovery requests,

7  and when I see the caliber of the work, I could only say to my

8  client, "I'm sympathetic.  I get it."

9        THE COURT:  What is the fee amount?

10       MR. LICHTMAN:  The fee amount is about 25,000.

11       I will tell you that Mr. Goldstein went to see him

12  right after my retention because I had a series of emails with

13  Mr. Bernstein and said the easiest thing to do is to figure out

14  how you could settle this.  So, he went to see him and offered

15  15,000 and Mr. Bernstein said "No" and Mr. Goldstein said,

16  "Fine.  Forget it."

17       Apparently, a couple of days later Mr. Bernstein

18  called him back and said "I'll take the 15."  By then I had

19  been involved in some of these other matters and at that point

20  I think Mr. Goldstein said, "I'm not paying you," and I don't

21  wish to be morose when I say that we have some thoughts on some

22  other things that will necessarily have to have with respect to

23  professional conduct, but I, generally, don't blame him.

24       Now, here's another aspect in the case, and I mean to

25  be serious and I'm not trying to get on the soap box as I tell

1   you this version of the story:  Mr. Goldstein became a U.S.

2   citizen roughly about 10 years ago.  If a citizen of the United

3   States hired a lawyer and that lawyer was disbarred for

4   stealing from him once, that would be an anomaly because that

5   kind of conduct does not generally occur.  Great misfortune.

6   Mr. Goldstein has had that happen twice.  Okay?  Two different

7   lawyers, two different sets of transactions, disbarred lawyers.

8   He then gets to the point now he has got Mr. Bernstein and the

9   issues we have with him.

10          On the other hand, we have a Russian plaintiff that is

11   a little bit curious about what our system of justice is.  I

12   look up at you and I realize that I wish I knew why my

13   docketing department did not get into my calendar timely a

14   reminder to me that I should have filed a motion within,

15   probably, days of being retained asking for an extension then.

16   I'm going to guess it's because of some glitch.  I don't have

17   an explanation.  In a perfect world, that motion would have

18   been filed right away.  Just like yesterday Mr. Phillips owned

19   the issue with his affidavit, I own that, and that's

20   unfortunate and I apologize.

21          The bottom line is I've got a client here who

22   genuinely -- and we try not to be emotionally involved with our

23   clients and what their problems are, but I hear his stories of

24   what he has gone through with these other lawyers, I see what

25   has happened in this case and other cases that I'm stepping

1  into, some of which are not Mr. Bernstein's cause, and I say to

2  myself -- and Mr. Phillips has known me a long time.  He'd tell

3  you this is just how I am, and I'm not trying to make this

4  about me, but I feel bad for this guy.  I want to do good for

5  him.  I want to give him the opportunity for a full, fair trial

6  so he could see that the system is not what he has been

7  accustomed to.

8        I don't really care what you do with Mr. Bernstein.  I

9  don't honestly think you have the jurisdiction to compel him on

10 a retaining lien to settle with my client, and I know that he

11 called my client today and asked to settle and I've asked my

12 client point blank, I said, "Don't talk to him.  I will talk to

13 him."

14       I would submit that -- I think you might have caught

15 that paragraph in my motion for continuance about the

16 relationship I have with Mr. Phillips.  It's a unique

17 relationship among lawyers.  You've got two good lawyers that

18 want to come in here and want to do the right thing, that

19 actually want to have fun at that trial, something you don't

20 get to have very often.

21       If you can give us a limited opportunity for the

22 smallest amount of discovery, I think we can get this case on

23 track and, you know, show the litigants what the system is like

24 and also please the Court.

25       THE COURT:  Mr. Lichtman, there is also another line

1  that caught my attention as well as the line that Mr. Phillips

2  clarified and retracted.  The other line that caught my

3  attention is that Mr. Bernstein has refused to communicate with

4  new counsel.  Would you elaborate on that?

5       MR. LICHTMAN:  Yes.  The email trail on that issue

6  was,  basically, as follows, Judge:  And you have to forgive

7  me, I've not been in my office since the call yesterday except

8  to run in, have a very brief meeting and run out, so I don't

9  have duplicate copies.

10       I wrote Mr. Bernstein on February 11th and I

11  indicated, "As you know, I've taken over responsibility for the

12  defense of this matter.  I've asked for your files.  You

13  indicate that you had a retaining lien because you had not been

14  paid."  I told him I appreciated his position, "and I'm sure

15  you appreciate mine.  There's a discovery cut-off and, as I

16  understand it, you conducted zero discovery."  That is what I

17  had heard from my client at the time.

18       Okay?  "Whatever you have in your files is important.

19  I can't get stuff out of the court docket because you don't

20  file discovery.  Also, please send me your bill forthwith so I

21  can expedite attempting to get you paid.  Thank you in advance

22  for your cooperation."

23       He wrote back, "No, you are incorrect.  Discovery was

24  conducted by our office.  If Mr. Goldstein would like to pay

25  his bill, he is now in possession of it for quite some time and

1    we would welcome payment.  If not, he is only prejudiced as a

2    result of his own acts or omissions, as well as deliberately

3    false statements made to our office that he would be welcomed

4    to bring to your attention and I assume he will."

5            I then wrote back and said, "As I said, please send me

6    the bill.  Since the Federal Rules do not permit filing

7    discovery, out of professional courtesy, will you advise me of

8    what written discovery you took and provide me with those

9    filings?" and there was one more here.  I had one more email.

10   I don't know where it is this second, but it was, basically, to

11   the effect that the clients' representative came to see him and

12   he did not communicate with me, would not communicate with me

13   and I've realized after enough time that, you know, what am I

14   going to do?  Beat my head against the wall?  He doesn't want

15   to waive his lien.  I can't make him waive his lien.  He

16   doesn't want to talk to me.  I can't make him talk to me.

17           THE COURT:  How do you know he didn't want to talk to

18   you?

19           MR. LICHTMAN:  Because he didn't.  I asked him out of

20   courtesy, "Please just send me at least the discovery that

21   would be typically filed if the rule didn't say 'Don't file

22   discovery,'" and his response was, "No."  I didn't get it.

23           I've come into court today and still from nobody have

24   seen this discovery, whether it was the other side's or ours.

25   I don't know -- I think I remember hearing yesterday -- forgive

12

1    me if I'm wrong -- there was a request for production of

2    documents, interrogatories that were sent to our side.  I have

3    no idea what was signed.  Mr. Goldstein told me when I met with

4    him today that, you know, he got this call from this associate

5    of Mr. Bernstein's and he said to me, he goes, "I'm not sure

6    what I answered.  I know" -- what was his name?

7            THE COURT:  Brian.

8            MR. LICHTMAN:  Thank you.

9            -- "that Brian didn't know the case," and that gets me

10   concerned because I don't know whether or not Mr. Bernstein --

11   excuse me -- whether Mr. Goldstein actually comprehended the

12   questions correctly.  I know that he has a hearing issue.  In

13   fact, he told me his hearing is bothering him even today.

14           I don't know what discovery, likewise, Mr. Bernstein

15   sent out.  I will tell you that with respect to the pleadings

16   that I saw, although I thought one of his motions to dismiss

17   was pretty well-founded and it was good to see that that had

18   initially gotten granted, the Answer is woefully inadequate.  I

19   have a very low feeling that it is not of the caliber that

20   would be needed in this case that would get to the essence of

21   damages and liability.

22           THE COURT:  Thank you.

23           Mr. Bernstein, I'd like to hear from you.

24           MR. BERNSTEIN:  Thank you, Your Honor.

25           Your Honor, there are a couple of items to address and

1  I don't even know where to start with Mr. Lichtman's litany of

2  claims.

3          One is I'd be happy to give my full records to the

4  Court.  I don't know what conversations he's talking about.  I

5  have not spoken to Mr. Goldstein in a significant amount of

6  time.  I have not made any propositions to him.  I have not

7  spoken to him.  I don't know what purported conversations he's

8  alluding to.

9          I'll start at the beginning, Your Honor.  In this

10 particular case, I stand by the work my firm did.  If

11 Mr. Lichtman feels that Berger Singerman can produce a better

12 product, that's his prerogative.  However, I checked before the

13 issue for the retaining lien and yesterday after the hearing I

14 contacted the Ethics Board again and they confirmed under

15 opinion 88-11, a discovery product is subject to a retaining

16 lien, and it would be Mr. Lichtman's position to come into this

17 court and advise that he tried every possible means to obtain

18 the information from another source and could not, and if he

19 did that, we would provide him those documents.

20         However, standing here today, and as part of the

21 verified motion -- and I spoke with Mr. Lewis -- he has not

22 made one attempt since he came into this case since the

23 beginning of January to contact former plaintiff's counsel or

24 current plaintiff's counsel until recently to get documents

25 related to the case.

1          Mr. Craig Lewis has all the documents in his

2    possession and would have easily turned it over to him.

3    Current counsel even clarified yesterday that he has the

4    documents in his possession.

5          Mr. Lichtman gets up here and is crying how he doesn't

6    have the documents.  Yet, he has not shown one evidence to this

7    Court how he made any attempt in almost the last three months

8    to try to obtain the documents from other parties that have

9    them other than our office and then come to us and say,

10   "Mr. Bernstein, we can't get them.  They don't have them."

11         In addition, he talked about emails that we had.  At

12   no time -- at any time Mr. Lichtman contacted me by email, I

13   responded.  Any time he called my office, we responded.  The

14   last communication from Mr. Lichtman's office was in the middle

15   of February, February 17th or 18th.  This is almost a month and

16   a half later.  Mr. Lichtman did nothing on this case.

17         Your Honor has a copy of the order granting our

18   withdrawal of counsel to Mr. Goldstein back on January 10th.

19   Okay?  We only appeared on behalf of Mr. Goldstein at the end

20   of November.  We represented Mr. Goldstein for less than two

21   months.  Mr. Goldstein did nothing from January 10th until the

22   end of March.  Mr. Lichtman was retained by Mr. Goldstein at

23   the mediation on January -- I believe it was January 18th --

24   and not only when the Court had issued the order requiring us

25   to appear at the mediation, we went down to the mediation.  We

 1   weren't paid for it.  Mr. Goldstein sent me an email before
 2   saying I should not appear at the mediation.  He refused to
 3   allow me to attend the mediation.  I went down to the
 4   mediator's office and Mr. Lichtman appeared on the phone at the
 5   mediation.
 6          At that time, Mr. Lewis was there.  The client was
 7   here from the Ukraine.  Mr. Lichtman could have done a litany
 8   of things, including deposing him while he was in the country
 9   during that week.  He did not nothing.  He did nothing in
10   January.  He did nothing in February.  He did nothing in March
11   until a week ago when he filed a verified motion.  Despite the
12   fact that I wrote in my email that we had conducted discovery,
13   he still blatantly made a false statement to the Court saying
14   "No discovery, to my knowledge, was conducted."
15          He could have said, "Mr. Bernstein said discovery was
16   conducted and didn't provide it."  He did say we weren't
17   communicating with him, which wasn't true.  He didn't say
18   Mr. Bernstein acknowledged discovery.  He said zero discovery
19   was done, which is a blatant falsehood.
20          Now, he may not like the discovery we did.  He may
21   feel he could do it better.  That's neither here nor there.
22   Lawyers across the country can criticize each other's practice
23   techniques as to whether they're good or bad.  That doesn't
24   mean that our office did not conduct discovery.  We did as much
25   discovery as plaintiff's former counsel.  In the process, we

1  exchanged admissions, interrogatories and we got a response to

2  our demand for production.  That was with regard to our

3  representation of Star Capital.

4      Now, as we talk about Star Capital, we deal with what

5  Mr. Lichtman first said again.  I would love to have

6  Mr. Goldstein on the stand.  Mr. Goldstein not only signed a

7  conflict waiver, but a retainer agreement.  I'd be happy to

8  provide that to the Court to show that they're, again,

9  blatantly misleading the Court.  Mr. Lichtman has no

10  correspondence inquiring whether or not Mr. Goldstein signed a

11  retainer.

12      Again, he gets up before this Court at this hearing to

13  throw me under the proverbial bus, trying to claim this is all

14  Mr. Bernstein.  Yet I didn't hear him say anything about what

15  he and his client did for the last three months to prepare for

16  trial before the discovery cut-off period.  They did nothing.

17  Okay?

18      At the inception of the case, from the very beginning

19  when we came in with the motion, which I appreciate his

20  acknowledgment that he thinks that it's worth something, we

21  represented only Star Capital and Star Capital, according to

22  Mr. Goldstein -- quote/unquote -- was Mr. Firer's company.

23  Mr. Goldstein fired us on behalf of Star Capital.  Purportedly,

24  according to his email, he had the authority to do so and

25  Mr. Goldstein was using Star Capital's lawyer.  So, in effect,

1   despite the fact that he told me it was the other person's

2   company, apparently, Mr. Goldstein is Star Capital.

3           So, Mr. Goldstein is saying he didn't get any

4   discovery from our office?  Again, without inquiring, Brian at

5   my office was not the associate even handling this case.  So,

6   any communications that he may have had with Brian -- which,

7   again, I would dispute Mr. Lichtman's statements as to when the

8   conversations occurred -- were not even relative to this case.

9   They were related to another case that our office was

10  representing Mr. Goldstein on.  There was a different associate

11  handling this case on behalf of Mr. Goldstein and Star Capital

12  Fund.  So, again, a misstatement to the Court without checking

13  the facts as to who was dealing with Mr. Goldstein and

14  Mr. Firer as it related to this case.

15          Now, in the brief period we represented Mr. Goldstein,

16  which was less than two months -- by the way, I'd like to bring

17  something else to the Court's attention.  Our Answer is on

18  file.  Mr. Lichtman had the ability to look at our Answer at

19  any time on Pacer, in December, January, February, whenever he

20  would, and file a motion to amend it.  He hasn't done that

21  either.

22          So, there's a lot of misstatements Mr. Lichtman is

23  trying to make here before the Court about how our office acted

24  while conveniently detracting from the fact that his office has

25  done nothing on this matter.

March 31, 2011

1    As relates to informing Mr. Goldstein as to the orders

2    entered, we advised the client that those orders were entered

3    at the time the discovery was due from Star Capital and at the

4    time we were under the belief that Mr. Firer was the

5    representative, the corporate manager for Star Capital, and we

6    had communications with him and advised him of everything going

7    on in the case.

8         The fact that Mr. Goldstein is complaining that he

9    didn't know about it, that was at the time he wasn't Star

10   Capital.  Why would we be talking to him?  He advised us Star

11   Capital has to be through Mr. Firer.

12        So, he's coming to this Court with some disingenuous

13   arguments, trying to paint my office and myself as if we did

14   something wrong when, in fact, in my opinion, we did our legal

15   work properly, filed motions where we believed that they were

16   just and filed documents when they were due and to the extent

17   they were late in any manner, it was not due to our office.  It

18   was based on the fact that the client was tardy in getting us

19   the responses that we requested from them on numerous

20   occasions, and that's why they were aware of it.  But based on

21   the fact it was a result of their own conduct, they weren't

22   about to jump all over us as a result of it, and based on the

23   fact I had a very good rapport with Mr. Lewis at the time, he

24   wasn't jumping on me about any sanctions.  He understood what

25   was going on and that's why you didn't see any follow-up

1  motions from Mr. Lewis' office as a result of that.

2          Accordingly, I take offense, frankly, at the

3  allegations made by Mr. Lichtman about conversations that never

4  occurred, actions that never occurred, the lack of zealousness

5  on behalf his office to take care of anything and now filing a

6  verified motion deliberately misstating facts or at least

7  misstating facts without bothering to check on them.

8          He doesn't have any email to my office since the

9  middle of February and I have never said to him "I will not

10  communicate with you."  I would never tell an attorney, "I

11  won't communicate with you."  I have no issue with

12  Mr. Lichtman.  Mr. Lichtman doesn't owe me money.  I can tell

13  him that I asserted a retaining lien and the Ethical

14  Department, which I called several times, said that I'm allowed

15  to.  If they didn't, I would have turned it over.  But if he

16  says, "You must turn it over to me," frankly, I can say "I

17  don't have to," and he never said to me "I called Mr. Lewis or

18  Mr. Phillips and they wouldn't give it to me," and he still has

19  not done that.

20          Mr. Phillips is standing right here.  I guaranty you

21  Mr. Phillips will get up say "He didn't ask me for it."  Nor

22  did he ask former counsel.  So, the only one to blame for this,

23  frankly, is Mr. Lichtman and his office, and not that I have

24  any beef in this, but since they're taking it out on me,

25  frankly, I don't think this Court should grant their extension,

20

```
 1   but I leave that to the discretion of the Court.

 2          MR. LICHTMAN:  May I briefly respond?

 3          THE COURT:  I don't know if there's anything

 4   Mr. Phillips wants to add.

 5          MR. PHILLIPS:  I would rather just take the Fifth,

 6   Your Honor.  No, I have nothing to add.

 7          MR. LICHTMAN:  First off, with respect to the

 8   relationship between Mr. Bernstein and the client, everything

 9   that I heard, I heard from both Mr. Firer and Mr. Goldstein

10   together and I will tell the Court, not that I'm a witness, but

11   I believe them.

12          Mr. Bernstein's point about me not asking for

13   documents from everybody, the whole point of the motion was

14   until I was on the phone yesterday, I had not a clue there was

15   any discovery that was exchanged.  How would I ask for

16   documents that hadn't been exchanged?  That was the whole point

17   of it.

18          As I said to you today, Judge, I have not seen any of

19   that.  I found the email that I was referencing that I couldn't

20   find when I was making my initial presentation and here was the

21   series of emails that followed:  You recall the last email I

22   read to you said, "As I said, please send me the bill.  Since

23   the Federal Rules do not permit filing of discovery, out of

24   professional courtesy, will you advise me of what discovery you

25   took and provide me with those filings?"
```

1          Didn't get a response.  Six days later I wrote back to

2    him, I said, "Michael, I'm again asking for you to send me a

3    copy of your bill so I can try to get you paid and advise me of

4    what discovery you have taken.  Please advise if you are going

5    to cooperate in this regard or not," and then here's what he

6    finally wrote back on February 18th:  "Leon sent a

7    representative to speak with me.  He has the bills.  We met

8    yesterday and I'm supposed to hear an answer today.  Thank

9    you," and I realized at that point this was fruitless.

10          My client came to see me immediately afterwards.  We

11    spent a fair amount of time talking.  He told me about the

12    $15,000 offer.  He also told me he doesn't want to pay him a

13    dime.  I get that.  I get they have a dispute as to what the

14    value of the service is.

15          I owned when I stepped up the issue of this docketing

16    thing that I wish I could explain.  You know, that's

17    unfortunate, but the bottom line is we're here where we are

18    now.  I've come into this case in good faith trying to help

19    this client get representation and put together a defense to

20    this lawsuit.  I'm asking the Court for the smallest amount of

21    discovery so I can get that done in a very short period of

22    time.

23          MR. BERNSTEIN:  May I say one thing, Your Honor?

24          THE COURT:  Certainly.

25          MR. BERNSTEIN:  Just to clarify two things, one with

1    what Mr. Lichtman said and one just for the Court's knowledge.

2    One is the bill is not $25,000 as it relates to this case at

3    all.  Mr. Goldstein's bill as it relates to this case is

4    significantly lower than that.  Mr. Goldstein owes money on

5    several cases, one of which is this case.

6         In addition, there's one clarification.  At the time

7    that the discovery was done, although I think from my opinion

8    in this case it's somewhat superfluous because Mr. Goldstein

9    was acting on behalf of both companies when he did it, the

10   discovery was served and answered in the name of Star Capital.

11   That was the company we served it on at the time it was drafted

12   and exchanged.  I don't believe there's any official service or

13   exchange of documents on behalf of the either the individual

14   plaintiff or Mr. Goldstein, individually.

15        However, having said that and in that we were relieved

16   as of January 10th and Mr. Lichtman coming in about that time,

17   he had more than enough time if he wanted to send out

18   discovery.  Whether or not he knew we served discovery, he

19   could have served his own demands on the plaintiff with

20   sufficient time to both get a return on that new discovery that

21   he served and to conduct the deposition of the plaintiff.

22        THE COURT:  Mr. Bernstein, I'm satisfied with your

23   answers and you can certainly remain, but you don't have to.

24        MR. BERNSTEIN:  Thank you, Your Honor.

25        (Left the courtroom.)

1          THE COURT:  Let me address the schedule in this case.

2     A Complaint is filed in May of 2010.  The first scheduling

3     order is issued June 24, 2010 setting a trial for March, March

4     28th.  Then there's a joint motion to extend the dates in the

5     scheduling order because of the late service upon Mr. Goldstein

6     and I granted that motion, as counsel reminded me yesterday,

7     and I gave the parties an additional three months to get

8     trial-ready.

9          I note the case is set for trial now in June, a bench

10    trial set for June 20.  The substitution of counsel occurred on

11    both ends.  The plaintiff substituted, defendant substituted,

12    and the formal notice of appearance by present defense counsel

13    appears in the file on February the 1st.

14         Eight weeks go by --  I looked at the calendar --

15    eight weeks go by after defense counsel has appeared in the

16    case and before the verified motion to continue trial is filed

17    and in those eight weeks -- and by the time the verified motion

18    is filed, as I indicated yesterday, the discovery cut-off had

19    passed, but there were eight weeks available to the defendant

20    to get his case trial-ready, and counsel knows the standard for

21    seeking a modification of a scheduling order.  You have to show

22    that you could not meet the deadlines despite your diligent

23    efforts to do so and I found that that standard was met when I

24    first granted the motion and extended out the deadlines and

25    gave the parties an additional three months, but I don't find

24

1    that that standard is met now.

2         There is no explanation for why eight weeks go by with

3    no discovery by either side.  There is no explanation why

4    representations are made by both attorneys in a verified

5    motion, representations to the effect that prior counsel did

6    nothing with regard to discovery to get the case trial-ready,

7    only to discover that those representations were incorrect as

8    evidenced by Mr. Phillips' later retraction and as evidenced

9    now by the information that we have.

10        We know there was discovery.  Mr. Bernstein said new

11   defense counsel could have sought it from prior plaintiff's

12   counsel or from current plaintiff's counsel.  It appears, at

13   least yesterday from the remarks of Mr. Phillips, that even

14   Mr. Phillips hadn't obtained that discovery from prior counsel

15   for plaintiff either because the accusation was made in that

16   verified motion that no discovery was conducted by prior

17   plaintiff's counsel.

18        Now, I have no objection to the parties taking

19   discovery now.  There are two new attorneys in the case.  If

20   you want to take discovery, by all means.  If you want to

21   depose each other's representatives, by all means, but I'm not

22   going to extend out the trial date or the deadline for the

23   filing of pretrial motions or motions in limine because, as

24   I've indicated, that standard is not satisfied, and serious

25   representations were made in that verified motion, serious

1    representations impugning two other attorneys and I'm not

2    satisfied that those were made with a sufficient inquiry by

3    present counsel.

4         So, the motion is denied with the understanding that

5    you can both certainly take informal discovery if you like and

6    depose each other and get trial-ready.

7         MR. PHILLIPS:  Your Honor, when you say, "if you

8    like," do we have to agree to this or are you just extending

9    the discovery deadline so we know that there's a deadline now?

10        Like I said yesterday, I don't care if I have anymore

11   discovery, and, by the way, I have a full copy of everything

12   for Mr. Lichtman to give to him now of every piece of discovery

13   that has been undertaken in the case.

14        THE COURT:  I can't help but wonder on my end why that

15   wasn't done eight weeks ago.  Those are sort of the thoughts in

16   my mind.

17        MR. PHILLIPS:  I wasn't in the case eight weeks ago.

18   I didn't come in until February 11th.

19        THE COURT:  Seven weeks ago.

20        MR. PHILLIPS:  Frankly, no one asked me.

21        Let me just explain something, Your Honor.  Here's

22   what happened:  On February 11th, the day I got involved, there

23   was an email and it was from Charles Lichtman to Craig Lewis

24   and he copied me on it and, basically, just said, "Mr. Lewis,

25   this follows our telephone conversations of a few minutes ago

1   regarding the above-captioned matter.  As you know, I recently

2   took over defense of the case and I received from Mr. Goldstein

3   a notice for his deposition set on February 16th.  I advised

4   you that I was unavailable that day and you indicated an

5   agreement the deposition would be postponed, especially since

6   Gary Phillips would be taking over for the plaintiff very

7   shortly."  I had not yet appeared.

8           It then goes on to say "The discovery cut-off is March

9   1st," in the email, so I thought discovery cut-off is March

10  1st.  I, frankly, think it's a very simple two-witness case.  I

11  didn't really care how we proceeded at that point.  If Chuck

12  had an issue with that, I figured he would file the appropriate

13  motion, knowing what was going on in the case.

14          You know, I'm always happy to accommodate another

15  attorney with deadlines, but in this situation, now that I hear

16  that he wants to, perhaps, amend defenses and do all types of

17  things that he may even seek to do after we do additional

18  discovery, I'm satisfied if you are going to deny the motion,

19  you should just deny it and proceed to trial.

20          THE COURT:  Part of the representations that were made

21  is that you both enjoy an excellent working relationship, so

22  I'm confident that you both can reach agreement on to what

23  extent you want to open up discovery and complete it.

24          I am not favorably disposed -- I'm not saying I won't

25  consider it, but I'm not favorably disposed to motions to amend

1  the pleadings, particularly at least on the defense side where

2  eight weeks have gone by with new counsel. I know from your

3  end it has been six weeks. I don't hear from you that you want

4  to amend the pleadings, but I would not be favorably disposed

5  to that.

6         I would normally, when both sides agree to a

7  continuance of trial, that's a strong indicator that the motion

8  should be well taken. But here -- my order said it -- I needed

9  additional facts and I'm troubled by what I've seen and heard.

10         MR. PHILLIPS: We're remaining on the June 20th trial

11  calendar?

12         THE COURT: Correct.

13         MR. PHILLIPS: Thank you.

14         THE COURT: You all have a good day.

15         MR. PHILLIPS: You, too, Judge.

16                      - - - -

17              C E R T I F I C A T E

18         I hereby certify that the foregoing is an accurate

19  transcription of proceedings in the above-entitled matter.

20

21  __04/04/11_____      _____
           DATE                BARBARA MEDINA

22                              Official United States Court Reporter
                                400 North Miami Avenue, Suite 12-2

23                              Miami, FL  33128 - 305.523.5518
                                         (Fax) 305.523.5519

24                              barbara.medina127@gmail.com

25

## A

ability 17:18
above-captioned 26:1
above-entitled 27:19
abundantly 6:8
accept 4:10
acceptable 4:1
access 4:7
accommodate 26:14
accurate 27:18
accusation 24:15
accustomed 9:7
acknowledged 15:18
acknowledgment 16:20
acted 17:23
acting 22:9
actions 19:4
acts 11:2
add 20:4,6
addition 14:11 22:6
additional 3:7,25 26:17 27:9
address 2:23 5:24 12:25 23:1
addressed 6:7
Adler 7:3
ADMINISTRATIVE 2:21
admissions 16:1
advance 10:21
advise 11:7 13:17 20:24 21:3,4
advised 18:2,6,10 26:3
affidavit 8:19
affirmative 5:25 6:3
afternoon 3:4
ago 8:2 15:11 25:15,17,19,25
agree 25:8 27:6
agreement 16:7 26:5,22
allegations 19:3
allow 15:3
allowed 19:14
allowing 5:25
alluding 13:8
ALTONAGA 1:12
amend 5:25 17:20 26:16,25 27:4
Amended 5:20
amount 3:16 7:9,10 9:22 13:5 21:11,20
ANATOLIY 1:5
anomaly 8:4
answer 5:20 12:18 17:17,18 21:8
answered 12:6 22:10
answers 22:23
anymore 25:10
apologize 8:20
apparently 7:17 17:2
appear 14:25 15:2
appearance 3:2 23:12
APPEARANCES 1:13
appeared 14:19 15:4 23:15 26:7
appears 23:13 24:12
appreciate 10:15 16:19
appreciated 10:14
appropriate 26:12
arguments 18:13
asked 9:11,11 10:12 11:19 25:20
asking 6:23 8:15 20:12 21:2,20
aspect 7:24
asserted 19:13
asserting 6:3
associate 5:1 12:4 17:5,10
assume 11:4
attempt 13:22 14:7
attempting 10:21
attend 15:3
attention 10:1,3 11:4 17:17
attorneys 6:25 24:4,19 25:1
attorney's 6:19
authority 16:24
available 23:19
Avenue 1:24 2:5 27:22
awarding 5:15
aware 5:16,21 18:20

## B

back 6:10 7:18 10:23 11:5 14:18 21:1,6
bad 9:4 15:23
BARBARA 2:2 27:21
barbara.medina127@gmail.com 2:6 27:24
based 18:18,20,22
basically 10:6 11:10 25:24
Beach 1:24

Beat 11:14
beef 19:24
beginning 13:9,23 16:18
behalf 3:4,7 14:19 16:23 17:11 19:5 22:9,13
belief 18:4
believe 14:23 20:11 22:12
believed 18:15
bench 23:9
Berger 1:19 3:8 6:25 13:11
Berlowitz 1:15
Bernstein 1:23,23 3:6,6,15 4:16 5:2,13,20 6:16
   7:13,15,17 8:8 9:8 10:3,10 12:10,14,23,24
   14:10 15:15,18 16:14 20:8 21:23,25 22:22,24
   24:10
Bernstein's 9:1 12:5 20:12
best 4:13
better 13:11 15:21
bill 7:5,5 10:20,25 11:6 20:22 21:3 22:2,3
billions 6:23
bills 6:25 21:7
bit 8:11
blame 4:8 7:23 19:22
blank 9:12
blatant 15:19
blatantly 15:13 16:9
Board 13:14
boat 6:10
bothering 12:13 19:7
bottom 8:21 21:17
Boulevard 1:16,20
box 7:25
Brian 5:2 12:7,9 17:4,6
brief 10:8 17:15
briefly 20:2
bring 11:4 17:16
Broward 6:24
Brown 5:8
bus 16:13

## C

C 27:17,17
calendar 8:13 23:14 27:11
caliber 7:7 12:19
call 10:7 12:4
called 5:2 7:18 9:11 14:13 19:14,17
candid 6:4
candidly 6:2
Cantor 1:15
can't 4:3,4 10:19 11:15,16 14:10 25:14
Capital 1:8 4:14 16:3,4,21,23 17:2,11 18:3,5
   18:10,11 22:10
Capital's 16:25
care 9:8 19:5 25:10 26:11
careful 3:21
case 1:3 3:24 4:12,16 5:7,10,23 6:9,14,21,22
   7:24 8:25 9:22 12:9,20 13:10,22,25 14:16
   16:18 17:5,8,9,11,14 18:7 21:18 22:2,3,5,8
   23:1,9,16,20 24:6,19 25:13,17 26:2,10,13
cases 6:15 8:25 22:5
caught 9:14 10:1,2
cause 5:9,10,19,23 6:11 9:1
caused 4:18
CECILIA 1:12
Centre 1:19
certainly 3:20 21:24 22:23 25:5
Certificate 2:10
certify 27:18
Chaban 1:5 3:5
change 4:4
Charles 1:18 25:23
check 19:7
checked 13:12
checking 17:12
chevrons 2:25
Chuck 3:8 26:11
CITATION 2:17
citizen 8:2,2
claim 16:13
claims 13:2
clarification 22:6
clarified 10:2 14:3
clarify 21:25
clear 6:8
clichtman@bergersingerman.com 1:22
client 4:9 5:6,15,21 6:7,14,14 7:8 8:21 9:10
   9:11,12 10:17 15:6 16:15 18:2,18 20:8 21:10
   21:19
clients 8:23 11:11
clue 20:14

colleague 5:2
come 9:18 11:23 13:16 14:9 21:18 25:18
coming 18:12 22:16
communicate 10:3 11:12,12 19:10,11
communicating 15:17
communication 14:14
communications 17:6 18:6
companies 22:9
company 16:22 17:2 22:11
compel 9:9
compelling 5:19
complaining 18:8
Complaint 5:20 23:2
complete 26:23
complicating 3:24
complying 5:11
comprehended 12:11
concern 3:12
concerned 12:10
conclusions 6:6
conduct 7:23 8:5 15:24 18:21 22:21
conducted 10:16,24 15:12,14,16 24:16
conference 1:11 2:19,23
confident 26:22
confirmed 4:17 13:14
conflict 16:7
consider 26:25
contact 13:23
contacted 13:14 14:12
CONTENTS 2:8
continuance 9:15 27:7
continue 23:16
conveniently 17:24
CONVENTIONS 2:21
conversations 13:4,7 17:8 19:3 25:25
cooperate 21:5
cooperation 10:22
copied 25:24
copies 10:9
copy 14:17 21:3 25:11
corporate 6:12 18:5
Correct 27:17
correctly 12:12
correspondence 16:10
couldn't 20:19
counsel 2:22 3:2,9,18 4:16 10:4 13:23,24 14:3
   14:18 15:25 19:22 23:6,10,12,15,20 24:5,11
   24:12,12,14,17 25:3 27:2
country 15:8,22
couple 7:17 12:25
court 1:1 2:3,23 3:1,11,20,25 4:1,10,11 5:18 6:5
   7:9 9:24,25 10:19 11:17,23 12:7,22 13:4,17
   14:7,24 15:13 16:8,9,12 17:12,23 18:12 19:25
   20:1,3,10 21:20,24 22:22 23:1 25:14,19 26:20
   27:12,14,22
courtesy 11:7,20 20:24
Courthouse 2:4
courtroom 22:25
Court's 17:17 22:1
Craig 14:1 25:23
criticize 15:22
crying 14:5
curious 8:11
current 13:24 14:3 24:12
cut-off 10:15 16:16 23:18 26:8,9

## D

D 2:4
damages 12:21
date 24:22 27:21
dates 3:14 23:4
day 5:2 25:22 26:4 27:14
days 5:23 7:17 8:15 21:1
deadline 24:22 25:9,9
deadlines 23:22,24 26:15
deal 16:4
dealing 17:13
debt 6:10
December 6:12 17:19
default 5:4
defendant 23:11,19
defendants 1:10,18 3:9
defense 6:9 10:12 21:19 23:12,15 24:11 26:2
   27:1
defenses 5:25 6:3 26:16
deliberately 11:2 19:6
demand 16:2
demands 22:19
denied 5:14 25:4

deny 26:18,19
department 8:13 19:14
depose 24:21 25:6
deposing 15:8
deposition 22:21 26:3,5
Description 2:15
Descriptions 2:20
despite 15:11 17:1 23:22
detracting 17:24
didn't 7:6 11:17,19,21,22 12:9 15:16,17 16:14
  17:3 18:25 19:15,21 21:1 25:18 26:11
different 8:6,7 17:10
diligent 23:22
dime 21:13
disbarred 8:3,7
disclosure 6:13
discover 24:7
discovery 4:19,21 5:11 7:6 9:22 10:15,16,20,23
  11:7,8,20,22,24 12:14 13:15 15:12,14,15,18
  15:18,20,24,25 16:16 17:4 18:3 20:15,23,24
  21:4,21 22:7,10,18,18,20 23:18 24:3,6,10,14
  24:16,19,20 25:5,9,11,12 26:8,9,18,23
discretion 20:1
disingenuous 18:12
dismiss 12:16
disposed 26:24,25 27:4
dispute 17:7 21:13
DISTRICT 1:1,1,12
disturbing 5:7,22
DIVISION 1:2
docket 5:8,18 10:19
docketing 8:13 21:15
documents 12:2 13:19,24 14:1,4,6,8 18:16
  20:13,16 22:13
doesn't 7:4 11:14,16 14:5 15:23 19:8,12 21:12
dollars 6:23
don't 4:4,8 5:3 7:20,23 8:16 9:8,9,12,19 10:8,19
  11:10,21,25 12:10,14 13:1,4,7 14:10 19:17,25
  20:3 22:12,23 23:25 25:10 27:3
drafted 22:11
due 5:3 18:3,16,17
duplicate 10:9

E

E 27:17,17
early 5:10
easiest 7:13
easily 14:2
East 1:20
effect 11:11 16:25 24:5
efforts 23:23
eight 23:14,15,17,19 24:2 25:15,17 27:2
either 5:21 17:21 22:13 24:3,15
elaborate 10:4
email 10:5 11:9 14:12 15:1,12 16:24 19:8 20:19
  20:21 25:23 26:9
emails 7:12 14:11 20:21
emotionally 8:22
ends 23:11
engagement 4:12,14 7:2
enjoy 26:21
entered 5:7,19 6:12 18:2,2
entry 5:8,18
equally 5:22
especially 26:5
ESQ 1:15,18,23
essence 12:20
Ethical 19:13
Ethics 13:14
everybody 20:13
evidence 2:14 14:6
evidenced 24:8,8
excellent 26:21
exchange 22:13
exchanged 16:1 20:15,16 22:12
excuse 12:11
Exhibits 2:12,13
exists 6:9
expedite 10:21
experience 6:18
expert 6:20
explain 21:16 25:21
explanation 4:15 8:17 24:2,3
extend 23:4 24:22
extended 23:24
extending 25:8
extension 8:15 19:25
extent 18:16 26:23

F

F 27:17
fact 6:6 12:13 15:12 17:1,24 18:8,14,18,21,23
factors 3:24
facts 17:13 19:6,7 27:9
failure 6:12
fair 9:5 21:11
faith 21:18
false 11:3 15:13
falsehood 15:19
familiar 4:3,6,6
favorably 26:24,25 27:4
Fax 2:6 27:23
February 10:10 14:15,15 15:10 17:19 19:9 21:6
  23:13 25:18,22 26:3
Federal 11:6 20:23
fee 6:19,21 7:9,10
feel 9:4 15:21
feeling 12:19
feels 13:11
Ferguson 2:4
Fifth 20:5
figure 7:13
figured 26:12
file 4:2,7 5:20 6:12 10:20 11:21 17:18,20 23:13
  26:12
filed 5:14 8:14,18 11:21 15:11 18:15,16 23:2,16
  23:18
files 10:12,18
filing 5:13 11:6 19:5 20:23 24:23
filings 11:9 20:25
finally 21:6
find 20:20 23:25
Fine 7:16
fired 16:23
Firer 3:10 4:13,24 17:14 18:4,11 20:9
Firer's 16:22
firm 3:7 4:17 13:10
first 16:5 20:7 23:2,24
FL 1:17,21,24 2:5 27:23
flag 5:16
Florida 1:1,7 6:22
followed 20:21
following 4:10
follows 10:6 25:25
follow-up 18:25
foregoing 27:18
Forget 7:16
forgive 10:6 11:25
formal 23:12
former 3:17 13:23 15:25 19:22
Fort 1:21
forthwith 10:20
found 20:19 23:23
four 6:15
FPS 6:22
frankly 4:8 19:2,16,23,25 25:20 26:10
fruitless 21:9
full 9:5 13:3 25:11
fun 9:19
Fund 1:8 17:12

G

Gary 1:15 3:4 6:22 26:6
generally 7:23 8:5
genuinely 8:22
getting 18:18
give 9:5,21 13:3 19:18 25:12
glitch 8:16
go 6:13 23:14,15 24:2
goes 12:5 26:8
going 5:17,24 6:16 7:2 8:16 11:14 18:6,25 21:4
  24:22 26:13,18
Goldstein 1:9 3:1,9,16 4:11,25 7:11,15,20 8:1,6
  10:24 12:3,11 13:5 14:18,19,20,21,24 15:1
  16:6,6,10,22,23,25 17:2,3,10,11,13,15 18:1,8
  20:9 22:4,8,14 23:25 26:2
Goldstein's 4:6 22:3
good 3:3,3,5 5 9:4,17 12:17 15:23 18:23 21:18
  27:14
gotten 12:18
gphillips@phillipslawyers.com 1:17
grant 19:25
granted 12:18 23:6,24
granting 5:9 14:17
Great 8:5
guaranty 19:20
guess 8:16
guy 9:4

H

H 1:18
hadn't 20:16 24:14
half 14:16
hand 8:10
handling 17:5,11
happen 8:6
happened 4:16 5:12,12 8:25 25:22
happy 13:3 16:7 26:14
hasn't 17:20
head 11:14
hear 3:18 8:23 12:23 16:14 21:8 26:15 27:3
heard 10:17 20:9,9 27:9
hearing 4:21 11:25 12:12,13 13:13 16:12
help 21:18 25:14
here's 7:24 21:5 25:21
He'd 9:2
he's 13:4,7 18:12
hired 8:3
history 6:21
Hollywood 1:16,17
honestly 9:9
Honor 3:3,6 6:11 12:24,25 13:9 14:17 20:6
  21:23 22:24 25:7,21
HONORABLE 1:12

I

idea 12:3
identification 2:14,24
identify 2:22
II 1:19
immediately 21:10
important 10:18
impugning 25:1
inadequate 6:3 12:18
inception 16:18
including 6:19 15:8
incorrect 10:23 24:7
INDEX 2:12,17,19
indicate 10:13
indicated 2:24 10:11 23:18 24:24 26:4
indicator 27:7
individual 22:13
individually 22:14
indulge 3:25
industry-standard 2:24
informal 25:5
information 13:18 24:9
informing 18:1
initial 20:20
initially 12:18
inquiring 16:10 17:4
inquiry 25:2
interrogatories 4:24,25 5:3,4 12:2 16:1
involved 7:19 8:22 25:22
issue 4:23 5:11 8:19 10:5 12:12 13:13 19:11
  21:15 26:12
issued 5:9 14:24 23:3
issues 8:9
items 12:25
it's 6:2,17 8:16 9:16 16:20 22:8 26:10
I'd 12:23 13:3 16:7 17:16
I'll 3:18 7:18 13:9
I'm 4:2 6:4,16,19 7:8,20,25 8:16,25 9:3 10:14
  12:1,5 19:14 20:10 21:2,8,20 22:22 24:21
  25:1 26:14,18,22,24,25 27:9
I've 4:9,17 7:2 8:21 9:11 10:7,11,12 11:13,23
  21:18 24:24 27:9
i.e 2:25

J

January 13:23 14:18,21,23,23 15:10 17:19
  22:16
joint 23:4
Jr 2:4
Judge 1:12 4:8 6:23 10:6 20:18 27:15
jump 18:22
jumping 18:24
jumping-off 5:5
June 23:3,9,10 27:10
jurisdiction 9:9
justice 8:11

K

kind 8:5
knew 8:12 22:18
know 3:12 4:20 6:2,24 7:4 9:10,23 10:11 11:10
  11:13,17,25 12:4,6,9,10,12,14 13:1,4,7 18:9

20:3 21:16 24:10 25:9 26:1,14 27:2
**knowing** 26:13
**knowledge** 4:13 15:14 22:1
**known** 9:2
**knows** 23:20

**L**

**lack** 7:6 19:4
**largest** 6:20
**Las** 1:19,20
**late** 18:17 23:5
**Lauderdale** 1:21
**law** 4:3,4,4,4
**lawsuit** 21:20
**lawyer** 3:17 5:22 8:3,3 16:25
**lawyers** 8:7,7,24 9:17,17 15:22
**learn** 4:20
**leave** 20:1
**led** 5:14
**left** 3:10 22:25
**legal** 18:14
**Leon** 1:9 3:1,9 21:6
**letter** 4:12,14
**Lewis** 13:21 14:1 15:6 18:23 19:1,17 25:23,24
**liability** 12:21
**Lichtman** 1:18 3:8,8,19,21 7:10 9:25 10:5 11:19
   12:8 13:11 14:5,12,16,22 15:4,7 16:5,9 17:18
   17:22 19:3,12,12,23 20:6,22,23,7 22:1,16 25:12,23
**Lichtman's** 13:1,16 14:14 17:7
**lien** 4:2,3 9:10 10:13 11:15,15 13:13,16 19:13
**likewise** 12:14
**limine** 14:23
**limited** 9:21
**line** 2:15,15 8:21 9:25 10:1,2 21:17
**litany** 13:1 15:7
**literally** 4:21
**litigants** 9:23
**litigation** 6:19
**little** 8:11
**LLC** 1:8
**long** 9:2
**look** 6:1,25 7:4 8:12 17:18
**looked** 23:14
**looks** 7:4
**lot** 3:23 17:22
**love** 16:5
**low** 12:19
**lower** 22:4

**M**

**M** 1:12
**Magistrate** 5:8
**making** 20:20
**manage** 6:24
**manager** 18:5
**manner** 18:17
**March** 1:8 14:22 15:10 23:3,3 26:8,9
**Marked** 2:13
**massive** 6:18
**matter** 10:12 17:25 26:1 27:19
**matters** 7:19
**mean** 7:24 15:24
**means** 13:17 24:20,21
**mediation** 14:23,25,25 15:2,3,5
**mediator's** 15:4
**MEDINA** 2:2 27:21
**meet** 23:22
**meeting** 10:8
**Meridican** 1:24
**met** 12:3 21:7 23:23 24:1
**Miami** 1:2,7,24 2:5,5 27:22,23
**Michael** 1:23,23 3:4,6 21:2
**michael@miblawoffice.com** 1:25
**middle** 14:14 19:9
**midst** 4:20
**mind** 25:16
**mine** 10:15
**minutes** 25:25
**misfortune** 8:5
**misleading** 16:9
**misstatement** 17:12
**misstatements** 17:22
**misstating** 19:6,7
**modification** 23:21
**money** 19:12 22:4
**month** 7:1 14:15
**months** 14:7,21 16:15 17:16 23:7,25
**morning** 3:3,22
**morose** 7:21

**motion** 3:13 4:19 5:9,13,14 6:4 8:14,17 9:15
   13:21 15:11 16:19 17:20 19:6 20:13 23:4,6,16
   23:17,24 24:5,16,25 26:5,23 27:7
**motions** 12:16 18:15 19:1 24:23,23 26:25
**Motorola** 6:22

**N**

**name** 22:10
**named** 5:2
**necessarily** 7:22
**needed** 12:20 27:8
**neither** 15:21
**never** 4:12 19:3,4,9,10,17
**new** 10:4,22,20 24:10,19 27:2
**normally** 27:6
**North** 2:5 27:22
**note** 23:9
**notice** 23:12 26:3
**November** 5:19 14:20
**number** 6:25
**numerous** 18:19

**O**

**objection** 24:18
**obtain** 13:17 14:8
**obtained** 24:14
**occasions** 18:20
**occur** 8:5
**occurred** 5:1 17:8 19:4,4 23:10
**offense** 19:2
**offer** 21:12
**offered** 7:14
**office** 10:7,24 11:3 14:9,13,14 15:4,24 17:4,5,9
   17:23,24 18:13,17 19:1,5,8,23
**official** 2:3 22:12 27:22
**Oh** 4:24
**Okay** 8:6 10:18 14:19 16:17
**Olas** 1:19,20
**Oleg** 3:10
**omissions** 11:2
**once** 8:4
**open** 26:23
**opinion** 13:15 18:14 22:7
**opportunity** 9:5,21
**order** 3:14 5:8,9,10,15,19,24 6:11 14:17,24 23:3
   23:5,21 27:8
**orders** 5:7,23 18:1,2
**other's** 15:22 24:21
**outstanding** 3:16
**overly** 6:17
**owe** 3:16 19:12
**owes** 22:4
**owned** 8:18 21:15

**P**

**Pacer** 17:19
**Page** 2:9,15,15,18,20
**paid** 10:14,21 15:1 21:3
**paint** 18:13
**Paladin** 1:4 3:1,4
**paragraph** 9:15
**part** 13:20 26:20
**particular** 13:10
**particularly** 27:1
**parties** 14:8 23:7,25 24:18
**passed** 23:19
**pay** 4:7 6:10 10:24 21:12
**paying** 7:20
**payment** 11:1
**perfect** 8:17
**period** 16:16 17:15 21:21
**permit** 11:6 20:23
**personally** 4:12
**person's** 17:1
**Phillips** 1:15,15 3:3,4 6:1 8:18 9:2,16 10:1 19:18
   19:20,21 20:4,5 24:8,13,14 25:7,17,20 26:6
   27:10,13,15
**phone** 15:4 20:14
**piece** 25:12
**plaintiff** 1:14 8:10 22:14,19,21 23:11 24:15 26:6
**Plaintiffs** 1:6
**plaintiff's** 13:23,24 15:25 24:11,12,17
**pleadings** 12:15 27:1,4
**please** 3:2,11 9:24 10:20 11:5,20 20:22 21:4
**podium** 3:19
**point** 5:5,13 7:19 8:8 9:12 20:12,13,16 21:9
   26:11
**position** 4:7 10:14 13:16
**possession** 10:25 14:2,4

**possible** 13:17
**postponed** 26:5
**postponement** 3:13
**practice** 15:22
**prejudiced** 11:1
**prepare** 16:15
**prerogative** 13:12
**present** 23:12 25:3
**presentation** 3:22 20:20
**pretrial** 24:23
**pretty** 12:17
**principal** 6:8
**prior** 24:5,11,14,16
**privilege** 3:22 6:8
**probably** 6:5 8:15
**problems** 8:23
**proceed** 26:19
**proceeded** 26:11
**proceedings** 27:19
**process** 15:21
**produce** 13:11
**product** 13:12,15
**production** 12:1 16:2
**professional** 7:23 11:7 20:24
**proffer** 4:10
**properly** 18:15
**proposal** 4:1
**propositions** 13:6
**prospect** 5:23
**proverbial** 16:13
**provide** 11:8 13:19 15:16 16:8 20:25
**providing** 5:11
**pure** 6:5
**purported** 13:7
**Purportedly** 16:23
**purposes** 6:17
**put** 21:19
**P.A** 1:15,23

**Q**

**questions** 12:12
**quite** 6:2 10:25
**quote/unquote** 16:22

**R**

**R** 27:17
**raised** 4:23 6:10
**rapport** 18:23
**reach** 26:22
**read** 5:24 20:22
**realize** 8:12
**realized** 11:13 21:9
**really** 4:15 6:14 9:8 26:11
**recall** 20:21
**received** 2:13 26:2
**reconsider** 5:14
**records** 13:3
**red** 5:16
**referencing** 20:19
**refused** 3:15 15:2
**regard** 3:13 16:2 21:5 24:6
**regarding** 3:15 26:1
**related** 3:14 13:25 17:9,14
**relates** 18:1 22:2,3
**relationship** 9:16,17 20:8 26:21
**relative** 17:8
**relevant** 6:17
**relieved** 22:15
**remain** 22:23
**remaining** 27:10
**remarks** 24:13
**remember** 11:25
**remembered** 4:25
**reminded** 23:6
**reminder** 8:14
**repeatedly** 4:18
**REPORTED** 2:1
**Reporter** 2:3 27:22
**Reporter's** 2:10
**represent** 4:13
**representation** 16:3 21:19
**representations** 3:15 24:4,5,7,25 25:1 26:20
**representative** 11:11 18:5 21:7
**representatives** 24:21
**represented** 14:20 16:21 17:15
**representing** 17:10
**request** 12:1
**requested** 18:19
**requests** 7:6

**requiring** 14:24
**respect** 7:2,22 12:15 20:7
**respecting** 6:9
**respond** 20:2
**responded** 14:13,13
**response** 11:22 16:1 21:1
**responses** 18:19
**responsibility** 10:11
**result** 11:2 18:21,22 19:1
**retained** 8:15 14:22
**retainer** 16:7,11
**retaining** 4:2,3 9:10 10:13 13:13,15 19:13
**retention** 7:12
**retracted** 10:2
**retraction** 24:8
**return** 22:20
**right** 7:2,12 8:18 9:18 19:20
**Rosenthal** 7:3
**Rothstein** 7:3
**roughly** 8:2
**rule** 11:21
**Rules** 11:6 20:23
**run** 10:8,8
**Russian** 8:10

**S**

**S** 1:15
**sanction** 6:21
**sanctions** 5:10,15,15 18:24
**satisfied** 22:22 24:24 25:2 26:18
**saw** 12:16
**saying** 15:2,13 17:3 26:24
**says** 19:16
**schedule** 23:1
**scheduling** 3:14 23:2,5,21
**seated** 3:11
**second** 3:13 5:18,20 11:10
**see** 6:2 7:4,5,7,11,14 8:24 9:6 11:11 12:17 18:25
    21:10
**seek** 26:17
**seeking** 23:21
**seen** 4:22 11:24 20:18 27:9
**send** 10:20 11:5,20 20:22 21:2 22:17
**sent** 12:2,15 15:1 21:6
**series** 7:12 20:21
**serious** 7:25 24:24,25
**served** 22:10,11,18,19,21
**service** 21:14 22:12 23:5
**serving** 6:20
**set** 23:9,10 26:3
**sets** 8:7
**setting** 23:3
**settle** 7:14 9:10,11
**Seven** 25:19
**Shipping** 1:4 3:1
**short** 21:21
**shortly** 26:7
**show** 5:9,10,19,23 6:11 9:23 16:8 23:21
**shown** 14:6
**side** 12:2 24:3 27:1
**SIDEBAR** 2:19
**sides** 27:6
**side's** 11:24
**sign** 4:14
**signed** 4:12,25 12:3 16:6,10
**significant** 13:5
**significantly** 22:4
**signing** 4:23
**simple** 26:10
**Singerman** 1:19 3:8 6:25 13:11
**single** 6:6
**sit** 6:13,24
**situation** 26:15
**six** 21:1 27:3
**smallest** 9:22 21:20
**soap** 7:25
**somewhat** 22:8
**sooner** 5:12
**sort** 5:5 25:15
**sought** 24:11
**source** 13:18
**SOUTHERN** 1:1
**speak** 21:7
**speaker** 2:24
**spent** 4:9 21:11
**spoke** 13:21
**spoken** 13:5,7
**stand** 13:10 16:6
**standard** 6:24 23:20,23 24:1,24

**standing** 13:20 19:20
**Star** 1:8 4:14 16:3,4,21,21,23,25 17:2,11 18:3,5
    18:9,10 22:10
**start** 13:1,9
**state** 3:2 6:21
**statement** 6:13 15:13
**statements** 11:3 17:7
**States** 1:1,12 2:3,4 8:3 27:22
**stating** 6:5
**STATUS** 1:11
**Ste** 1:24 2:5
**stealing** 8:4
**stepped** 21:15
**stepping** 8:25
**Stettin** 7:3
**stories** 8:23
**story** 8:1
**strike** 6:4
**strong** 27:7
**stuff** 10:19
**subject** 5:22 13:15
**submit** 9:14
**substituted** 23:11,11
**substituting** 6:15
**substitution** 23:10
**successful** 6:5
**sufficient** 22:20 25:2
**Suite** 1:16,20 27:22
**superfluous** 22:8
**supposed** 21:8
**sure** 6:17 10:14 12:5
**suspect** 6:1
**sympathetic** 7:8
**system** 8:11 9:6,23

**T**

**T** 27:17,17
**TABLE** 2:8
**take** 4:6 7:18 19:2,5 20:5 24:20 25:5
**taken** 5:4 10:11 21:4 27:8
**talk** 3:23 9:12,12 11:16,16,17 16:4
**talked** 14:11
**talking** 13:4 18:10 21:11
**tardy** 18:18
**techniques** 15:23
**telephone** 7:23 25:25
**tell** 4:11,24 6:18 7:5,11,25 9:2 12:15 19:10,12
    20:10
**tender** 6:9
**terms** 6:3
**testify** 4:11
**Thank** 10:21 12:8,22,24 21:8 22:24 27:13
**that's** 4:5 5:5 8:19 13:12 15:21 18:20,25 21:16
    27:7
**there's** 3:16,23,24 10:15 17:22 20:3 22:6,12
    23:4 25:9
**they're** 15:23 16:8 19:24
**thing** 7:13 9:18 21:16,23
**things** 6:16 7:22 15:8 21:25 26:17
**think** 3:24,25 4:4,5 5:11 7:20 9:9,14,22 11:25
    19:25 22:7 26:10
**thinks** 16:20
**thought** 12:16 26:9
**thoughts** 7:6,7 13:10 18:15
**three** 5:6 14:7 16:15 23:7,25
**three-month** 3:13
**throw** 16:13
**time** 2:22 4:9 5:1 7:4 9:2 10:17,25 11:13 13:6
    14:12,12,13 15:6 17:19 18:3,4,9,23 21:11,22
    22:6,11,16,17,20 23:17
**timely** 9:14
**times** 4:5 19:14
**today** 6:4,17 9:11 11:23 12:4,13 13:20 20:18
    21:8
**told** 4:14,17 5:6 10:14 12:3,13 17:1 21:11,12
**tomorrow** 5:4
**tout** 6:20
**track** 9:23
**trail** 10:5
**transactions** 8:7
**TRANSCRIPT** 1:11
**transcription** 27:19
**trial** 9:5,19 16:16 23:3,9,10,16 24:22 26:19 27:7
    27:10
**trial-ready** 23:8,20 24:6 25:6
**tried** 13:17
**troubled** 27:9
**true** 15:17
**trustee** 7:3

**try** 8:22 14:8 21:3
**trying** 7:25 9:3 16:13 17:23 18:13 21:18
**turn** 19:16
**turned** 14:2 19:15
**twice** 8:6
**two** 5:22 8:6,7 9:17 14:20 17:16 21:25 24:19
    25:1
**two-witness** 26:10
**types** 26:16
**typically** 11:21

**U**

**Ukraine** 15:7
**unavailable** 26:4
**unaware** 5:6
**understand** 3:15 10:16
**understanding** 4:15,17 25:4
**understood** 18:24
**undertaken** 25:13
**unfortunate** 8:20 21:17
**unique** 9:16
**United** 1:1,12 2:3,4 8:2 27:22
**use** 3:19
**U.S** 8:1

**V**

**value** 21:14
**verified** 13:21 15:11 19:6 23:16,17 24:4,16,25
**verify** 4:19
**version** 8:1
**versus** 6:22
**view** 4:3 5:6
**vs** 1:7

**W**

**waive** 3:22 11:15,15
**waiver** 16:7
**waiving** 6:7
**wall** 11:14
**want** 4:7 9:4,5,18,18,19 11:14,16,17 21:12
    24:20,20 26:23 27:3
**wanted** 22:17
**wants** 20:4 26:16
**wasn't** 15:17 18:9,24 25:15,17
**way** 17:16 25:11
**week** 15:9,11
**weeks** 23:14,15,17,19 24:2 25:15,17,19 27:2,3
**welcome** 11:3
**welcomed** 11:3
**well-founded** 12:17
**went** 7:11,14 14:25 15:3
**weren't** 15:1,16 18:21
**we're** 21:17 27:10
**What's** 5:17
**Wilkie** 2:4
**Willie** 6:22
**wish** 3:21 7:21 8:12 21:16
**withdrawal** 14:18
**witness** 6:20 20:10
**woefully** 6:3 12:18
**wonder** 25:14
**won't** 19:11 26:24
**working** 26:21
**world** 8:17
**worth** 16:20
**wouldn't** 19:18
**write** 4:3,18
**written** 11:8
**wrong** 12:1 18:14
**wrote** 10:10,23 11:5 15:12 21:1,6

**Y**

**years** 8:2
**yesterday** 4:20 8:18 10:7 11:25 13:13 14:3
    20:14 21:8 23:6,18 24:13 25:10
**you're** 3:12
**You've** 9:17

**Z**

**zealousness** 19:4
**zero** 10:16 15:18

**$**

**$15,000** 21:12
**$25,000** 22:2



**1**

**1st** 23:13 26:9,10
**10** 8:2
**10th** 14:18,21 22:16
**10-21612-CIV-Altonaga** 1:3
**1000** 1:20
**11th** 10:10 25:18,22
**12-2** 2:5 27:22
**13th** 6:12
**15** 7:18
**15,000** 7:15
**16th** 26:3
**1688** 1:24
**17th** 14:15
**18th** 14:15,23 21:6

**2**

**20** 23:10
**20th** 27:10
**2010** 23:2,3
**2011** 1:8
**24** 23:3
**25,000** 7:10
**27** 2:10
**28th** 23:4
**29th** 5:19

**3**

**305.523.5518** 2:5 27:23
**305.523.5519** 2:6 27:23
**305.672.9544** 1:25
**31** 1:8
**3128** 2:5
**32** 5:8
**33021** 1:17
**33128** 27:23
**33139** 1:24
**33301** 1:21
**350** 1:20
**375-South** 1:16

**4**

**400** 2:5 27:22
**4000** 1:16
**418** 1:24

**5**

**57** 5:18

**6**

**60** 5:23

**8**

**88-11** 13:15

**9**

**954.525.9900** 1:21
**954.966.1820** 1:17

March 31, 2011