IN THE UNTED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 10-CV-21612 ALTONAGA/BROWN

PALADIN SHIPPING COMPANY, LTD.,
a foreign corporation and ANATOLIY CHABAN,
an individual,

        Plaintiff,

vs.

STAR CAPITAL FUND, LLC, a Florida
limited liability company, and LEON
GOLDSTEIN, an individual,

        Defendants.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS CAUSE between Plaintiffs Paladin Shipping Co. Ltd. ("Paladin"), Anatoliy Chaban, ("Chaban"; collectively "Plaintiffs") and Defendants Leon Goldstein, ("Goldstein") and Star Capital Fund, LLC ("Star"; collectively "Defendants") came before the Court for non-jury trial heard by the Court on June ___, 2011 and the Court carefully considered all of the extensive testimony, evidence of record and legal argument of counsel.

The Court has given careful consideration to the effect and proper weight of the admissible evidence, to an assessment of the demeanor, candor and credibility of the witnesses (whose testimony was in many instances in direct conflict) and to analysis of the argument of counsel. Predicated upon the foregoing, and the Court being otherwise fully advised, it hereby finds as follows:

    I.    **Findings of Fact**

        a.  *The September 5, 2008 Loan*



On September 5, 2008, Paladin and Goldstein entered into a loan agreement (the "September 5, 2008 Loan"). That loan agreement was reduced to writing and a copy of the written agreement was received into evidence. Pursuant to the written agreement, the essential terms of the September 5, 2008 contract were as follows:

(1) Paladin would transfer to Goldstein USD 750,000.00 on September 5, 2008.

(2) The loan would be paid back on March 5, 2009.

(3) Within 3 banking days of March 5, 2009, Goldstein would repay Paladin.

(4) Goldstein would have no right to delay payment of loaned sums past March 8, 2009.

(5) Goldstein guaranteed the repayment of the loan with all the property that he owns.

(6) On the fifth day of each month during the term of the loan, Goldstein would pay Paladin/Chaban $15,000.00 (2% of the loan amount) in remuneration/interest.

On September 5, 2008, in performance of the September 5, 2008 Loan and at the instruction of Goldstein, Paladin wire transferred $800,000 to the account of Star at Citibank, which money both Star and Goldstein knowingly accepted and received a benefit.

b. *The September 8, 2008 Loan*

On September 8, 2008, Paladin and Goldstein entered into a loan agreement (the "September 8, 2008 Loan"). That loan agreement was reduced to writing and a copy of the written agreement was received into evidence. Pursuant to the written agreement, the essential terms of the September 8, 2008 contract were as follows:

(1) Paladin would transfer to Goldstein USD 400,000.00 on September 8, 2008.

(2) The loan would be paid back on March 8, 2009.

(3) Within 3 banking days of March 8, 2009, Goldstein would repay Paladin.

    (4)    Goldstein would have no right to delay payment of loaned sums past March 11, 2009.

    (5)    Goldstein guaranteed the repayment of the loan with all the property that he owns.

On September 8, 2008, in performance of the September 8, 2008 Loan and at the instruction of Goldstein, Paladin wire transferred $400,000 to the account of Star at Citibank, which money both Star and Goldstein knowingly accepted and received a benefit.

  c.  *The January 29, 2009 Loan*

On January 29, 2009, Chaban and Goldstein entered into a loan agreement (the "January 29, 2009 Agreement"). That agreement was reduced to writing and the written agreement was received into evidence. Pursuant to the written agreement, the essential terms of the January 29, 2008 Agreement were as follows:

    (1)    Goldstein acknowledged he had borrowed USD $1,150,000.00 from Chaban.

    (2)    Goldstein was to return this amount with interest on March 9, 2009.

    (3)    Goldstein pledged his 50% ownership interest in m/v Chalsi as collateral for the loan.

    (4)    If the loan was not timely repaid, Chaban would have the right to sell Goldstein's share in the Chalsi.

  d.  *Goldstein and Star Failed to Return All Moneys Lent*

Goldstein failed to return the money they were lent by Plaintiffs. Goldstein knew he could not timely repay the debt, so on March 4, 2009, Goldstein transferred to Paladin 25,000 registered shares of stock in "Dexter Lines Ltd", representing his 50% interest in the company

3

that owned the Chalsi. That transfer is confirmed in writing pursuant to the "Instrument of Transfer of Shares" received into evidence.

Thereafter, on April 8, 2009, Star wire transferred $400,000 to Paladin as an additional partial payment of the debt.

   e. *Value of the m/v Chalsi*

The greater weight of the evidence before the Court demonstrates that at its best, the Chalsi was worth between $350,000 - $400,000 at the time of transfer if the vessel was in sound trading condition, fully classed to the requirement of classification society, free of recommendations and having clean and valid trading certificates and otherwise conforming in all respects with class and safety requirements. This valuation was provided by Ms. Kooy, a qualified expert, who provided the only competent evidence as to the Chalsi's value.

But, Chaban has incurred expense in the approximate amount of $325,000 to repair, license, storage otherwise bring the vessel up to the proper standards. Therefore, the value of the Chalsi at the time of transfer was only $25,000.00.

   f. *Stars Acceptance of the Benefit of the Money*

The money transferred by Paladin/Chaban went directly to Star and there is no evidence to show that the money was used by anyone other than Star. Star admits in its interrogatory response that Star received the money and that "it is impossible to identify what dollars was used for what recipients." Accordingly, Star both could access and utilize the loaned sums for their benefit and no evidence is before the Court showing otherwise. Star could access and utilize of funds, the funds were working capital for Star, interest accrued to Star, and Star had the benefit of greater capitalization. Moreover, the evidence shows that Star, not Goldstein, actually make the $400,000 partial repayment of the loan.

4

But, Goldstein also was conferred a benefit, since as a controlling member of Star he had authority to disburse the monies retained in Star's bank accounts as he saw fit.

Defendants both were aware of such benefits. Defendants' accepted and retained the benefit Plaintiffs conferred upon them. It would be inequitable to allow both to have use of the funds, and not be held accountable for that use.

### g. *Defendants Additional Affirmative Defenses Not Already Discussed*

The Plaintiffs brought this action in a timely manner and did not sit on their rights so as to prejudice the Defendants. Knowing full well that he would not be able to pay back the loan, Goldstein voluntarily transferred his interest in the Chalsi to Paladin even before the loans were due. Plaintiffs' expert values the vessel as of the date of transfer.

Moreover, by the greater weight of the evidence, there was no meeting of the minds sufficient to demonstrate an accord and satisfaction by Chaban in receiving the Chalsi from Goldstein. The evidence demonstrates that the transfer would merely be a set off of the current value of the Chalsi as the time of the transfer and not as a total repayment of the debt.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and of the subject matter.

### i. *The Breach Of Contract Claims*

2. To prevail on a breach of contract action, the plaintiff must prove (1) a valid contract; (2) a material breach; and (3) damages. *Cole v. American Capital Partners Ltd., Inc.*, 2008 WL 2986444 (S.D.Fla.)

3. The Court concludes that Plaintiffs has proven, by the greater weight of the evidence that Paladin and Goldstein entered into a valid contract on September 5, 2008, September 8,

5

2008 and January 25, 2009 and the terms set forth in that contract restated herein bind the parties.

4. The Court concludes that Plaintiffs have proven, by the greater weight of the evidence that Paladin performed its obligations under the September 5, 2008 and September 8, 2008 contracts by transferring by wire $1,150,000.00 U.S. dollars to the account of Star.

5. The Court concludes that Plaintiffs have proven, by the greater weight of the evidence that Chaban performed its obligations under the January 29, 2009 contract by causing $1,150,000.00 U.S. dollars to be wired to the account of Star.

6. The Court concludes that Goldstein materially breached the September 5, 2008, September 8, 2008 and January 25, 2009 contracts by failing to repay the principal and/or interest owed by the agreed upon date.

7. The Court concludes that as a proximate cause of the breach and after mitigation of damages, that Paladin has been damaged in the amount of $725,000.00, plus interest due.

ii. *The Money Lent Claims*

8. "An action for money lent is an action at law which lies whenever there has been a payment of money from the plaintiff to the defendant as a loan." 42 C.J.S., Money Lent, § 2, *Implied Contracts*. The elements of a cause of action of money lent are: (a) Defendant owes plaintiff a sum of money (b) that is due with interest since a certain date. (c) for money lent by plaintiff to defendant on that date. Fla. R. Civ. P. 1.936.

9. The Court concludes that Plaintiffs have proven, by the greater weight of the evidence that Goldstein acting in his capacity as an authorized agent of Star:

 a. directed Plaintiffs to wire the loaned sums to Star's bank account;

 b. indicated that the loaned sum was for the benefit of both Goldstein and Star and;

6

    c. represented to Plaintiffs that the loaned sums would be repaid by Goldstein and Star.

10. The Court concludes that Plaintiffs has proven, by the greater weight of the evidence, that Goldstein owes Chaban $725,000.00 U.S. dollars that is due with interest since March 9, 2009 for money lent by Chaban to Goldstein.

11. The Court concludes that Plaintiffs have proven, by the greater weight of the evidence, that Star owes Paladin/Chaban $725,000.00 U.S. dollars that is due with interest since March 9, 2009 for money lent by Paladin/Chaban to Star.

12. The money is owed jointly and severally by Goldstein and Star.

    iii. <u>The Unjust Enrichment Claims</u>

13. The elements of an unjust enrichment claim are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. *Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1242 (Fla. 2004).

14. The Court concludes that Plaintiffs have proven, by the greater weight of the evidence, that a benefit was conferred on Goldstein and Star. Both defendants both were aware of such benefits. Defendants' accepted and retained the benefit Plaintiffs conferred upon them. It would be entirely inequitable for Defendants to simply retain the benefit of having $725,000.00 dollars indefinitely without paying Plaintiffs the value of the benefit Plaintiffs conferred, or returning the money. As such, Defendants have been unjustly enriched and Plaintiffs have been damaged.

15. The Court concludes that Plaintiffs have proven, by the greater weight of the evidence, that Star and Goldstein, jointly and severally, owe Paladin/Chaban $725,000.00 U.S. dollars that is due with interest since March 9, 2009 for unjust enrichment.

   iv. *The Affirmative Defenses*

16. The Court concludes that Plaintiffs have alleged valid and proper causes of action against Star and Goldstein for breach of contract, money lent and unjust enrichment. Therefore the Court concludes that Defendants' first affirmative defense does not bar this claim.

17. The Court concludes that since payment was not due until March of 2009, and suit was filed only one year after the payment was not made, and Defendants can show no prejudice from any delay in enforcing rights, the affirmative defense of laches does not bar Plaintiffs' claims

18. The Court concludes that the affirmative defense of privity of contract does not bar Plaintiffs' claim, since quasi contract and equitable claims were alleged against Star.

19. The Court concludes that since Goldstein is an authorized agent of Star, and directed the loaned sums to be depositing with Star, and since Star benefited from the Loaned sums, Star is a proper party to this action, and therefore the Defendants' fourth affirmative defense does not bar Plaintiffs' claims.

20. The Court concludes the statute of frauds does not bar this claim against Star Capital, and therefore the Defendants' fifth affirmative defense does not bar Plaintiffs' claims. Sufficient written agreements exist.

21. The Court concludes since the value of the transfer of the Dexter Lines Limited shares and transfer of m/v Chalsi title were properly proven by Plaintiffs and the value is a sum

substantially less the amount of the debt, there is no basis for Defendants sixth affirmative defense of unjust enrichment to bar Plaintiffs' claim.

22. The Court concludes that lack of consideration is not a basis to bar Plaintiffs' claim against Star Capital as Star received and enjoyed the benefit of the loaned sums, and therefore Defendants' seventh affirmative defense does not bar Plaintiffs' claim.

23. The Court concludes that neither the transfer of title to the vessel m/v Chalsi, nor the transfer of Dexter Lines Ltd. shares from Defendants to Plaintiffs constituted accord and satisfaction of Defendants obligations to Plaintiffs, and there has been no other accord and satisfaction of the sum owed by Defendants to Plaintiffs. Therefore Defendants' eighth affirmative defense does not bar Plaintiffs' claim.

24. The Court concludes that neither the transfer of title to the vessel m/v Chalsi, nor the transfer of Dexter Lines Ltd. shares from Defendants to Plaintiffs constituted payment in full, and there has been no such payment in full of the sum owed by Defendants to Plaintiffs. Therefore Defendants' ninth affirmative defense does not bar Plaintiffs' claim.

25. The Court finds that Plaintiffs mitigated their damages by accepting the transfer of Dexter Lines Ltd. shares and transfer of the vessel m/v Chalsi as a form of repayment, and such action by Plaintiffs mitigated the debt owed by Defendants Therefore Defendants' tenth affirmative defense does not bar Plaintiffs' claim.

26. The Court finds that Plaintiffs properly offset their amount owed by reflecting the transfer of Dexter Lines Ltd. shares and transfer of title to m/v Chalsi, since Defendants only other repayment on the loaned sums were the $400,000.00 transfer in April, 2009. Therefore Defendants' eleventh affirmative defense does not bar Plaintiffs' claim.

v. *Adjudication*

9

27. Accordingly, Final Judgment is hereby entered in favor of Plaintiffs Paladin and Chaban against Defendants Leon Goldstein and Star Capital Fund, LLC, jointly and severally, on all claims brought by Plaintiffs.

28. Final Judgment is hereby entered in favor of Plaintiffs Paladin and Chaban, whose address is c/o Phillips, Cantor & Shalek, P.A., Presidential Circle, Suite 500 North, 4000 Hollywood Boulevard, Hollywood, Florida 33021 and against Leon Goldstein, whose address is 17555 Collins Avenue, Sunny Isles Beach, FL 33160, and against Star Capital Fund, LLC with an FEI/EIN Number 262352130 whose primary address is 3363 NE 163 Street, Suite 705, North Miami Beach FL 33160 for compensatory damages in the sum of $725,000.00, plus interest set forth in the parties loan contract, plus pre-judgment interest, post judgment interest accruing at the rate of 6%, for which sum let execution issue.

29. Plaintiffs shall recover costs from Defendants which sum shall be determined upon subsequent motion by Plaintiffs and the Court reserves jurisdiction in connection therewith.

DONE AND ORDERED in Chambers at Miami, Florida this ____ day of June, 2011.

_____
CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Gary S. Phillips, Esquire
Charles Lichtman, Esquire