```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
                      CASE NO. 10-21612-CIV
 3

 4   PALADIN SHIPPING CO., LTD.      Miami, Florida
     and ANATOLIY CHABAN,
 5                                   December 13, 2013
             Plaintiffs,
 6                                   2:18 p.m. to 3:05 p.m.
        vs.
 7                                   Courtroom 12-2
     STAR CAPITAL FUND, LLC, et
 8   al.,                           (Pages 1 to 42)

 9           Defendants.

10
                        STATUS CONFERENCE
11       BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                 UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13
       FOR THE PLAINTIFFS:   JEFFREY B. SHALEK, ESQ.
14                           Phillips, Cantor, Shalek & Rubin, P.A.
                             Presidential Circle
15                           4000 Hollywood Boulevard
                             Suite 500 North
16                           Hollywood, Florida 33021
                             (954) 966-1820
17                           Jshalek@phillipslawyers.com

18     FOR THE DEFENDANT     STEFANIE R. SHELLEY, ESQ.
       75 RETAIL            Tobin & Reyes, P.A.
19     ENTERPRISES, INC.:   225 Northeast Mizner Boulevard
                             Suite 510
20                           Boca Raton, Florida 33432
                             (561) 620-0656
21                           Sshelley@pm-law.com

22     FOR THE DEFENDANTS
       PINNACLE THREE        MICHAEL A. SAYRE, ESQ.
23     CORPORATION and       Heller Waldman, Attorneys at Law
       VERNAL USA, INC.:     3250 Mary Street, Suite 102
24                           Coconut Grove, Florida 33133
                             (786) 464-8943
25                           Msayre@hellerwaldman.com
```

1    APPEARANCES CONTINUED:

2

3    FOR THE DEFENDANT          FRANCIS SEXTON, JR., ESQ.
     LEON GOLDSTEIN            Fowler Rodriguez Valdés-Fauli
                               355 Alhambra Circle, Suite 807
4                              Coral Gables, Florida 33134
                               (786) 364-8400
5                              Fsexton@frvf-law.com

6

7    REPORTED BY:              STEPHANIE A. McCARN, RPR
                               Official Court Reporter
                               400 North Miami Avenue
8                              Twelfth Floor
                               Miami, Florida 33128
9                              (305) 523-5518
                               Stephanie_McCarn@flsd.uscourts.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

<u>I N D E X</u>

|  | <u>DIRECT</u> | <u>CROSS</u> | <u>REDIRECT</u> | <u>RECROSS</u> |
|---|---|---|---|---|
| <u>WITNESSES FOR THE PLAINTIFFS:</u> | -- | -- | -- | -- |
| <u>WITNESSES FOR THE DEFENDANTS:</u> | -- | -- | -- | -- |

| <u>EXHIBITS MARKED & ADMITTED IN EVIDENCE</u> | <u>MARKED</u> | <u>ADMITTED</u> |
|---|---|---|
| Plaintiffs' Exhibit No. | -- | -- |
| Defendants' Exhibit No. | -- | -- |

<u>MISCELLANEOUS</u>

Proceedings.......................................... <u>Page</u> 4
Court Reporter's Certificate....................... 42

```
 1          (The following proceedings were held at 2:18 p.m.)
 2               THE COURT:  Good afternoon, please be seated.  Could I
 3     ask counsel to state your names for the record, please.
 4               MR. SHALEK:  May it please the Court, Jeffrey Shalek,
 5     Phillips, Cantor, Rubin & Shalek (sic), on behalf of the
 6     judgment creditor Anatoliy Chaban and Paladin Shipping and the
 7     defendant in the intervention case.
 8               MR. SAYRE:  Your Honor, Michael Sayre and Jason Gordon
 9     of Heller Waldman, on behalf of Pinnacle Three and Vernal.
10     Pinnacle Three is the plaintiff in the -- plaintiff in the
11     declaratory judgment action that's been filed, Vernal is the
12     intervenor.
13               MR. SEXTON:  Francis Sexton, Your Honor, for defendant
14     Leon Goldstein.
15               MS. SHELLEY:  Good afternoon, Your Honor, Stefanie
16     Shelley with Tobin & Reyes for the impleaded defendants, 75
17     Retail, 40 Retail, Century Drive Retail, Sterlington Retail and
18     Texarkana Retail.
19               THE COURT:  I'm sorry, could you state your name
20     again?
21               MS. SHELLEY:  Stefanie Shelley with Tobin & Reyes.
22               THE COURT:  Thank you.
23               MS. SHELLEY:  Thank you.
24               THE COURT:  I would ask, first, for the lawyers to
25     please address the complaint on the newly added party and what
```

1    it is we are going to be doing with that, quite frankly.

2              MR. SAYRE:  Your Honor, actually, I misstated earlier.

3    It's Vernal who is the plaintiff in that complaint.  And it is

4    a declaratory judgment action complaint, basically to determine

5    priority in terms of procedure.  As I understand it, it would

6    proceed under the Federal Rules of Civil Procedure, supposing

7    that the defendant would have 20 days to respond.  I think it

8    could be decided on the pleadings or pursuant to some

9    dispositive motion practice.  I don't know whether an

10   evidentiary hearing will be required.  Those are my thoughts on

11   it.

12             THE COURT:  Why isn't this brought as an independent

13   action?

14             MR. SAYRE:  Why wasn't it brought as an independent --

15   in the --

16             THE COURT:  In other words, why -- I granted

17   intervention but I have been having second thoughts about it,

18   quite frankly.  You are seeking a new declaratory judgment over

19   something I haven't considered that was not the subject of

20   these proceedings and it is something completely new.

21             MR. SAYRE:  Well, and the case law cited in our motion

22   to intervene addresses that.  And the fact is, the declaratory

23   judgment is to determine priority on the judgment, so it is

24   really a -- it's a post-judgment issue.  And I don't have the

25   cases in front of me because I didn't know we would be

1    addressing that today, but the case law cited in the -- I would

2    cite to the case law cited in the motion to intervene as to the

3    law behind bringing a declaratory judgment action that

4    determines priority in post-judgment proceedings.

5            THE COURT:  So this case is starting all over again

6    then.  This is like a brand-new lawsuit except you didn't have

7    to pay a filing fee, essentially, right?

8            MR. SAYRE:  Well, no.  You know, the lawsuit -- the

9    subject of the lawsuit was the subject of the lawsuit.  The

10   issue in the declaratory judgment complaint is very simple.

11           THE COURT:  So simple that the parties can't agree?

12           MR. SAYRE:  Well, for the defendant to agree, it would

13   mean that their judgment is void.  So I doubt they are going to

14   agree to that.  I would love for them to agree that.  But the

15   fact is they filed a judgment lien certificate before they were

16   allowed to file a judgment lien certificate and therefore their

17   judgment lien certificate is void.

18           THE COURT:  And if that's the case, then just stand on

19   that position and why do you need me to declare that?  If it,

20   in fact, is void, it's void.

21           MR. SAYRE:  Well, they are executing as if -- though

22   that judgment lien certificate is not void.

23           THE COURT:  Have they executed yet?

24           MR. SAYRE:  They have been -- they have been trying to

25   execute like crazy.  They have, actually, executed it on some

1    jewelry already, so, yes, they have been executing.

2           THE COURT:  And who has the jewelry?

3           MR. SAYRE:  That's -- these gentlemen would know

4    better than I do.  I think that's an issue before Your Honor,

5    as well.  But the fact is they have been executing on a

6    judgment lien certificate that we say is void.

7           THE COURT:  And so you just need for me to tell you

8    it's void?

9           MR. SAYRE:  Yes.

10          THE COURT:  And you filed the complaint.  Have you

11   served it?

12          MR. SAYRE:  You do not have to -- and I would be happy

13   to brief it for Your Honor, you do not have to serve a

14   complaint filed in a supplementary proceeding.

15          THE COURT:  So when is the answer due?

16          MR. SAYRE:  It's December 23rd.

17          THE COURT:  And then what?  I need to enter a

18   scheduling order on that whole new -- brand-new case that you

19   filed in this case?

20          MR. SAYRE:  It would be a -- obviously, that's up to

21   Your Honor, but I -- some sort of briefing schedule as to the

22   declaratory judgment complaint and to the extent Your Honor --

23          THE COURT:  Discovery that needs to be taken?

24          MR. SAYRE:  No, I don't feel any discovery needs to be

25   taken.  I think it could be decided on the -- on a dispositive

1   motion.  And to the -- really discovery has -- any discovery

2   that would need to be taken, I believe, has been taken already.

3           THE COURT:  Now, you just filed -- was it you who

4   filed a motion for leave to file a surreply, I believe?

5           MR. SAYRE:  Yes -- yes, ma'am.

6           THE COURT:  Did you confer with the parties before

7   filing that?  I didn't see a certificate of conferral.

8           MR. SAYRE:  No, we did not.  And I will withdraw that

9   motion and confer with parties -- with the parties after this

10  hearing and refile if --

11          THE COURT:  Now, isn't that motion to compel something

12  that I need to put aside until I resolve your new complaint?

13          MR. SAYRE:  I would think so, yes.

14          THE COURT:  All right.  So it's not a -- it's not a

15  motion that, in your mind, could properly be decided until I

16  rule on your complaint?

17          MR. SAYRE:  I think that -- I think the complaint is

18  essential because it determines, really, who is allowed to go

19  out and get the judgment debtor's stuff, I mean, to put it in

20  simple terms.

21          THE COURT:  Thank you very much.

22          MR. SAYRE:  Thank you, Your Honor.

23          THE COURT:  I will hear from plaintiffs' counsel.

24          MR. SHALEK:  May it please the Court, obviously, I

25  disagree with most of what Mr. Sayre said.  I -- there will be

1    a dispositive motion with regard to the complaint.  We are in

2    the process of preparing and will timely file a 12(b)(6) motion

3    to dismiss or alternative motion for summary judgment under

4    Rule 56.  Our judgment lien is not void.  He is misinterpreting

5    the law when it comes to when or when we couldn't file the

6    judgment lien.  The judgment lien --

7              THE COURT:  Haven't we been down this road, already?

8              MR. SHALEK:  We have not actually had this issue heard

9    before the Court.  It's new issue.  I'm not aware --

10             THE COURT:  Have you discussed it with Mr. Sayre?

11             MR. SHALEK:  I have discussed it with Mr. Sayre and I

12   don't know that we're going to be able to -- we'll continue to

13   discuss it.  I am hopeful that we'll be able to agree without

14   Court intervention, but for the time being, I think there is a

15   very dispositive answer to the question.  And just as a, you

16   know, preliminary, Your Honor, if you look at Docket Entry 199,

17   the Court originally filed a supplemental judgment after the

18   mandate from the Eleventh Circuit -- the -- from the Eleventh

19   Court of Appeals.  Thereafter, Docket No. 200, 14 days later,

20   they filed a Rule 59.

21             THE COURT:  Who is "they"?

22             MR. SHALEK:  Goldstein, the judgment debtor, filed a

23   Rule 59 motion.  The Court then amended the judgment and we --

24   after the amended judgment was entered, the amended judgment

25   was Docket No -- I believe it's 201.  202 is the supplemental

```
 1   final judgment.
 2         But the supplemental final judgment, all it did was,
 3   it didn't change anything dispositively in the judgment.  It
 4   simply corrected a error because we originally put the
 5   post-judgment interest in at the state rate instead of the
 6   federal rate.  So everything stayed the same but the Court
 7   corrected the interest rate.  So under the applicable case law
 8   that we'll cite to you, they then filed a second Rule 29 motion
 9   some 20 days later that was improper under the rules.  And
10   counsel over here is saying that we should have waited until
11   after the second Rule 59 motion improperly filed was heard
12   before we filed our judgment lien certificate, but the law is
13   very clear that he is wrong on that.
14         As to the issue of what the Court should do with the
15   motion to compel, they are raising what we consider to be a red
16   herring issue as to their entitlement to the money.  Here is
17   what we know, Your Honor, we know that there is a judgment
18   against Leon Goldstein.  We know that Leon Goldstein owns all
19   of Pinnacle Three.  They are claiming that they have the rights
20   to Pinnacle Three.
21         THE COURT:  Who is "they"?
22         MR. SHALEK:  Vernal.  Vernal is claiming they it has
23   the rights to Pinnacle Three.  We are claiming that we have the
24   rights to Clinical Three -- Pinnacle Three.  We are asking the
25   Court to preserve the status quo and exercise its equitable
```

1 powers and say to the supplemental parties who, under the

2 settlement agreement, are paying Pinnacle Three, $40,000 a

3 month.   That's the only asset that Leon Goldstein has is this

4 stream of payment for $40,000 a month.   We are asking the

5 Court, simple, hold it in the registry, let Mr. Waldman's firm

6 hold it in trust, let my firm hold it in trust, let the Court

7 decide who gets the money.   But we know who doesn't get the

8 money and that's Leon Goldstein and his company, Pinnacle

9 Three.   We have a million-dollar judgment against them, we have

10 a 3 -- Vernal has a $3 million judgment against them.   My

11 motion does not ask the Court in any way, shape or form to

12 award the money to my client.

13         THE COURT:   Then why doesn't Mr. Sayre agree to it?

14         MR. SAYRE:   Your Honor, there is a major

15 misunderstanding or presumption underlying his motion and that

16 is that Leon Goldstein owns Pinnacle Three.   Leon Goldstein

17 does not own Pinnacle Three.   Leon Goldstein, in a deposition

18 two weeks ago, testified that he does not own Pinnacle Three.

19 The motion is based on an invalid presumption.   Pinnacle Three

20 is owned by North Star Maritime, Inc., who is not a party to

21 this case.

22         THE COURT:   I'm sorry, but answer the question, why do

23 you object to having the funds --

24         MR. SAYRE:   Oh, because they're -- because the

25 funds -- he is saying the only debtor in this case is Leon

```
 1    Goldstein.  And the only person that he can collect from is
 2    Leon Goldstein.  He is saying that -- Mr. Sayre is saying Leon
 3    Goldstein owns an interest in Pinnacle Three and Pinnacle Three
 4    is receiving money.  And, therefore, because Leon Goldstein
 5    owns an interest in Pinnacle Three, he is entitled to that
 6    money.  But the fact that --
 7              THE COURT:  Who is "he"?
 8              MR. SAYRE:  Mr. Shalek, I'm sorry.
 9              THE COURT:  But I thought Mr. Shalek said that it was
10    Mr. Goldstein who was receiving $40,000 a month.
11              MR. SAYRE:  He is not receiving $40,000 a month.
12              THE COURT:  It is Pinnacle Three that is?
13              MR. SAYRE:  It is Pinnacle Three that is.
14              MR. SHALEK:  It is Pinnacle Three that is, Your Honor.
15    But if you look at Document 204, Exhibit 1, we've attached the
16    affidavit of Leon Goldstein where he claims in his affidavit
17    that he is the hundred percent shareholder of Pinnacle Three.
18    And now, in Vernal's motion and in their complaint here, they
19    are claiming that that hasn't been true for seven years, that
20    seven years ago Leon Goldstein gave his shares in Pinnacle
21    Three to their assignor North Star Maritime.  Well, then why is
22    he filing affidavits in court saying that he owns it?
23              There is something amiss, the Court can determine it,
24    but for right now --
25              THE COURT:  No, but I can't determine it on paper.
```

1          MR. SHALEK:  I am not -- you can -- I agree.  There

2    may be more discovery and there may have to be a hearing and a

3    trial and an evidentiary hearing on the issue, Your Honor.

4          THE COURT:  Well, then how can I order these funds

5    that -- how can I grant you the relief you are seeking and

6    order the funds held by the Court's registry?

7          MR. SHALEK:  Because we know that between the two

8    parties, Vernal and the judgment creditors that were claiming

9    it, we're both claiming opposing interest.  Neither of us are

10   Pinnacle Three.  And Pinnacle Three, as you can see by my

11   motion, is receiving the money every month.  What they are

12   doing with it we are still not sure, but there is no reason for

13   that entity to be receiving checks anymore.  Let the Court hold

14   on to it and determine whose money it is.

15         THE COURT:  Well, then I am missing something, then I

16   don't understand why Mr. Sayre has an objection, if both of you

17   want these funds.  You both want to get your hands on the

18   money.  You both want to make sure Pinnacle Three doesn't

19   dissipate it, whoever might be controlling it.

20         So Mr. Sayre, why do you object to the funds being

21   held by the registry?

22         MR. SAYRE:  Okay, because Mr. Goldstein has no rights

23   in Pinnacle Three.

24         THE COURT:  I understand and that's great that you to

25   speak for Mr. Goldstein, but you don't represent him, nor do

```
 1    you frankly care, do you?
 2           MR. SAYRE:  Yes, I care because Norse -- first of all,
 3    I want to correct the statement, Vernal --
 4           THE COURT:  I thought Mr. Sexton represents
 5    Mr. Goldstein.
 6           MR. SAYRE:  Mr. Sexton does represent him.  I have no
 7    interest in protecting Mr. Goldstein.
 8           THE COURT:  It sounds like you do, though.  I mean,
 9    you keep saying, Goldstein has nothing to do with Pinnacle.
10           MR. SAYRE:  What I am doing is I'm correcting --
11    because what Mr. Shalek -- let's back up.  Mr. Shalek said that
12    he is entitled to these funds going to Pinnacle Three.  We
13    agree on that.  Now, he says he's entitled to those funds going
14    to Pinnacle Three because Mr. Goldstein owns an interest in
15    Pinnacle Three.
16           THE COURT:  A hundred percent of the shares, according
17    to Mr. Shalek.
18           MR. SAYRE:  He doesn't.
19           THE COURT:  No, I understand you say he doesn't,
20    that's why I said there is a disputed factual issue.
21           MR. SAYRE:  Well, it's -- there is a presumption, we
22    hold the stock certificates.  When I say "we," a nonparty to
23    this case, North Star Maritime, holds the stock certificates,
24    all of the stock certificates of Pinnacle Three.  North Star
25    owns Pinnacle Three.
```

1        THE COURT:  And that's what the stock certificates

2   show?

3        MR. SAYRE:  Yes.

4        THE COURT:  All right.  And assuming North Star owns

5   all of these stock certificates, $40,000 a month is going to

6   Pinnacle Three from whom or what?

7        MR. SAYRE:  Well, money is owed to Pinnacle Three from

8   some borrowers under a mortgage and a note and that's where the

9   $40,000 comes in.

10        THE COURT:  And that goes where?

11        MR. SAYRE:  That -- those checks are made out to

12   Pinnacle Three and they are being deposited in an account

13   somewhere, I don't know.  But the funds really belong -- North

14   Star is Pinnacle Three.

15        THE COURT:  Right.  So is the money going to North

16   Star?

17        MR. SAYRE:  The money is eventually going to North

18   Star, yes.

19        THE COURT:  And you represent an assignee of North

20   Star?

21        MR. SAYRE:  We represent an assignee of North Star,

22   yes.

23        THE COURT:  All right.  And this assignee of North

24   Star wants this money?

25        MR. SAYRE:  No.

```
 1              THE COURT:  This assignee of North Star is owed $3
 2   million by Goldstein?
 3              MR. SAYRE:  Yes.
 4              THE COURT:  But the assignee of North Star isn't
 5   looking to North Star for the money, it's looking to Goldstein
 6   for the money?
 7              MR. SAYRE:  It is looking -- it is looking to
 8   Goldstein for the money.  Those moneys are being used to -- for
 9   lack of -- those moneys are being used to satisfy the judgment.
10              THE COURT:  What judgment?
11              MR. SAYRE:  The judgment that Vernal has against --
12   against Goldstein.
13              THE COURT:  So the $40,000 a month is going to your
14   client right now?
15              MR. SAYRE:  Well, which one?
16              THE COURT:  I don't know, because I am not quite sure
17   who you represent.
18              MR. SAYRE:  I represent a nonparty in this case, North
19   Star Maritime, who previously tried to intervene and that
20   intervention was denied.  And I also represent Vernal.
21              THE COURT:  Right, so you represent them both.
22              MR. SAYRE:  And I represent Pinnacle Three, Florida.
23              THE COURT:  All right.  So you represent all of the
24   parties about whom you are speaking?
25              MR. SAYRE:  Yes.
```

1          THE COURT:  All right.  So let's be clear then, let's

2    not mince words.  You represent all three parties.

3          MR. SAYRE:  Yes.

4          THE COURT:  And these parties are quite happy with the

5    current arrangement?

6          MR. SAYRE:  My three parties are quite happy with the

7    arrangement.

8          THE COURT:  Quite happy, you don't want that

9    arrangement disturbed?

10         MR. SAYRE:  No.

11         THE COURT:  All right.

12         MR. SHALEK:  There is something else that he is not

13   telling you and that's how North Star got its interest.  He is

14   saying that North Star got its interest because it is the

15   holder of the stock certificate, but that's not what it says in

16   the intervention complaint.  The intervention complaint states

17   that it is getting the money because of a judgment that it

18   received from the state court, which it believes was record --

19   has recordation priority to the judgment creditors' judgment in

20   this case because we improperly filed our judgment lien

21   certificate.

22         In fact, Your Honor, it is of record in the state

23   court that they filed their lawsuit on August 14, 2013, and

24   within ten days Goldstein entered -- and Pinnacle entered into

25   a stipulated final judgment in excess of $3 million, simply so

1    that they could record the judgment and try and leapfrog our

2    lien.

3              If -- the whole thing is in complete bad faith.  And

4    now they are standing here before Your Honor saying, leave

5    everything alone, let us continue to get the $40,000 a month,

6    we are quite happy with that stream of revenue, it will fund

7    this lawsuit.  And let's keep the judgment creditor here who is

8    owed, actually, over a million dollars out of the loop.  And in

9    the year it takes us to litigate this thing, we will have

10   pocketed a half a million dollars.  That's what they are

11   saying.

12             We are saying, it's quite simple, preserve the status

13   quo, let's form a chest and let's let the parties decide who is

14   entitled to get the money before all the money is dissipated.

15             THE COURT:  Right, but they like the current

16   arrangement, they like getting the $40,000.

17             MR. SHALEK:  I am sure they do but the -- everything

18   that they have done --

19             THE COURT:  Let's assume -- let's assume everything

20   they did was in good faith and there is not some other story

21   here that I'm not being told --

22             MR. SHALEK:  Then the Court --

23             THE COURT:  And then -- and that you lose and that

24   they are properly entitled to the money?

25             MR. SHALEK:  Then they have the money because it's --

                THE COURT:  But they had the money, they have the

money now, why do they need to wait?  They would like to have

the money every month, they don't want to wait for a resolution

of this.

                MR. SHALEK:  Well, simply because this Court has

equitable powers to preserve the status quo.  Clearly, there is

substantial issues, there is an air of fraud here of what's

going on.  My client did not improperly record its judgment.

You know, it can be briefed and it will be briefed in short

order.  I can have a brief to you on it by Monday of next week,

if you want.  But in the meantime what this Court -- what we

are asking the Court to do, just create, if you will, a

constructive trust.  And it can sit in his trust account, I

don't care where it sits, no one is going to do anything with

it until the Court orders something to be done with it.

                But right now it is just going to pay a different

judgment creditor of Goldstein's and that's a fraudulent

transfer if we are held first.  And the best thing that the

Court can do and the only equitable thing the Court should do,

I submit, is preserve the trust and rule who is entitled to the

money.

                THE COURT:  And is that what your motion to compel

sought?  I thought you sought more than that.

                MR. SHALEK:  I don't believe so.

                THE COURT:  No?  Your motion to -- it says, "Motion to

1  compel payment of settlement funds to judgment creditors."

2  That is not what you are asking now.  What you are asking is

3  that it not be paid to your client but that it be deposited in

4  some account from which it will be secure.

5       MR. SHALEK:  I'd ask that the -- directly to judgment

6  creditors' trust account in satisfaction or alternatively into

7  the Court's registry until the stock is recovered and the Court

8  determines who is entitled to the funds.

9       And then in the reply that we filed just the other

10  day, in that document we stated, let's just go ahead -- now

11  that we have seen what's going on here, let's just go ahead and

12  have the Court put it somewhere where it's held in trust until

13  the Court can make a ruling.  And that's the fair and equitable

14  thing to do.  And as I cited in the case law, in Rule 56. -- in

15  statute 56.29 supplementary proceedings, the Court sits in

16  equity and has the absolute authority to make these types of

17  equitable decisions.

18       And you have a -- a impleaded party, Pinnacle Three,

19  claiming the money, because everybody here is coming as

20  Pinnacle Three in their shoes.  You have 40 Retail, 75 Retail

21  and Sterlington Retail saying, Your Honor, we don't care who

22  gets the money, you know, but just rule that we're complying

23  with the settlement agreement.  And, by the way, the money is

24  not being paid according to the judgment, it's being paid

25  according to a settlement agreement with Pinnacle Three and

1   it's -- you know, I have said it over and over, but one last

2   time we ask that you, you know, sit in equity and determine,

3   hey, why should you decide now which party gets the money?

4   Let's just hold it and let's shake it out and let's see who is

5   entitled.  There is no harm or prejudice to anybody in doing

6   that.

7            Keeping it as it is currently is going to be a

8   half-a-million-dollar prejudice to my client and a

9   half-a-million-dollar windfall to Mr. Sayer's clients.

10            THE COURT:  You don't need discovery on the complaint?

11            MR. SAYRE:  As far as I am concerned, no and --

12            THE COURT:  I'm sorry, I am asking Mr. Shalek.

13            MR. SAYRE:  Oh, I'm sorry.

14            THE COURT:  Because he intends filing a motion for

15   partial summary judgment along with his motion to dismiss or

16   motion for final summary judgment.

17            MR. SHALEK:  Yes, and I will say that if the Court

18   does not rule in our favor, we would take discovery on the

19   issue of -- okay, the --

20            THE COURT:  Because if the parties were going to do

21   any sort of the discovery, let's not have you file a motion for

22   summary judgment with your 12(b)(6) motion.  I would have to

23   deny it under Rule 56 and give them a chance to do discovery on

24   it.

25            MR. SHALEK:  We believe, Your Honor, that aside from

```
 1    the issues raised on the face of the complaint, which can be
 2    resolved as a matter of law, to the extent that the Court
 3    disagrees with that, the agreements, the stock transfer
 4    agreements, the pledge agreements, are -- were procured with
 5    fraud.  They are claiming that these were signed seven years
 6    ago --
 7            THE COURT:  Right, but procuring something with fraud
 8    is a fact-intensive determination that you would presumably
 9    want the trier of fact, i.e., me, to make and it would have to
10    be made at a trial.
11            MR. SHALEK:  I would agree with that and that's
12    assuming simply that we cannot get past the initial summary
13    judgment motion on the issue of whether or not how they are
14    claiming the priorities work in this case, as a matter of law,
15    is wrong.  If the Court says, you know, I think that --
16            THE COURT:  What are you going to present in a summary
17    judgment motion that I don't already have on the pleading?  I
18    mean, you know, documents essential to that complaint --
19            MR. SHALEK:  Yes, Your Honor.
20            THE COURT:  -- I can consider and it doesn't convert
21    the motion.
22            MR. SHALEK:  I think that's what I am saying.  The
23    case law says that we can file it as Rule 12(b)(6) motion and
24    to the extent that we attach a document outside the four
25    corners of the complaint, the Court, at its discretion, can
```

1    convert it to a Rule 56 motion and require them to respond to a

2    Rule 56 motion.  We intend to attach various other records that

3    are in the docket here that the Court can take judicial notice

4    of and would ask the Court to consider them, which is

5    technically outside the four corners of the complaint and which

6    would require the Court to make the determination that it is no

7    longer a 12(b)(6) motion and, in fact, a Rule 56 motion.  And

8    then you can rule on the declaratory judgment as a matter of

9    law that we -- that our -- that my client's lien is superior

10   and was properly filed and is superior to Vernal's lien.

11           So when I say that, it is only because we do intend to

12   attach documents and having gone through the Eleventh Circuit

13   case law, once we do that, the Court, at its discretion, must

14   change it to a 56 motion.

15           THE COURT:  All right.

16           And, Mr. Sayre, are you going to be seeking time to do

17   any discovery in response to that motion which we are going to

18   see shortly?

19           MR. SAYRE:  That motion, I would have to confer with

20   my client but I don't think so.  I mean, I think it should be

21   decided on the plaintiffs.

22           THE COURT:  All right.

23           MR. SAYRE:  And I don't want to confuse things, Your

24   Honor, I really don't.  But that solves one issue.

25   Mr. Shalek -- and this is in regards to the motion to compel

1    settlement funds.  Mr. Shalek made some representations

2    regarding fraud, fraud this, fraud that.  The fact is, right

3    now my client, North Star, who is not a party to this case, is

4    the holder of Pinnacle Three -- all Pinnacle Three stock

5    certificates.  So North Star is entitled to all moneys going

6    into Pinnacle Three.

7           Mr. Shalek's argument presupposes that we are not --

8    that North Star Maritime is not the owner of Pinnacle Three and

9    that Goldstein is.  And he bases that solely on an affidavit

10   from 2012 in which Goldstein said that he is a hundred percent

11   owner of Pinnacle Three.  At his deposition two weeks ago

12   Mr. Goldstein said he is not owner of Pinnacle Three but rather

13   North Star Maritime is owner of Pinnacle Three.  And just for

14   clarification -- and, Your Honor, it is actually in North Star

15   Maritime's motion to intervene in this case, we kind of explain

16   what happened and there is also a notice of filing where we

17   include stock certificates and a loan agreement.

18          The stocks were not -- just to correct some statements

19   that Mr. Shalek made.  The stocks in Pinnacle Three were not

20   given seven years ago.  The stocks in Pinnacle Three were in

21   association with a loan agreement and were provided as

22   collateral.  Mr. -- and it was a loan agreement to Pinnacle

23   Three and to Goldstein.  And Mr. Goldstein and Pinnacle Three

24   defaulted under that loan and so North Star executed on that

25   collateral, the stock certificates and is now a hundred percent

1   owner of Pinnacle Three, Florida.

2           So all this talk about motion to compel and moving

3   funds from Pinnacle Three into the court registry, there is

4   absolutely no basis other than Mr. Goldstein's, really,

5   unsupported -- I'm sorry, Mr. Shalek's unsupported statements

6   that there was some fraud involved.

7           He needs -- he needs to prove that up.  He can't just

8   say, hey, there is fraud, therefore start putting money into

9   the court registry.

10          MR. SHALEK:  May I respond very briefly, Your Honor?

11  Everything that he said is outside the four corners of the

12  complaint.

13          THE COURT:  Let me ask a question, Mr. Shalek.

14  40 Retail, Century Drive and Sterlington, I have jurisdiction

15  over those parties?

16          MR. SHALEK:  Yes, they have all been impleaded and

17  have responded and have responded to the instant motion, Your

18  Honor.

19          THE COURT:  And those are the ones --

20          MR. SHALEK:  And they were represented here today.

21          THE COURT:  Right.  And those are the ones who are

22  making these monthly payments of $38,904; is that right?

23          MR. SHALEK:  That's correct.  And their response to

24  this motion was, We don't really care what you do --

25          THE COURT:  Right.

```
1          MR. SHALEK:  -- just as long as it doesn't affect the
2    status of our settlement agreement.  If the Court says pay it
3    here, then we are still in compliance.
4          THE COURT:  So given that I have jurisdiction over
5    those settling corporations, I'll order that those funds be
6    placed into the court registry and grant your motion because I
7    have authority to order them to do that.
8          MR. SHALEK:  Correct.
9          THE COURT:  And they don't object.  And you prepare
10   the order granting your motion and spelling out exactly what it
11   is you want them to do.  All right?
12         MR. SHALEK:  Thank you, Your Honor.
13         MR. SAYRE:  Your Honor, because a lot has been thrown
14   around here, I would ask the Court to at least allow us to
15   brief that issue.
16         THE COURT:  It has been briefed.  It's fully briefed.
17         MR. SAYRE:  Well, not by -- we were not involved in
18   the briefing.  That's what we asked for, we asked for
19   permission to file a brief.  That was what we filed yesterday.
20         THE COURT:  Right, and I saw your motion for leave to
21   file a surreply and in the meantime the funds will be
22   preserved, the motion is granted and I will resolve your
23   complaint in due course.  If you are wrong, the funds go to
24   Goldstein -- I am sorry, to the plaintiff.  If you are right,
25   the funds go to you.  There is no harm to you.
```

1          MR. SAYRE:  The complaint does not -- the complaint

2    does not solve that issue.  The complaint --

3          THE COURT:  Right, but the funds are preserved and I

4    have jurisdiction over the parties who have to make the

5    payments pursuant to a settlement agreement.  They don't care

6    and the plaintiff here does, indeed, care and simply wants the

7    funds preserved.

8          You don't like it, you would rather have the funds in

9    hand and this is just a short delay because to the extent that

10   this is teed up and addressed, we are talking of a very short

11   period of time when the funds are placed into a court registry

12   versus into your clients' hands.

13         MR. SAYRE:  But, Your Honor.

14         THE COURT:  And it is doing the equity that I should

15   be doing to preserve the status quo.

16         MR. SAYRE:  I understand.  But, Your Honor, you are

17   talking about deciding the declaratory judgment complaint and

18   that will decide all issues and then the money can go to the

19   right people.  But that's -- deciding the declaratory judgment

20   complaint does not solve the issue.

21         In order -- in order for Mr. Shalek to be entitled

22   to -- and his client to be entitled to those moneys --

23         THE COURT:  He is not getting them right now.

24         MR. SAYRE:  No, no, but he -- down the road, even if

25   we lose on the declaratory judgment complaint, Mr. Shalek is

1   not entitled to those moneys.

2           THE COURT:  I will cross that bridge when we get to

3   it, right?

4           MR. SAYRE:  But, well, what I'm -- Your Honor, right

5   now, Mr. Shalek has made an allegation regarding fraud and

6   based on that, he is almost getting a prejudgement writ of

7   attachment on these moneys without posting a bond.  He -- I am

8   saying and we have got stock certificates in our hands when

9   there is a presumption under the law if you have the stock

10  certificates that you are the owner.  We are losing that

11  presumption.  Your Honor is just saying that that

12  presumption -- I am going to ignore that presumption and allow

13  these funds to start --

14          THE COURT:  You intervened in this case for purposes

15  of filing that complaint that I told you initially at this

16  hearing I, frankly, have second thoughts about having allowed

17  it.  I have allowed it, we will go forward on it, we will get

18  the Court's resources and time spent on resolving this legal

19  issue that you say is so clear.  But, in the meantime, I have

20  got proper parties here, I have got a plaintiff who has been

21  going through collection efforts for the better part of, I

22  don't know, a year?

23          MR. SHALEK:  Yes, Your Honor.

24          THE COURT:  Longer?  And I have got parties who,

25  frankly, don't care where the money goes to so long as they

1   have paid and they are in compliance.  And the money will go

2   into the court registry.  And your objection is that

3   Mr. Shalek's position is not well taken, Mr. Shalek's client is

4   not entitled to the funds, and I will be deciding that when I

5   decide your complaint and intervention, right?

6            MR. SAYRE:  No.  What I am saying is deciding the

7   complaint of intervention will not solve what happens -- will

8   not decide who is entitled to these funds.

9            THE COURT:  What will?

10            MR. SAYRE:  What will?  Mr. Shalek somehow

11   establishing, which I've seen nothing to -- all it is is

12   allegations that North Star does not own Pinnacle Three, that

13   the loan agreement that was entered five years ago before a

14   judgment was obtained and the stocks certificates associated

15   with that loan agreement are all fraud.  He needs to establish

16   that in order to get that money.  And he actually -- he has no.

17            THE COURT:  Right, so that's what he is going to have

18   to establish.

19            MR. SAYRE:  That's for the declaratory judgment

20   complaint.  The declaratory judgment complaint is, very simply,

21   is his judgment lien certificate void?  That's the only thing.

22            THE COURT:  Right.  Assume you win that, then what?

23            MR. SAYRE:  Then what?  If it's void?  Then not

24   only -- put aside the $40,000, he's got to stop executing

25   altogether.

            THE COURT:  All right.  Let's assume you win on your

complaint and intervention and all the funds in the registry go

to you.

            MR. SAYRE:  They are, regardless of whether --

            THE COURT:  Well, not if I enter an order saying they

are going to be in the court's registry in the meantime.  So

let's assume you win in your complaint and intervention, all

these moneys from the registry will go to you, true?

            MR. SAYRE:  I mean, but -- they -- I suppose they

would but, Your Honor, the issue being decided in regards to

those moneys is not at issue in the declaratory judgment

complaint.  The fact is --

            THE COURT:  The effect of the declaratory judgment

complaint will be -- the effect of it will be that those funds,

if you win, are not going to Mr. Shalek's client.

            MR. SAYRE:  I will ask Mr. -- I will ask Your Honor

and then I will ask Your Honor to ask Mr. Shalek.  If we -- if

we win the declaratory judgment complaint, are you going to say

the $40,000 that -- is ours?

            MR. SHALEK:  I don't have the authority to say that,

the judge does that.

            MR. SAYRE:  Yeah, but --

            THE COURT:  Are you going to object if I say that?

            MR. SHALEK:  If he wins the intervention complaint and

I --  if he wins the intervention complaint and this Court

1  rules that I do not have a lien on -- a properly filed judgment

2  lien, I would have to comply by whatever the Court orders.  I

3  mean, I don't know what I would say or not say.  Maybe I would

4  take an appeal.  I don't know what I would do under those

5  circumstances.  I think he's wrong.  But I think that,

6  likewise, you could ask him the same question.  If the Court

7  rules that our lien is priority, is he going to say that the

8  money is his?

9          MR. SAYRE:  And the answer is I am going to say the

10  money is mine.

11          MR. SHALEK:  Okay, so.

12          THE COURT:  You are going to say what?

13          MR. SAYRE:  I am going to say the $40,000 is mine.

14          THE COURT:  Is yours?

15          MR. SAYRE:  Yes.

16          THE COURT:  Regardless?

17          MR. SAYRE:  And it's not -- I won't be disobeying the

18  Court's order when I say that because the Court's order, again,

19  is only addressing the judgment lien certificate, whether it's

20  void or not.  Pinnacle Three has priority.  I'm sorry North

21  Star, who is the owner of Pinnacle Three stock, has priority to

22  those $40,000 regardless of whether their judgment lien

23  certificate is void or not, because we are holders of stock

24  certificate which has priority over that judgment lien

25  certificate.  And that, Your Honor, has been briefed and I will

```
 1    point Your Honor, again, to our North Star's motion to

 2    intervene in February or March of this year, which explains

 3    exactly why we are entitled to these funds, even if their

 4    judgment lien certificate is not void.

 5            MR. SHALEK:  Your Honor, North Star Marine is not a

 6    party to this lawsuit, number one.  North Star Marine's brief

 7    months and months ago is not properly before the Court at this

 8    time.  I am flabbergasted that Vernal, who now claims to be the

 9    assignee over North Star Marine's rights is represented by the

10    same lawyer who is now claiming that North Star still has

11    rights when it has assigned its rights to North Star Marine.

12    Moreover, North Star Marine has given up any rights it has by

13    virtue of taking a judgment on that loan, number one.

14            Number two, what is the point of filing the

15    intervention complaint, then?  Maybe he should file an

16    intervention complaint that addresses all the issues.  He filed

17    his intervention complaint, that's his chance to say we have

18    money.  What he is telling you is Vernal has another issue that

19    it is not even raising in this complaint.  Sure, we'll do this

20    complaint and if we lose this one, well, then maybe we will

21    address another issue, and maybe there is another, who knows.

22    But the point is if they are going to give jurisdiction -- if

23    they are going to submit to the jurisdiction of the Court to

24    resolve the issue, they filed their intervention complaint, we

25    didn't object to it.
```

1          We -- your motion to inter -- it was granted by

2     default.  We decided consciously, not -- we didn't just forget,

3     we decided not to object to it.

4          THE COURT:  Well, then why didn't you tell me?  Why

5     didn't you just file another saying we don't object instead of

6     letting it just sit there for weeks?

7          MR. SHALEK:  Your Honor, I apologize to the Court.

8     You are a hundred percent correct and I should have done it but

9     between my trial schedule and my partner's trial schedule,

10    Gary, we didn't have a moment to talk about it.  And we decided

11    the best thing to do with this intervention complaint as filed

12    is to let it come in and let the Court rule on it, because we

13    think with a hundred percent certainty that we are going to win

14    that complaint through a summary judgment.

15         Now, what I am hearing is, by the way, we didn't put

16    all of the issues in the intervention complaint.  There are

17    still more issues that we may raise at the further time.  Well,

18    then it sounds to me like they filed the wrong complaint.  They

19    should have filed a better complaint.

20         MR. SAYRE:  It's not -- as far as we are concerned, it

21    is not an issue.  North Star Maritime owns Pinnacle Three; it's

22    Mr. Shalek who has an issue with that.  And if Mr. Shalek wants

23    to bring up that -- and that goes to the fraud allegations,

24    which, again, without basis, I have seen nothing from

25    Mr. Shalek saying, hey, look at this, this is why it is

1    fraudulent.

2              THE COURT:  Let me interrupt for a moment, Mr. Sayre.

3    But why in your complaint for declaratory judgment did you list

4    the plaintiff as North Star Marine and in the body and text of

5    it list the plaintiff as Vernal?

6              MR. SAYRE:  Then it was a typo, Your Honor, and I

7    apologize.

8              THE COURT:  Has it been filed as a separate docket

9    entry yet, or no?

10             MR. SHALEK:  Yes.

11             MR. SAYRE:  I'm sorry, declaratory judgment?  Yes, it

12   has, Your Honor.

13             THE COURT:  And does it repeat the same mistakes?

14             MR. SHALEK:  Yes.

15             MR. SAYRE:  If I did, I will do whatever Your Honor

16   directs me to but that was just a typo.

17             MR. SHALEK:  It is filed the same way because in

18   drafting my motion I had a little difficulty deciding what to

19   do with it and I kind of just assumed it was a typo.

20             The other thing I want to say is, Your Honor, if you

21   look at the record before the Court, the only thing, the only

22   thing in the record before the Court showing ownership is the

23   affidavit of Leon Goldstein.  The documents --

24             THE COURT:  But isn't that a little stale?  Wasn't

25   that in 2012?

1          MR. SHALEK:  There has been nothing filed to correct

2     that.  A motion was filed --

3          THE COURT:  These stock certificates are dated, what?

4          MR. SAYRE:  The stock certificates are dated 2007 and

5     2008, respectively.  And, Mr. Shalek, I must correct you on

6     that, there were notice of filings in this case with the stock

7     certificates and the loan agreement.  North Star has filed --

8     I'm sorry, Vernal has filed -- correction, I'm sorry, I'm going

9     through all my clients.

10          THE COURT:  You don't know which client you are

11     talking about.

12          MR. SAYRE:  Pinnacle Three is the one who filed that

13     said that North Star Maritime is the hundred percent owner of

14     Pinnacle Three.  Goldstein, two weeks ago said on record -- I

15     will do a notice of filing of the deposition transcript of Leon

16     Goldstein in which he says that he does not own Pinnacle Three.

17     The only thing -- Mr. Shalek talked about what's on the record.

18     All he has in an affidavit in another case from 2012 that says

19     I'm a hundred percent owner.  This is two weeks ago saying I am

20     not.

21          MR. SHALEK:  So in 2007 and 2008, according to

22     Mr. Sayre, Goldstein signed over his certificates to North Star

23     Marine, then in 2012 he signed an affidavit and filed it in

24     court saying that he is the hundred percent owner, okay?  So

25     you want to know which one is stale, it seems to me that the

```
 1    stock certificates signed in 2007 and 2008 is the stale thing

 2    here because in 2012 in this gentleman's lawsuit and this

 3    gentleman here is the payor of the $40,000, he was told

 4    affirmatively that Leon Goldstein owned a hundred percent.  He

 5    would have never entered into that settlement agreement to pay

 6    Pinnacle Three $40,000 if Leon Goldstein hadn't represented

 7    that he owned a hundred percent.

 8            And it just goes back to the basic issue here, Your

 9    Honor.  Exactly what you ruled --

10            THE COURT:  The basic issue is that something really

11    stinks here.

12            MR. SHALEK:  And hold the money in trust just as

13    Your -- in equity, just as Your Honor's first instincts were

14    and let us flesh it out.

15            MR. SAYRE:  Your Honor, this is -- I -- there has been

16    a lot going on.

17            THE COURT:  It doesn't pass the smell test, Mr. Sayre.

18    It really doesn't.

19            MR. SAYRE:  I am sorry that Your Honor feels that way.

20            THE COURT:  Well, indeed.  I am going to order the

21    funds held in trust in the court's registry, I will await

22    Mr. Shalek's proposed order, share it with counsel, let them

23    look at the language of it before you submit it.

24            MR. SAYRE:  Of course.

25            THE COURT:  And we can expedite your complaint and I
```

1    don't know if it resolves all of the issues or not, but as

2    Mr. Shalek said, you sought intervention to protect -- I don't

3    know which of your client's interests, Vernal?

4              MR. SAYRE:  Yes.

5              THE COURT:  Not the plaintiff in the caption of your

6    complaint.

7              MR. SAYRE:  Yes.

8              THE COURT:  All right.  You, now, come to court and

9    you say you represent three interrelated parties or not

10   interrelated and then none of them are a conflict with the

11   other, you represent all three, your complaint won't resolve

12   all of the issues for all of your clients but you are here,

13   nonetheless.  So this is your chance to have to the extent you

14   need a declaratory judgment declaring the rights of any or all

15   of your clients, put it out, set it out.

16             MR. SAYRE:  That's.

17             THE COURT:  Otherwise, we are going to have piecemeal

18   adjudications.  I will grant or deny you declaratory relief and

19   the money goes or doesn't go to the plaintiff here.  So figure

20   out what it is you want to do but, in any event, the money will

21   be held so that as the Court exercising jurisdiction over the

22   payors, I can control where it goes and that it go to the

23   appropriate creditor.

24             MR. SAYRE:  Your Honor has ruled.  I would just ask

25   that if we wanted to file a brief, because a lot was thrown

1   around here and I want to make sure Your Honor has the full

2   story, I would ask that you allow us to submit a brief within a

3   week and a half as to.

4           THE COURT:  But I have already ruled and this motion

5   was filed back on November 13.

6           MR. SAYRE:  And, Your Honor, I will just point out

7   that --

8           THE COURT:  And you obviously had it and knew about it

9   back then.

10          MR. SAYRE:  Well, no, we -- hold on.  Pinnacle Three,

11  after -- there was a series of steps that happened and because

12  there's -- you'll -- I'm sorry, Your Honor, but if you will

13  bear with me.  Your Honor, at some point on motion by

14  Mr. Shalek, asked that Pinnacle Three respond to an order to

15  show cause as to why Pinnacle Three shares should not be filed

16  in -- or submitted to the Court or given to the marshal for

17  appropriate disposition.

18          Pinnacle Three, they served -- Mr. Shalek served

19  Goldstein as Pinnacle Three.  I --

20          MR. SHALEK:  He is the registered agent.

21          MR. SAYRE:  No, he is not.  Your Honor, maybe at the

22  time but he is no longer the registered agent on the web site.

23  Pinnacle Three did not know about this service until much

24  later.  Pinnacle Three, who I represent, filed a response

25  saying, Your Honor, they are not entitled to the shares because

```
 1    Pinnacle Three is not owned by Goldstein.  Okay?  All that

 2    happened.

 3            Pinnacle Three, eventually, when the time came said,

 4    you know what, Your Honor?  This briefing has occurred on the

 5    motion to compel, we just came into this case, can we please

 6    provide some briefing on this issue?  And that was filed

 7    yesterday.  And so I would only ask that Your Honor allow us to

 8    provide the briefing that we requested yesterday.

 9            THE COURT:  You filed your motion to intervene on

10    November 5th.  The plaintiff filed this motion to compel on

11    November 13.

12            MR. SAYRE:  I was not a party -- but until the motion

13    to intervene was granted, I --

14            THE COURT:  Right.  But I am sure you were accessing

15    this file and taking a look at it and you knew about it.

16            And so it's fully briefed, it was fully briefed when

17    the reply came in on the 9th and I am not hearing any reason

18    why it works a hardship to your client to have the funds held

19    in the court's registry until the Court resolves all of the

20    issues that the parties wish to be presented and heard.

21            Now, do you wish to amend your complaint or not?

22            MR. SAYRE:  The only amendment I would make is to

23    correct the typo in the caption.

24            MR. GORDON:  May we have a moment, Your Honor?

25            THE COURT:  Yes.
```

1       (Pause in proceedings.)

2       MR. SAYRE:  We'll -- we are going to talk to the

3   client.  We will consider amending the complaint, but, again, I

4   would have to talk to my client.

5       THE COURT:  All right.  So do me a favor, keep

6   Mr. Shalek in the loop, not when you talk to your client but

7   once you've made up your mind, so he doesn't waste his

8   resources and time filing a 12(b)(6), Rule 56 motion and then

9   you decide to amend the complaint and then we have to go to

10  another round of having him prepare some other type of a

11  motion.  All right?  Let's minimize additional expenses to this

12  plaintiff who has been trying to collect from Mr. Goldstein for

13  all of this time.

14      MR. SHALEK:  Then we will prepare an order granting

15  the motion.

16      THE COURT:  Yes.

17      MR. SHALEK:  The only -- a very collateral issue, Your

18  Honor, is that we would ask that it be held in the lawyer's

19  trust account instead of the court's registry.

20      THE COURT:  That's why I said, you prepare the

21  particulars of what you want.

22      MR. SHALEK:  Okay, I'll discuss that with Mr. Sayre.

23      THE COURT:  I'm not clairvoyant.  I can't look into

24  your mind and know exactly where you want it, when you want it,

25  how you want it.  Prepare that.

1              MR. SHALEK:  Understood.

2              THE COURT:  Get it to me, if you would, by Monday.

3              MR. SHALEK:  Sure.

4              THE COURT:  And share it with counsel.

5              And, Mr. Sayre, you decide what claims, if any, which

6    are strictly matters of law for which none of the parties needs

7    any additional discovery, you want to present in your

8    complaint and we can try to expedite resolution so the money

9    doesn't sit in some trust account longer than is needed.

10             MR. SHALEK:  Thank you, Your Honor.

11             MR. SAYRE:  Thank you, Your Honor.  I just want to

12   clarify, the matter of law was only as to the judgment lien

13   certificates.  The issue that Mr. Shalek brought up regarding

14   fraudulent transfers, that's a whole other issue.

15             MR. SHALEK:  Those issues aren't before the Court

16   right now.  The issues before the Court are what's stated in

17   the intervention claim.

18             THE COURT:  Indeed.  Indeed.  But I am going to need

19   to know whether we are going to need a scheduling order here,

20   what kind of track I am going to put this on.  So, I mean, this

21   is a brand-new suit, as I said, Mr. Sayre.

22             MR. SHALEK:  We will know better once we hear whether

23   or not Mr. Sayre amends his complaint.

24             THE COURT:  Right.

25             MR. SAYRE:  Thank you, Your Honor.

```
1            THE COURT:  Thank you.

2            THE COURTROOM SECURITY OFFICER:  All rise.

3            THE COURT:  You all have a good weekend.

4            MR. SHALEK:  You too, Your Honor.

5            MR. SAYRE:  Thank you for your time.

6        (The proceedings adjourned at 3:05 p.m.)

7

8

9                    C E R T I F I C A T E

10

11       I hereby certify that the foregoing is an

12   accurate transcription of the proceedings in the

13   above-entitled matter.

14

15

16   _08/07/14____               STEPHANIE A. McCARN, RPR
        DATE                     Official United States Court Reporter
17                               400 North Miami Avenue, Twelfth Floor
                                 Miami, Florida 33128
18                               (305) 523-5518

19

20

21

22

23

24

25
```