UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:10-cv-21612-ALTONAGA

**PALADIN SHIPPING CO. LTD.**, and
**ANATOLIY CHABAN**,

    Plaintiffs,
vs.

**STAR CAPITAL FUND, LLC**, and
**LEON GOLDSTEIN**,

    Defendants.
_____/

**VERNAL USA, INC.**,

    Intervening Plaintiff,

vs.

**PALADIN SHIPPING CO. LTD.**, and
**ANATOLIY CHABAN**, *et al.*,

    Defendants.
_____/

**<u>ORDER</u>**

**THIS CAUSE** came before the Court on Defendants, Paladin Shipping Co., Ltd. ("Paladin") and Anatoliy Chaban's ("Chaban['s]") Motion to Dismiss the Complaint or Alternatively, Motion for Summary Judgment . . . ("Motion") [ECF No. 321]. Intervenor, Vernal USA, Inc. ("Vernal"), filed its Response . . . ("Response") [ECF No. 329], to which Defendants filed a Reply . . . ("Reply") [ECF No. 337]. The Court has carefully considered the parties' submissions, the record, and applicable law.

CASE NO. 10-21612-CIV-ALTONAGA

## I.   BACKGROUND

In 2010 Paladin and Chaban brought suit against Leon Goldstein ("Goldstein") and his company, Star Capital Fund, LLC ("Star Capital"), for breach of contract, failure to repay money lent, and unjust enrichment. (*See generally* Compl. [ECF No. 1]). The Court found Goldstein liable to Paladin and Chaban for breach of contract (*see generally* Aug. 2, 2011 Order [ECF No. 120]), and entered a Final Judgment [ECF No. 122]. The Final Judgment provided for post-judgment "interest at the rate of 6% per annum." (*Id.* 2).

On September 26, 2012, the Judgment was vacated and the case remanded for further proceedings. *See generally Paladin Shipping Co. Ltd. v. Star Capital Fund, LLC*, 491 F. App'x 42 (11th Cir. 2012). On January 7, 2013, the Court entered a Supplemental Final Judgment ("January 7, 2013 Final Judgment") [ECF No. 199] specifying a post-judgment interest rate of 4.75 percent, based upon Plaintiffs' submissions. (*See* Jan. 7, 2013 Final J. 2). The parties do not dispute the interest rate was calculated according to Florida Statutes sections 687.01 and 55.03. (*See* Mot. ¶ 6; *see generally* Resp.).

A few days after the Court entered the January 7, 2013 Final Judgment, Goldstein's attorney informed the other parties the post-judgment interest rate should be calculated pursuant to 28 U.S.C. section 1961, not Florida law. (*See* Mot. ¶ 6.; Mot., Ex. A ("Jan. 14, 2013 Email") [ECF No. 321]). Chaban agreed (*see* Mot. ¶¶ 5–6), and he and Paladin filed an Unopposed Motion to Amend Supplemental Final Judgment ("Motion to Amend") [ECF No. 200] to alter the interest rate to reflect the federal rate. The Motion to Amend did not indicate the rule of civil procedure the parties were relying on for the relief requested. The Court granted the Motion to Amend (*see* Jan. 22, 2013 Order [ECF No. 201]), and on January 24, 2013, issued a second

2

CASE NO. 10-21612-CIV-ALTONAGA

Supplemental Final Judgment ("January 24, 2013 Final Judgment") [ECF No. 202], reflecting the federal interest rate of 0.14 percent. On February 6, 2013 — thirty days after the January 7, 2013 Final Judgment, and thirteen days after the January 24, 2013 Final Judgment — Paladin and Chaban filed a Judgment Lien Certificate ("Paladin Lien Certificate") with the Florida Secretary of State. (*See* Complaint for Declaratory Judgment ("Intervenor Complaint") ¶ 13 [ECF No. 309]; Mot. ¶ 9).

On February 21, 2013 — forty-five days after the January 7, 2013 Final Judgment, and twenty-eight days after the January 24, 2013 Final Judgment — Goldstein filed a Motion for New Trial [ECF No. 205]. (*See* Intervenor Compl. ¶¶ 12–13; Mot. ¶ 10). That motion was denied. (*See* Mar. 12, 2013 Order; Intervenor Compl. ¶ 12).

On April 15, 2013, third party, North Star Maritime, Inc. ("North Star"), moved to intervene [ECF No. 237], claiming a security interest in Goldstein's property; North Star had entered into a loan agreement with Goldstein and Pinnacle Three Corporation ("Pinnacle Three"), which Goldstein and Pinnacle Three failed to repay.[1] (*See id.* 1; Intervenor Compl. ¶ 9). The Court denied North Star's intervention request. (*See* Apr. 19, 2013 Order [ECF No. 248]). On November 5, 2013, Vernal moved to intervene post-judgment [ECF No. 298], claiming a superseding interest in Goldstein's personal property, including his interest in various corporations. (*See id.* ¶¶ 2, 5; Intervenor Compl. ¶¶ 8–11, 21–23 [ECF No. 309]). The Court granted Vernal's unopposed motion (*see generally* Nov. 11, 2013 Order [ECF No. 307]), and

---

[1] Goldstein owned shares in Pinnacle Three stock, which was pledged to secure the loan. (*See* Supplemental Party, Pinnacle Three Corporation's (FL) Motion for Reconsideration . . . ("Motion for Reconsideration") 3–4 [ECF No. 318]).

3

CASE NO. 10-21612-CIV-ALTONAGA

Vernal filed its Intervenor Complaint against Paladin and Chaban on December 3, 2013 (*see generally* Intervenor Compl.).

In the Intervenor Complaint, Vernal alleges North Star loaned Goldstein funds that he failed to repay (*see id.* ¶ 9), and on August 26, 2013, North Star obtained a judgment of $3,054,540.05 against Goldstein for the unpaid loan (*see id.* ¶¶ 9–10). On September 27, 2013, North Star filed a judgment lien certificate ("North Star Lien Certificate") for the amount of the judgment with the Florida Secretary of State. (*See id.* ¶ 10). North Star then assigned its judgment against Goldstein to Vernal ("Vernal Lien Certificate"). (*See id.*, Ex. C, Sept. 27, 2013 J. Lien Certificate 9 [ECF No. 309-3]). Although the North Star/Vernal Lien Certificate was recorded after the Paladin Lien Certificate, Vernal requests a declaration that it, not Paladin and Chaban, has priority with respect to Goldstein's property because the Paladin Lien Certificate was prematurely filed and is void. (*See id.* ¶¶ 13–14, 22–23).

Paladin and Chaban request dismissal of Vernal's Intervenor Complaint for failure to state a claim, or for a summary judgment finding the Paladin Lien Certificate complied with Florida Statute section 55.202(2)(a) and thus is not void.[2] (*See generally* Mot.).

## II.   DISCUSSION

A judgment lien certificate is void if it is filed before the time for rehearing has lapsed:

> A judgment lien is acquired by filing a judgment lien certificate in accordance with s. 55.203 with the Department of State after the judgment has become final and if the time to move for rehearing has lapsed, no motion for rehearing is pending, and no stay of the judgment or its enforcement is then in effect. A court

---

[2] Since the filing of this Motion, Paladin and Chaban have instituted supplementary proceedings in an effort to collect Goldstein's property pursuant to the January 24, 2013 Final Judgment; to this end, they have impleaded Defendants, North Star Maritime, Inc. and North Star Maritime Miami, LLC. (*See generally* April 21, 2014 Order [ECF No. 345]).

4

> may authorize, for cause shown, the filing of a judgment lien certificate before a judgment has become final when the court has authorized the issuance of a writ of execution in the same matter. A judgment lien certificate not filed in compliance with this subsection is permanently void and of no effect.

FLA. STAT. § 55.202(2)(a). Under the Federal Rules, the time for seeking a rehearing or new trial is twenty-eight days following the entry of final judgment. *See* FED R. CIV. P. 59.

As explained, the Court entered final judgments on January 7, 2013 and January 24, 2013. The issue presented by the Motion is whether Vernal may maintain its Intervenor Complaint seeking a declaration the North Star/Vernal Lien Certificate has priority over the Paladin Lien Certificate. The Court must decide whether the corrected January 24, 2013 Final Judgment, with its change in post-judgment interest rate, reset the twenty-eight day clock for seeking a rehearing or new trial. If it did, the Paladin Lien Certificate, filed February 6, 2013, was prematurely filed under section 55.202(2)(a) and is void. If such is the case, Vernal has priority over Goldstein's property. Otherwise, Paladin and Chaban retain priority.

The parties do not dispute the material facts, and Defendants ask the Court to resolve this issue in their favor as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) ("Summary judgment is appropriate where the Court is satisfied 'that there is no genuine issue as to any material fact . . . .'" (quoting FED. R. CIV. P. 56(c)). To decide the legal question, it is necessary to determine under which procedural rule Paladin and Chaban brought their unopposed Motion to Amend. The Motion to Amend "cited no specific rule or statute authorizing" it. *Bodine v. Fed. Kemper Life Assur. Co.*, 138 B.R. 88, 94 (M.D. Fla. 1992). Paladin and Chaban argue the alteration to the January 7, 2013 Final Judgment was a clerical change made pursuant to Rule 60(a). (*See* Mot. 7–9). Vernal contends the change was substantive in nature, made under Rule 59(e). (*See* Resp. 2–6).

5

CASE NO. 10-21612-CIV-ALTONAGA

"A post-judgment motion may be treated as made pursuant to either [Federal Rule of Civil Procedure] 59 or 60 — regardless of how the motion is styled by the movant — depending on the type of relief sought." *Cormier v. Green*, 141 F. App'x 808, 815 (11th Cir. 2005) (alterations added; internal quotation marks and citation omitted); *see also Wright v. Preferred Research, Inc.*, 891 F.2d 886, 889 (11th Cir. 1990) ("[T]he court must determine independently what type of motion was before [it] . . . ." (alterations added; citation omitted)). "Inherent in the provisions of Rules 59 and 60 for the modification of judgments is a tension between two goals: (1) that of ensuring that the court's judgment reflect an appropriate adjudication of the rights and obligations of the parties, and (2) that of finally terminating the litigation in order to provide the parties with certainty as to the nature and extent of their rights and obligations as adjudicated." *In re Frigitemp Corp.*, 781 F.2d 324, 326–27 (2d Cir. 1986).

Whether a motion to amend a judgment is brought under Rule 59 or 60 affects the finality of the judgment and determines if the twenty-eight day clock for seeking a rehearing or new trial is reset. *See Cornist v. Richland Parish Sch. Bd.*, 479 F.2d 37, 39 (5th Cir. 1973). Which rule governs the motion is dependent upon whether the change to a final judgment is clerical or substantive in nature. *See id.* A substantive change "'disturb[s] or revise[s] the legal rights and obligations'" of the parties and resets the period to move for a new trial. *Id.* (alterations added) (quoting *FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211–12 (1952)). Rule 59(e)[3] "applies only when a motion seeks reconsideration of substantive issues resolved in the judgment and not when a motion raises exclusively collateral questions regarding what is due

---

[3] Rule 59(e) states "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." FED. R. CIV. P. 59(e).

CASE NO. 10-21612-CIV-ALTONAGA

because of the judgment."[4]  *Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1526 (11th Cir. 1987) (citing *Lucas v. Fla. Power & Light Co.*, 729 F.2d 1300, 1301 (11th Cir. 1984)).  A Rule 59(e) motion tolls the parties' filing period for seeking new trial, rehearing, or appeal.  *See* FED. R. CIV. P. 59; *Finch v. City of Vernon*, 845 F.2d 256, 258 (11th Cir. 1988) (citations and footnote call number omitted) (acknowledging a notice of appeal filed within thirty days after entry of the judgment is null).

In contrast, Rule 60(a) provides for an amendment to a final judgment where the alteration is clerical in nature.[5]  *See* FED. R. CIV. P. 60(a).  A clerical correction made under Rule 60(a) may be brought at any time and does not extend the time for filing post-judgment motions.  *See id.*; *Cornist*, 479 F.2d at 39 (citation omitted); *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155,

---

[4] Unlike Rule 59(e), Rule 60(b) applies to matters collateral to the merits of the judgment.  *See Aird v. United States*, 339 F. Supp. 2d 1305, 1310 n.7 (S.D. Ala. 2004).  Federal Rule of Civil Procedure 60(b) provides:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect . . . .

*Id.* (alterations added).  Because the Motion to Amend concerns post-judgment interest, often considered collateral to a judgment, the motion could be more properly construed as made pursuant to Rule 60(b), rather than Rule 59(e), as Vernal contends.  Nonetheless, the procedural effect of bringing the motion under either rule — resetting the twenty-eight day clock — is the same, as a Rule 60(b) motion is treated as "within the scope of Rule 59(e) regardless of its label."  *Rance v. D.R. Horton, Inc.*, 316 F. App'x 860, 863 (11th Cir. 2008).

[5] Rule 60(a) provides:

> Corrections Based on Clerical Mistakes; Oversights and Omissions.  The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.  The court may do so on motion or on its own, with or without notice.  But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

FED. R. CIV. P. 60(a).

CASE NO. 10-21612-CIV-ALTONAGA

157–58 (2d Cir. 2001)) (amending the judgment to correct a party's name did not reset the time to move for a new trial). As the Fifth Circuit explained:

> [T]he relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule. As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed. If, on the other hand, cerebration or research into the law or planetary excursions into facts is required, Rule 60(a) will not be available to salvage the government's blunders. Let it be clearly understood that Rule 60(a) is not a perpetual right to apply different legal rules or different factual analyses to a case. It is only mindless and mechanistic mistakes, minor shifting of facts, and no new additional legal perambulations which are reachable through Rule 60(a).

*In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 504–05 (5th Cir. 1994) (alteration added); *accord Weeks v. Jones*, 100 F.3d 124, 128–29 (11th Cir. 1996); *United States v. Whittington*, 918 F.2d 149, 150 n.1 (11th Cir. 1990) ("[F]or Rule 60(a) purposes, a mistake of law is not a 'clerical mistake', 'oversight', or 'omission'" (alteration added) (citing *Warner v. City of Bay St. Louis*, 526 F.2d 1211, 1212 (5th Cir. 1976))).

Clerical mistakes include inadvertent typographical and computational errors and omissions. *See, e.g.*, *Hale Container Line, Inc. v. Houston Sea Packing Co. Inc.*, 137 F.3d 1455, 1474 (11th Cir. 1998) (correcting mathematical error in a damage award did not change the substantive rights of the parties); *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) (stating it was "rote, typographical error" to mistakenly grant summary judgment "without prejudice" rather than "with prejudice"); *Allied Materials v. Superior Prods. Co., Inc.*, 620 F.2d 224, 225–26 (10th Cir. 1980) (permitting a judge to use Rule 60(a) to amend an award from $1,200 to $12,000 when he misspoke from the bench). "Rule 60(a) may not be used to change something that was deliberately done, . . . even though it was later discovered to be wrong."

*McNickle v. Bankers Life and Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989) (alterations added; internal citations omitted). Courts will construe Rule 60(a) narrowly to "bolster the finality of judgments and to block circumvention of more restrictive means to obtain review of orders and judgments in the district court." *In re Am. Precision Vibrator Co.*, 863 F.2d 428, 430 (5th Cir. 1989).

Using an erroneous legal standard to calculate a post-judgment interest award is a substantive error of law, not a clerical error. As the court explained in *Warner*,

> [W]here the judgment states the amount of interest intended by the district court, relief is not available under Rule 60(a). In *Hoffman v. Celebrezze*, 405 F.2d 833 (8th Cir. 1969), the government pointed out that the district court had allowed interest against the United States under the mistaken impression that the statute provided for such interest. The court stated 'Any error here involved is clearly not the type of mistake contemplated by Rule 60(a).' *Id.* at 835. In the present case, the same type of error is alleged. The district court allegedly made an error of law, but the judgment did state what was intended. To allow a party to correct alleged errors of law at any time by the mechanism of Rule 60(a) would significantly weaken the policy of finality as embodied in the Federal Rules.

526 F.2d at 1212 (alteration added; citation omitted); *see also Waggoner v. R. McGray, Inc.*, 743 F.2d 643, 645 (9th Cir. 1984) (per curiam) (explaining a judgment could not be amended under Rule 60(a) to exclude post-judgment interest because "[a]ny error regarding the legal effect of the stipulation was one of law and therefore can be corrected only under Rule 60(b)" (alteration added)); *Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 153 (1st Cir. 1980) (stating it "did not make it any less an error of law, nor convert the error into the kind of 'clerical mistake' dealt with in Rule 60(a)" when a clerk applied the wrong statute to calculate an interest award). In this case, as in *Warner*, the use of the incorrect interest rate was a substantive legal error impacting the rights of the parties.

CASE NO. 10-21612-CIV-ALTONAGA

The Court also considers the broader implication of amending a judgment. Even though post-judgment interest is generally considered collateral to a judgment, *see Continental Transfert Technique Ltd. v. Federal Government of Nigeria*, 850 F. Supp. 2d 277, 287–88 (D.D.C. 2012), whether Rule 59 or 60 is applied to amend the judgment impacts the parties' substantive rights. How the Court construes the Motion to Amend the post-judgment interest rate affects the rights of the parties with regard to whose lien has priority, strongly suggesting it would be improper under Rule 60(a). Indeed, in the Motion to Amend, Paladin and Chaban supplied legal authority to explain why the change from the Florida rate to the federal rate was appropriate. (*See* Mot. to Am. 1 (citing *Bodine*, 138 B.R. at 88)).

Paladin and Chaban cite to *Continental Transfert Technique Ltd.* for the proposition that "[c]orrections in [p]ost[-j]udgment interest rates are non-material, clerical errors that do not change the substantive rights in the judgment." (Reply 5 (alterations added)).[6] In *Continental Transfert*, plaintiff's arbitral award did not include post-judgment interest to which the plaintiff was statutorily entitled. *See id.*, 850 F. Supp. 2d at 286–288. The failure to grant any post-judgment interest was a "mistake arising from oversight or omission" and was correctable under Rule 60(a). *Id.* at 288 (quoting FED. R. CIV. P. 60(a)); *see also Warner*, 526 F.2d at 1213 n.4 ("'[F]ailure of a judgment to include the interest to which the plaintiff is entitled is [a clerical] error that can be corrected under Rule 60(a) . . . , and such would be the case where the judgment rendered fail[ed] to reflect the actual intention of the court. But where there is no clerical error and a failure to include interest resulted from an error of law, then relief may be had only by

---

[6] Although quoted in Paladin and Chaban's Reply, this language appears nowhere in *Continental Transfert*.

CASE NO. 10-21612-CIV-ALTONAGA

motion under Rule 59 . . . ."'" (alterations added; citation omitted)). *Continental Transfert* is factually distinct from this case, in which post-judgment interest was awarded.

Paladin and Chaban also insist the error was inadvertent, relying on email correspondence as support.[7] (*See* Mot., Exs. A–B, Jan. 14 & 23, 2014 Emails). Yet, this does not establish the use of the state rate was not intended by the parties at the time Plaintiffs submitted the proposed orders, even if Plaintiffs were mistaken or ignorant about the law. *See Warner*, 526 F.2d at 1212 (explaining even though appellee argued the incorrect six percent interest rate was "a mere oversight by the district court . . . the appellee [did] not contend that the district court intended that its judgment read 8%," and there is "no allegation that this error is a typographical or transcribing mistake, or the mistake was an inadvertent one" (alterations added; citation omitted)).

Like *Warner*, entry of the state interest rate appears to have been the parties' intent at the time the January 7, 2013 Final Judgment was entered. The Florida interest rate was repeatedly used as the post-judgment interest rate. (*See generally* Proposed, Final and Supplemental Judgments [ECF Nos. 121–22, 198–99]). The record does not reflect the parties intended to use the federal rate in the August 9, 2011 Final Judgment (providing for a six percent interest rate) or January 7, 2013 Final Judgment (providing for a 4.75 percent interest rate). (*See generally* Proposed, Final and Supplemental Judgments); *see also United States v. Cotton*, 235 F. Supp. 2d

---

[7] The relevant portion of the email states:

> Jeff, I was re-examining the judgment and I'm pretty sure the Court was incorrect in applying the Florida state statutory rate of 4.75% for the post-judgment interest: I am sure that pursuant to 28 USC 1961, in the federal court (on a diversity case) the rate is . . . 0.14. Take a look and see if you agree; if so, we can stipulate to a correction . . . .

(Jan. 14, 2014 Email (alterations added)).

CASE NO. 10-21612-CIV-ALTONAGA

989, 990–91 (E.D. Wis. 2002) (stating a party could not amend a judgment under Rule 60(a) when it claimed it intended to award post-judgment expenses but never indicated this to the court). Nor did the parties claim the error on the January 7, 2013 Final Judgment was typographical. (*See generally* Motion to Amend). The Florida post-judgment interest rate was entered deliberately, and Rule 60(a) does not permit a change to a "deliberately made" legal decision. *United States v. Griffin*, 782 F.2d 1393, 1396 (7th Cir. 1986).

As the Motion to Amend could not have been brought pursuant to Rule 60(a), the corrected January 24, 2013 Final Judgment reset the twenty-eight-day clock for seeking a new trial.[8] Consequently, the time for rehearing had not lapsed when the Paladin Lien Certificate was recorded on February 6, 2013. The Lien Certificate was prematurely filed, did not comply with Florida Statute section 55.202, and is therefore "permanently void and of no effect." FLA. STAT. § 55.202(2)(a).

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants, Paladin Shipping Co., Ltd. and Anatoliy Chaban's Motion to Dismiss the Complaint or Alternatively, Motion for Summary Judgment . . . [ECF No. 321] is **DENIED**.

---

[8] It is also noteworthy that Goldstein's Motion for a New Trial, filed on February 21, 2013, was only timely under Rule 59(b) if the January 24, 2013 Final Judgment reset the twenty-eight day time period for filing motions for a new trial. Based on the record, the parties treated the amended January 24, 2013 Final Judgment as resetting the twenty-eight day filing period. Goldstein filed the Motion for a New Trial on the twenty-eighth day, and the other parties did not object to the motion as outside the filing period. Likewise, the Court did not find the Motion for a New Trial was untimely brought outside Rule 59(b)'s twenty-eight day filing period. How the parties and the Court previously treated the January 24, 2013 Final Judgment is consistent with the Court's present finding that the Motion to Amend the post-judgment interest rate was effectively brought under Rule 59(e), causing the amended January 24, 2013 Final Judgment to reset the clock.

CASE NO. 10-21612-CIV-ALTONAGA

**DONE AND ORDERED** in Chambers at Miami, Florida this 8th day of September, 2014.

                                                _____
                                                **CECILIA M. ALTONAGA**
                                                **UNITED STATES DISTRICT COURT**

cc:    counsel of record