1              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF FLORIDA
2                    MIAMI DIVISION

3           Case No. 10-CV-21612-ALTONAGA/SULLIVAN

4    PALADIN SHIPPING CO., LTD.,
     a Foreign Corporation,
5    et al.,

6                    Plaintiff,

7    vs.                                 MIAMI, FLORIDA,
                                         OCTOBER 14, 2014
8

9    STAR CAPITAL FUND, LLC.,
     a Florida Limited Liability
10   Company and LEON GOLDSTEIN,

11

12                   Defendants.

13

14               DISCOVERY HEARING TRANSCRIPT
          BEFORE THE HONORABLE JOHN J. O'SULLIVAN,
15            UNITED STATES MAGISTRATE JUDGE

16
     APPEARANCES:
17

18
     FOR THE PLAINTIFF:
19

20                        PHILLIPS, CANTOR & SHALEK, P.A.
                          Suite 300 North
21                        Hollywood, Florida 33021
                          BY: JEFFREY B. SHALEK, ESQ.

22

23

24
     REPORTED BY:         JERALD M. MEYERS, RPR.
25   TELEPHONE:           954-431-4757

```
 1
 2
 3
 4   PRESENT FOR THE IMPLEADED PARTIES:
 5
 6
 7
 8                          TOBIN & REYES, P.A.
                            225 N.E. Mizner Boulevard
 9                          Suite 510
                            Boca Raton, Florida 33432
10                          BY: RICARDO A. REYES, ESQ.
11
12
13
14                          HELLER & WALDMAN
                            3250 Mary Street
15                          Suite 102
                            Coconut Grove, Florida 33131
16                          BY: MICHAEL SAYRE, ESQ.
17
18
19
20
21
     REPORTED BY:           JERALD M. MEYERS, RPR.
22                          J.M. COURT REPORTING, INC.
                            1601 N.W. 109TH TERRACE
23                          Pembroke Pines, FL 33026-2717
                            Telephone: 954-431-4757
24                          E-Mail Address: CRJM@AOL.COM
25
```

1   (Call to order of the Court)

2          THE COURT:  We are here today in the case of Paladin

3   Shipping versus Star Capital Fund and other supplemental

4   parties, case number 10-Civil-21612.

5          We here on a re-notice of hearing set by attorney

6   Jeffrey Shalek for the plaintiffs judgment creditors.

7          Could I have the appearance for the plaintiff first.

8          MR. SAYRE:  It is my motion, Your Honor.  So I am an

9   impleaded party.

10          THE COURT:  Who do you represent?

11          MR. SAYRE:  North Star Maritime Miami, LLC.

12          MR. SHALEK:  May it please the court, Jeffrey Shalek

13   on behalf of Paladin Shipping and Anatoliy Chaban.

14          THE COURT:  Okay.  Well, I had Jeffrey Shalek.  You

15   are the person who set this, right?

16          MR. SHALEK:  There are 3 motions set.  I think the

17   first notice came from Mr. Sayre's office.  The second notice

18   came from my office and the third notice came from Mr. Reye's

19   office.  Did I get that right?

20          MR. SAYRE:  Well, you know, I am actually surprised by

21   the number of notices because I only had our motion; our

22   renewed objection on there, but to the extent there is

23   something else and we got it, I need to be ready for it, I will

24   do my best.

25          MR. SHALEK:  And mine was just a simple motion to

```
1    compel you to respond according to the judge's previous order.
2             MR. SAYRE:  Oh, okay.  It was provided.
3             MR. SHALEK:  Yes.  Exactly.
4             THE COURT:  Okay.  Just so I understand who everybody
5    is, tell me your name again?
6             MR. SAYRE:  Sure.  Mike Sayre, and the party that I
7    represent in terms of our objection is North Star Maritime
8    Miami, LLC.
9             THE COURT:  Okay.  Is there somebody on the phone?
10            MR. REYES:  Yes, Your Honor.  This is Rick Reyes.  I
11   represent 75 Retail, 40 Retail, Century and Starlington.  They
12   are four interpled corporations.
13            THE COURT:  All right.  Well, Mr. Sayre, what I don't
14   have is I don't have your notice of hearing, I guess.
15            Do you know what docket entry it is at?  Hold on.  Do
16   you have a copy there?
17            MR. SAYRE:  I have got it right here, I think.  If I
18   may approach, Your Honor?
19            THE COURT:  Yes.  Sure.  Okay.  I did have it.  I just
20   had it under Jason Gordon.  He is with your law firm.  Is that
21   it?
22            MR. SAYRE:  He is, yes, Your Honor.
23            THE COURT:  Okay.  All right.  So we will hear from
24   you first because you are the first notice.
25            MR. SAYRE:  Sure.  Your Honor, you actually kind of
```

1   heard this one already.

2          What happened, as I understand it, is this was heard.

3   The same issues were heard by Your Honor, or relatively the

4   same issues were heard by Your Honor.

5          We took an exception up to Judge Altonaga, and Judge

6   Altonaga entered an order basically saying, "I don't have a

7   record from what happened below.  I need you guys to go down

8   and make a proper record," and specifically I am referring to

9   the order that Judge Altonaga entered on July 16, 2014.  It is

10  docket entry 366.

11          THE COURT:  Hold on a second.  Let me get that.  Okay.

12  I am sorry.  My computer has stalled out here.

13          MR. SAYRE:  I have got it in my hand, Your Honor, if

14  it helps.

15          THE COURT:  Yes.  Let me give it one more shot here

16  and see if it comes up.  Here it comes now.

17          MR. SAYRE:  All right.

18          THE COURT:  I will take that one.  Well, if you have

19  it there, that's fine.

20          MR. SAYRE:  I have got it in my hand, Your Honor, if

21  you want it.

22          THE COURT:  No.  I am actually getting it here now,

23  hopefully.  It is 266?

24          MR. SAYRE:  No.  It is 366.

25          THE COURT:  Oh.  366?

```
 1          MR. SAYRE:  Yes.

 2          THE COURT:  All right.  I don't know why you didn't

 3   file it.  Why didn't you file the record of the original

 4   hearing?

 5          MR. SAYRE:  Well, I will tell you the truth.  I was

 6   not handling it, but as I understand it, the judge is not going

 7   to be happy with when I say the record of the original hearing,

 8   I assume the transcript.

 9          THE COURT:  Yes.

10          MR. SAYRE:  The judge seemed like she also wanted a

11   memorandum of law as well, and it specifically refers to, "And

12   furnish the magistrate judge" -- I am referring to "under

13   ordered and adjudged -- "and furnish the magistrate judge a

14   memorandum of law, obtain a ruling, and if thereafter is

15   dissatisfied, properly file his appeal."

16          THE COURT:  Yes.  I see that.

17          MR. SAYRE:  Yes.  So I think that was the thinking

18   behind that.

19          THE COURT:  So if she wanted you to file a memorandum

20   of law, you need to file a memorandum of law then.

21          MR. SAYRE:  That is what I have got.  We did, which

22   is, unfortunately, I have got it in front of me, but there is

23   no docket entry.

24          THE COURT:  What was the date that you filed it?

25          MR. SHALEK:  Your Honor?
```

```
1          THE COURT:  Yes.
2          MR. SHALEK:  I am sorry.  I don't like to object, but
3   I mean interrupt, but before we go any further, I think Your
4   Honor hit the nail on the head with this.
5          What this order that Judge Altonaga entered at 366
6   basically says is, "Listen, you don't just write a new
7   memorandum of law and send it to me.  You get the transcript of
8   the hearing.  You give me everything you filed below so that I
9   can evaluate whether or not the magistrate judge committed
10  error or not, and I can evaluate your exceptions."
11         THE COURT:  Right.
12         MR. SHALEK:  "You need to do that."
13         So he is telling you that he didn't file a memorandum
14  of law originally, but that's not true.  On the original
15  motion, the memorandum of law the memorandum was filed at
16  number 356.
17         That's where he filed impleaded defendant, North Storm
18  Maritime's times objections to the subpoenas and to the other
19  discovery.  So he did have it.
20         So all the judge was asking for in the exceptions was,
21  "Show me what you filed in the record of law and give me a copy
22  of the hearing transcript, because your exceptions that you
23  filed seem to contain new evidence and things that Judge
24  O'Sullivan never heard or ruled upon.  Show me what happened
25  below."
```

1       It is not an invitation to have another hearing and to

2  get a second bite of an apple, and now that you know how the

3  judge is going to rule to doctor up new documents so that you

4  can get a better ruling out of the judge.

5       THE COURT:  Well, I mean, I think it is.  I mean, I

6  agree with you that it would have been nice if he had said,

7  "Instead, send me the transcript from the hearing because I

8  don't know how you can appeal my finding, my oral findings on

9  the record without providing a copy of the transcript," but

10 that is what you did, but she didn't just say that.

11      She said to follow the procedures contained in her

12 June 19th order which said that they were supposed to set it

13 for an informal discovery conference.

14      It also says, "And furnish the magistrate judge a

15 memorandum of law."

16      MR. SHALEK:  But all of that did happen, Your Honor.

17 The memorandum of law was filed at 356 on July 1st.

18      THE COURT:  Well, her order was after that.  So I am

19 going to assume that she meant what she said which was, "File a

20 memorandum of law and reset it," but the problem is I haven't

21 seen the memorandum of law.  And have you responded to the

22 memorandum of law?  This relates to your client?

23      MR. SAYRE:  This relates to my client is the one that

24 served the discovery and, no, I did not file a response to the

25 memorandum of law because this was already fully argued and

heard.

We had an hour conference on July 1st in front of the Court.  Your Honor read the memorandums.  Your Honor made a ruling.

There was a court reporter here, and now we are going to spend another half an hour doing the exact same thing again, when Your Honor has already ruled?  I don't believe that that is the intent of Judge Altonaga's order.

THE COURT:  Well, the problem is when I read her order, that is what it seems to say.  The impleaded defendant is instructed to follow the procedures contained in the order of June 19th and furnish the magistrate judge a memorandum of law.  Obtain a ruling, and if thereafter dissatisfied to properly file an appeal with citations to the record, including the order being appealed and a transcript of any discovery conference.

So she didn't just say, you know, the subject is this.  She might have just said it is denied because you didn't file the transcript.

I can't make a ruling, so you failed to show that the magistrate judge's order was unlawful, but she didn't say that.  She instructed him to file a memorandum.  Tell me where the memorandum is?

MR. SAYRE:  We filed it on August 18th, 2014.

THE COURT:  August 18th?

```
 1                MR. SAYRE:  Yes.

 2                THE COURT:  The response?

 3                MR. SAYRE:  That's the one.

 4                THE COURT:  Why is that called a response to

 5     something?

 6                MR. SHALEK:  I believe renewed objection to request

 7     for production of subpoenas, yes.

 8                MR. SAYRE:  Your Honor, I have no idea.  I didn't file

 9     this thing.

10                THE CLERK:  Counsel, can you speak into the

11     microphone.

12                MR. SAYRE:  Oh, I am sorry.  Your Honor, I have no

13     idea.  I didn't file the thing.

14                THE COURT:  Well, it should not be labeled "response."

15     So it is a renewed objection to the requests for production of

16     subpoenas.  Are you printing that, Maria?

17                THE LAW CLERK:  Yes.

18                THE COURT:  Just give it to me without the exhibits.

19                THE LAW CLERK:  Okay.

20                THE COURT:  The first 12 pages.  I mean, you can print

21     the others because we are going to need them.  Have you seen

22     this?

23                MR. SAYRE:  Yes.  I believe it is docket number 377.

24                THE COURT:  Yes, it is.

25                MR. SAYRE:  I have read it.  It is pretty much the
```

1    same argument as 356.

2            MR. SHALEK:  It is the same.

3            MR. SAYRE:  I wouldn't say it is exactly the same.

4            MR. SHALEK:  Maybe there is a few words changed.

5            THE COURT:  All right.  Well, I am not going to rule

6    on this today because I am going to need to read the memorandum

7    and have to reset your objection or your renewed motion, or

8    whatever you want to call it.

9            MR. SAYRE:  Yes, Your Honor.

10           THE COURT:  All right.  What is the next one?

11           MR. SHALEK:  Mine is a motion to compel, Your Honor.

12   And, unfortunately, it is on the exact same thing.

13           You entered an order on July 1st requiring discovery

14   to go forward.  They thwarted the discovery and blocked it so

15   that the people being subpoenaed are not going to respond

16   and/or their own clients are not responding.

17           Instead, they filed this exception, and when I look at

18   Judge Altonaga's order, which is as far as I am concerned a

19   denial of the exceptions telling them to try it again, but in

20   the meanwhile since July 1st there has been absolutely no

21   compliance whatsoever with this court's order compelling the

22   discovery to go forward.

23           Judge Altonaga said the exception is denied.  If you

24   want to try it again, try it again, but in the meantime I have

25   an order from this court dated July 1st requiring compliance

1    with discovery, and they are in contumacious disregard of that

2    order, instead continuing to hide beside the same issues that

3    they have been hiding before that Your Honor already vetted and

4    said, "GIVE them the discovery."

5            I don't know how much Your Honor remembers about this

6    case.

7            THE COURT:  I mean, I do.  I remember a good bit of

8    it, you know, but I don't remember it in detail because I don't

9    have a transcript and, you know, it was several months ago, and

10   I have done about 100 of these things since then.

11           MR. SHALEK:  The other thing if you remember is they,

12   you know, dared us to file a complaint for fraud against them,

13   and if you remember I even joked you know, like from the

14   Christmas story.  I double dogged them to answer the complaint,

15   and since that time we have filed a complaint for fraud against

16   them, and that is at docket entry 390 where there is in

17   response to the complaint that we are here upon there are now

18   counterclaims for fraud.

19           So we have done it.  It is the same exact rule.  It is

20   the rule they are claiming we are not entitled to discovery

21   under Rule 69 because it is a narrower scope.

22           We argued that it does not matter.  There is a

23   lawsuit.  We filed our discovery under Rule 26 which is a broad

24   scope.

25           Your Honor heard all of the issues about the fraud.

1    It has now been pled affirmatively in 290.

2         We are still entitled to the discovery, and here we

3    are in July, August, September, you know, close to 120 days

4    later and they refuse to produce paper one to us despite the

5    fact that there is an order out there requiring them to do so.

6         MR. SAYRE:  If I may, Your Honor?

7         THE COURT:  Yes.

8         MR. SAYRE:  There was a lot said; a lot of derogatory

9    things said there, but the fact is we took an exception.  It is

10   not like we are not thumbing our nose at Your Honor.

11        THE COURT:  Well, your exception was denied.

12        MR. SAYRE:  Well, denied and said file a memorandum.

13   Go back down.  Get this thing set and get it heard, which is

14   exactly what we did.  So it is not like the exception was

15   denied without prejudice, even though it doesn't say without

16   prejudice.

17        THE COURT:  Well, this was denied on July 16th.  How

18   come you are not here until October 16th or October 14th?

19        MR. SAYRE:  I have no idea.

20        THE COURT:  That's 3 months that you sat on this

21   thing.

22        MR. SAYRE:  Well, I have no idea what happened.  In

23   all honesty and candor with the court, you know, I am not the

24   one who was taking the lead on this, so I don't know whether

25   we called it -- I don't know what happened, frankly.

```
 1              I don't know whether it was a call to chambers and
 2     chambers said, "We don't have it to them."
 3              I don't know whether the attorneys, you know, just
 4     didn't do it.  I have no idea, so I can't really speak to it,
 5     but the fact is we have got an exception.
 6              The judge denied it and said, "Go get a better
 7     record."  That is what we are here doing, and we if Your Honor
 8     is worried about timeliness or Mr. Shalek is worried about
 9     timeliness, I will make myself available next week.
10              THE COURT:  Well, I mean I think you are already out
11     of time.  You took 90 days after her order on July 16th to
12     decide then that you are going to come to the court and say,
13     you know, you need to re-decide this matter.
14              That's too long.  You cannot wait 90 days.  If there
15     is a discovery issue under the, I think under the order it is
16     14 days.  Under the local rules rule it is 30 days that you
17     have to bring it to the court's attention.
18              You sat on this thing since July 16th.  You cannot
19     just keep putting off the inevitable by continuing to wait to
20     address the issue.
21              There is an order that is outstanding.  She denied
22     your objection to the order.  She indicated if you want to do
23     something about this, then file a memorandum.  Set it down
24     before the court and file an appeal, but I believe that you
25     waited too long for that.
```

```
 1          MR. SAYRE:  Well, Judge, respectfully, that's where --
 2          MR. REYES:  Your Honor?
 3          THE COURT:  Yes.
 4          MR. REYES:  Oh.  Your Honor, I hate to interrupt.  I
 5   am downstairs.  I didn't want to turn the phone off.
 6          May I come up to chambers?  I will be there in 3
 7   minutes.  I have got to go through the metal detector.
 8          THE COURT:  Okay.
 9          MR. REYES:  All right.  Thank you.  Sorry.
10          THE COURT:  All right.
11          MR. SAYRE:  Shall I continue?
12          THE COURT:  Yes.  We will continue.  This issue is not
13   on his client, is it?
14          MR. SHALEK:  No.
15          THE COURT:  Yes.  All right.  Go ahead.
16          MR. SAYRE:  But basically here is what we are going to
17   do, Your Honor:  Of course, no disrespect, so Your Honor is
18   entering a ruling today presumably or would enter a ruling
19   today.
20          We are going to take an exception.  Judge Altonaga, I
21   don't know what she is going to say, but there is the distinct
22   possibility that she will say, "Didn't I say, you know, file a
23   memorandum of law?  Get a detailed ruling, and then we are
24   going to start all over again," if Judge Altonaga goes down
25   that road.
```

1        I mean, really, for Mr. Shalek's purposes, to the

2   extent he really wants this discovery, I think maybe we should

3   get this thing set as quickly as possible so Your Honor has a

4   chance to fully review the memorandum that we did file, get it

5   set and so we have a detailed ruling so when if an exception is

6   taken to Judge Altonaga, she has got a basis to issue a full

7   ruling or a fully understood and knowledgeable ruling.

8        THE COURT:  Do you want to waive his failure to obey

9   the time limits?

10        MR. SHALEK:  No.

11        THE COURT:  Okay.  All right.  Well, my ruling then is

12   that you waited too long since Judge Altonaga's ruling.  Your

13   motion is what, to enforce my prior order?

14        MR. SAYRE:  Yes, Your Honor.

15        THE COURT:  Okay.  Then my prior order is in force,

16   and those documents are to be provided within one week of

17   today's date.

18        MR. SHALEK:  Your Honor, I would ask for Rule 38

19   sanctions for discovery.

20        THE COURT:  Rule 37.

21        MR. SHALEK:  Rule 37, yes, Your Honor.  This is just

22   blatant disregard of a court order, and I think I am entitled

23   to my attorney's fees having to come down here and enforce this

24   order today.

25        THE COURT:  Okay.  Well, that request is denied

1  because I find that he had a substantial basis.  Although he

2  waited too long, he had a ruling from Judge Altonaga that, you

3  know, it could be interpreted I think the way that you are

4  interpreting it, although, you know, perhaps it could be

5  interpreted the way that you are interpreting it, that the

6  other side is, but in any case, waiting 3 months after that and

7  not providing any records and now coming here on October 14th

8  is, you know, way, way too long and not even close to being

9  within -- in fact, you filed your memorandum of law more than

10  30 days after the July 16th order.

11         MR. SAYRE:  You know, Your Honor, and I should have

12  said it before, and I am sorry.  I don't know to extend this

13  any longer then it has to be extended, something came up in the

14  meantime, and I am just now recalling it.

15         Frankly, I should have recalled it earlier.  Summary

16  judgment was granted in favor of our client in the underlying

17  action.  The case was dismissed, and Mr. Shalek took an appeal

18  of that, and so the case was essentially dismissed.  This case

19  was dismissed for how long, Jeff?

20         MR. SHALEK:  I don't remember.  I know that the judge

21  granted a motion for reconsideration and vacated that order and

22  entered a different one.

23         MR. SAYRE:  I don't think she granted it.

24         MR. SHALEK:  I know she did.

25         MR. SAYRE:  She ended up or the judge ended up

1  withdrawing her motion for summary judgment and instead just

2  granting our motion or denying Jeff's motion to dismiss, but

3  this case was essentially at a standstill for a good amount of

4  time, and I am sorry I didn't mention it earlier, Your Honor.

5  It just, frankly, slipped my mind.

6         THE COURT:  Well, it wasn't until or the case was

7  closed on August 22nd.

8         MR. SAYRE:  So right around the time that this order

9  was entered.  Well, not right around the time, but July 16th is

10  when the order was entered.  We filed our memorandum as

11  required by the order.

12         THE COURT:  It is still beyond 30 days.

13         MR. SAYRE:  On March 18th.

14         THE COURT:  July 16th is when our order was entered.

15         MR. SAYRE:  But if the case is dismissed, I would

16  assume that that deadline was not apply.

17         THE COURT:  Well, you say the case was dismissed.  We

18  had a discovery hearing on this case on August 21st.  Now, I

19  don't know.  Maybe you were not a party to that.

20         MR. SAYRE:  I definitely was not.

21         THE COURT:  Well, if not you, I think there was

22  another attorney that was originally representing them.

23         MR. SHALEK:  He was here.  His firm was here.  His

24  firm was here they argued.

25         MR. SAYRE:  Oh, yes.  No.  If I misspoke, I was

1   talking about myself as an attorney.  I wasn't here.

2          THE COURT:  Oh, okay.

3          MR. REYES:  Mr. Gordon argued.

4          MR. SHALEK:  Jason Gordon was the attorney that was

5   here.

6          THE COURT:  On July 29th summary judgment was granted

7   in favor of the intervening plaintiff.  There was a discovery

8   hearing on August 21st which was an opportunity to bring this

9   to the court's attention if you wanted to at that point in

10  time, since everybody was here.

11         Your memorandum was filed on August 18th, and the case

12  was not closed until August 22nd, and then the matter was

13  stayed on August 22nd until, let me see here.

14         MR. SAYRE:  I believe what I had to do was file a Rule

15  54 motion and ask the judge to certify that it was a final

16  order, and she refused to do so and instead withdrew the order

17  and entered a different order to make it clear that it was not

18  a final order.

19         THE COURT:  That was done on September 8th.  That was

20  more than 30 days ago.  The order denying the motion for entry

21  of judgment under Rule 54(b,) is that what you are talking

22  about?

23         MR. SAYRE:  Yes.

24         THE COURT:  Yes.  So all of those things were or you

25  had the opportunity to address it at the last discovery

1   conference.  You didn't bring it up.

2          The case was, you know, the motion for entry of

3   judgment under Rule 54(b) was denied, and that was on September

4   8th, and here it is October 13th and still nothing.

5          So way more than 30 days passed during which time this

6   case was open and this matter was closed.

7          MR. SHALEK:  Your Honor, this matter was closed.

8          MR. SAYRE:  I think actually after you filed the Rule

9   54 the case was administratively closed.

10         THE COURT:  No.  I just told you when it was closed.

11   It was closed on August 22nd.  He filed a motion on September

12   5th, and then that motion was denied on September 8th.

13         MR. SAYRE:  When was the case reopened?  Because I

14   don't think the case was reopened at the time that the Rule 54

15   was filed.

16         THE COURT:  Well, the U.S. Court of Appeals dismissed

17   it on September 12th.

18         MR. SHALEK:  That's because we asked them to dismiss

19   it after Judge Altonaga withdrew her order.

20         MR. SAYRE:  Well, I guess, Your Honor, look, I

21   understand where Your Honor is going with this, but, you know,

22   my concern is that we are going to probably go back and we are

23   going to take a look at the dates, and I don't have the docket

24   in front of me, but it may be that whatever, you know, local

25   rule that Your Honor says we may not have been complying with,

1   we actually when you go back and look at when the case was

2   dismissed and when it was reopened, and stuff, we were actually

3   in compliance.  Then we are going to have to come back here

4   again and we are going to have to do it all over again.

5           THE COURT:  Well, I mean you just cannot wait 90 days

6   in between, especially when you had a discovery hearing in the

7   interim.

8           This could have been very easily brought to my

9   attention then.  So, in other words, you cannot just, or I

10  ordered you to give over records.

11          You say, "O'Sullivan is wrong."  That is fine.  Judge

12  Altonaga denies your exception.  She says if you want to do

13  this, do it the right way.

14          Then you wait 3 months from then.  Now, I agree with

15  you that during part of that time for a short period of time it

16  looks like about August 22nd when the case was closed to until

17  the ruling on the motion for entry of judgment which was on

18  September 8th, that you could argue that the case, you know,

19  was closed, but by September 8th it was clear that the case was

20  going to continue on its merry way.

21          You know, still nothing until October 14th.  Today is

22  the 14th, right?  So I can't order you or it is improper for me

23  to order you to do something.  I understand you take an

24  exception.

25          MR. SAYRE:  Right.

1    THE COURT:  The exception is denied, and 3 months

2    later you still haven't done anything, and then you set it down

3    for a hearing.  That's too much time.  You know, you are

4    prejudicing the rights of the other side who wants these

5    records.

6        MR. SAYRE:  And, Your Honor, I don't have the notice

7    of hearing in front of me, just because I handed it up to Your

8    Honor, but my guess is it was probably filed sometime ago.

9        THE COURT:  Let me see.

10       MR. SAYRE:  It is in front of you.  I don't have it.

11       THE COURT:  I am trying to figure out which one is

12   yours now.  Yours is the one filed by Jason Gordon, right?

13       MR. SAYRE:  Yes.  Yes.

14       THE COURT:  Here.  You can have yours back.  Hold on a

15   second.

16       MR. SHALEK:  Try 391. Your Honor.  September 22nd.

17       THE COURT:  Here you go.  391?

18       MR. SHALEK:  Yes, Your Honor.

19       THE COURT:  All right.  391 was filed on September

20   22nd.

21       MR. SAYRE:  So 3 weeks ago.  So I mean, Your Honor,

22   again, I understand what Your Honor is saying, but, you know,

23   this was filed on September 22nd, like two weeks after the case

24   was or the ruling on the Rule 54(b) occurred.

25       THE COURT:  Yes, but in the interim you also had more

1    than 30 days, and we had a discovery hearing in that interim

2    period as well where this could have been addressed with the

3    court, and it wasn't.

4         So I find that you have waived any kind of objection,

5    and I am going to order the documents to be produced within a

6    week.

7         MR. SAYRE:  Your Honor, I would ask, just because I

8    don't know how quickly we are going to be able to get this

9    stuff together, I know some of it we have, but there is a lot

10   of requests here.

11        THE COURT:  I mean, first of all, you have been

12   ordered to do this for months.  If there are certain records

13   that you are not objecting to, those should have been provided

14   immediately.

15        In other words, not, "well, we are going hold on to

16   all of the records until we determine if any of these records

17   should be turned over."  Do you understand that?

18        MR. SAYRE:  It was a complete objection as I

19   understand it to all requests.

20        THE COURT:  Okay.

21        MR. SAYRE:  It wasn't like, okay, we will hand these

22   over.

23        THE COURT:  Right.  Right.  I understand.

24        MR. SAYRE:  So it is, I don't know how many requests

25   there are.  I think each request has 3 subparts, and there is

27 of them.

So do you know what?  I misspoke.  Not each request has 3 subparts, but 12 of the 27 have 3 subparts.  I would just ask, I will start a rolling production and there will be documents in their hands.

To the extent we don't take an exception, again, to the extent we don't take an exception, there will be documents in their hands by Friday, but I cannot guarantee it will be all of the documents.

MR. SHALEK:  That's fine.  Next Friday, that is fine, Your Honor.  That's the 24th.

THE COURT:  He is saying he wants to begin his rolling production then.  I think he is talking about this Friday.

MR. SAYRE:  Well, I was talking about next Friday.

THE COURT:  Oh, next Friday.  Okay.

MR. SHALEK:  I think I should have everything by next Friday.  As you have heard, the way they have handled this discovery, we have propounded the discovery.

They filed blanket objections to everything and haven't given me anything since the day I filed this discovery which I think goes back to April or March of 2014.

I am still without a document, and when you talk about discovery, you know, delay designed to create the greatest possible problem, there is a fund of money, $48,000 every month that Mr. Reyes' client is paying to his client that is really

1  what we are trying to set aside as fraudulent.

2          So the bottom line is the longer that they can stall

3  giving us this discovery so we can put the issue to Judge

4  Altonaga, the more months they can continue to collect the

5  $48,000 from Mr. Reyes' client.

6          Now, Mr. Reyes' client is here because he doesn't

7  believe he should be paying that money, and that's a litigation

8  that is going on in state court where the state court Judge has

9  ordered them to produce the identical discovery to Mr. Reyes.

10         They fought that successfully for 8 to 9 months

11  already, and this whole thing is, as we allege in our

12  complaint, just a fraud to defraud the creditors.  To defraud

13  his client, and Mr. Sayre's law firm is just doing an excellent

14  job, I compliment them on pushing this discovery back and back

15  and back until we can get what we need to prove this fraud to

16  the judge.

17         MR. SAYRE:  All right.  So Mr. Shalek has had his

18  opportunity.  Now I am going to take my opportunity.

19         Okay.  They have been alleging fraud since the

20  beginning.  Okay.  They have absolutely no basis.

21         I have now read their complaint for fraudulent

22  transfer which they just filed on September 22nd.  They said

23  that this has been going on for 12, 13 months.

24         They had not filed their fraudulent transfer claim

25  until they filed a counterclaim to our deck action two weeks

1    ago.  Okay.

2         So Mr. Shalek, to the extent he says, "delay, delay

3    delay."  He had every opportunity to bring a fraud claim.  He

4    didn't do it until two weeks ago.  And do you know what he

5    bases it on, Your Honor?

6         He bases it on the fact that a corporation, a Pinnicle

7    3 corporation, which is a party to the loan agreement which

8    they are alleging is fraudulent, didn't exist in 2007.

9         Well, we have got proof that Pinnicle 3 was registered

10   to do business as a foreign corporation here in 2007.  That is

11   the basis for their fraudulent transfer action.

12        I don't think Jeff is going to stand up and say it is

13   anything other then that, but that is what they have got to

14   rely on.

15        So, you know, Mr. Shalek is doing a wonderful job

16   framing us as dilatory, but the fact is they are digging or

17   they are on a fishing expedition because they have got nothing.

18   Okay.

19        They did a good job the first time around in front of

20   Judge Altonaga on a hearing in which they got the money that he

21   is referring to.

22        Judge Altonaga moved it into the court registry, or I

23   am sorry, to Mr. Shalek's trust account.  We filed a motion for

24   reconsideration.

25        The court found that Mr. Shalek missed misled the

1  court into error based on the same story that he has just told

2  you.

3       So Mr. Shalek has told his side of the story, and he

4  has been telling you his side of the story in front of this

5  court, in front of the state court.

6       Mr. Reyes and Mr. Shalek have been telling the same

7  story over and over and over again.  And do you know what?  It

8  seconds good.  Judges react to that story and they grant the

9  relief just based on a story, but there is no substance behind

10 it.

11      So, frankly, I am tired of it, and so I am sorry that

12 I got a little animated, but it has been going on for a year,

13 and I am tired of being framed as dilatory when they just

14 haven't done what they were supposed were supposed to do.

15      THE COURT:  Okay.  Well, you were ordered to provide

16 this discovery several months ago.  At least 3 months ago, and

17 more than 3 months ago because it was 3 months ago that Judge

18 Altonaga denied your exception, and at the time that I ordered

19 it, your client should have begun to accumulate that so that it

20 would be ready upon, if necessary, to provide, and so I am

21 going to require that all of the records be provided by Friday

22 October 24th at 10:00 a.m.

23      All right.  What is the next issue?

24      MR. SAYRE:  Your Honor, just one question.

25      THE COURT:  Yes.

1          MR. SAYRE:  To the extent we take an exception, would

2     we need to file a motion to stay producing on the 24th or not?

3          THE COURT:  Yes.

4          MR. SAYRE:  Okay.  Thank you.

5          MR. REYES:  Good afternoon, Your Honor.  First I

6     apologize for being late.  Thank you for letting me call in.

7          THE COURT:  Okay.

8          MR. REYES:  Your Honor, you entered an order against

9     Mr. Goldstein on August 21st 2014 --

10          THE COURT:  Right.

11          MR. REYES:  -- to comply with our discovery.  By

12     September 4th of 2014, he was to provide full responses to all

13     of the discovery and failed to appear for that hearing, and he

14     has had multiple attorneys at different times.  No one appeared

15     for him.

16          THE COURT:  He is pro se, isn't he?

17          MR. REYES:  He is pro se, and he did not appear for

18     that hearing after getting notice.

19          THE COURT:  Well, just so that the record is clear,

20     all right.  I believe you are talking about the docket entry

21     number 381 on August 21st 2014?

22          MR. REYES:  Yes.

23          THE COURT:  Where I ordered that the impleaded

24     defendants request to compel responses to the first request for

25     production to Leon Goldstein is granted, and that he be

1   required to provide those records by September 4th.

2          Chambers mailed to Leon Goldstein at 17555 Collins

3   Avenue, unit number 3702 a copy of that order which for some

4   reason was not returned until it looks like October 2, 2014.

5          It was returned to sender as unclaimed, unable to

6   forward.  Just so you know, he didn't get a copy of at least

7   the court's mailing of the order, although he is required I

8   will note, well, let me just make sure that the address is

9   correct that we sent it to.

10         The address that he provided it is on the docket is

11  that same address as it was mailed to 17555 Collins Avenue,

12  unit 3702, and that he has a duty to maintain a current address

13  with the Clerk of the Court.

14         I also will notice on docket entry number 398 there is

15  notice of 17 letters returned, U.S. mail return for Leon

16  Goldstein, and the court was, this is the Clerk's Office

17  because I think the one that came back to me was actually

18  mailed by chambers, where as the others were mailed by the

19  Clerk, and they go through a list of, as I said, 17 docket

20  entries and indicate the court has not located an updated

21  address for this party.  Notices will no longer will be sent

22  until the address is corrected.

23         MR. REYES:  Your Honor, I wanted to address that point

24  because I received, just as the court, did a stack of mail that

25  somebody held at the Pinnicle building.

1        Mr. Goldstein's address is the in Pinnicle condominium

2   in Sunny Iles, and that mail then came back to us very

3   mysteriously from June through October all at one time, and I

4   think the same thing happened with the mail to the court.

5        THE COURT:  Well, it didn't happen to me.  It may have

6   happened to the clerk.

7        MR. REYES:  The clerk.

8        THE COURT:  Because they put that all in.  The first

9   docket entry was May 19th, 2004, which is one of the ones that

10  came back to them through 393, which I think was September

11  23rd.  So it was about 4 months worth of mail.

12       MR. REYES:  It appears, Your Honor, that Mr. Goldstein

13  was purposefully concealing himself.  The checks that

14  Mr. Shalek mentioned a moment ago that we pay every month under

15  the settlement agreement go by Federal Express to that address

16  Your Honor's mail and my mail has been going to.

17       Mr. Goldstein has or we just recently sent a subpoena

18  to the building manager to find out who is signing for these

19  FedEx packages.

20       Mr. Goldstein's daughter signs for these FedEx

21  packages and recovers these checks and somehow these funds make

22  it to Mr. Sayre's client, but Mr. Goldstein's daughter is

23  picking up these checks.

24       They have produced to me, and I know I will proffer to

25  Your Honor as an officer of the court.  That we are going to

take their deposition to authenticate these documents, but they

have produced to me their logs where the daughter signs, and

they produced to me a videotape where the daughter comes to the

front desk, picks up the FedEx packages.

What I did was with this last set of FedEx packages

because we were going to be before you, we included with the

FedEx package a copy of your order and a copy of the notice of

hearing for today, believing that even though he is

intentionally not recovering his mail at the building, but he

would see those, your record and the notice of hearing today

with the FedEx packages.

Those checks were collected.  The FedEx envelopes were

opened, and you actually see Mr. Goldstein's daughter looking

at the documents, taking them all with her, and, of course, he

is not here conveniently.

This is something he did earlier in this case.  If

Your Honor looks at the docket, there were multiple orders to

compel against him with prior discovery in this matter early on

with respect to Mr. Shalek's discovery.

MR. SHALEK:  Judge Altonaga gave us a writ of bodily

attachment against Mr. Goldstein.  Once that was issued,

miraculously he provided us post judgment discovery and settled

the first judgment that was entered against him in that case.

Mr. Goldstein in my opinion will not cooperate or

provide any discovery unless a writ of bodily attachment is

1   entered and he is brought before the court.

2          THE COURT:  Okay.  So what do you want me to do?

3          MR. REYES:  Well, Your Honor, I would like an order to

4   show cause why a body of attachment shouldn't issue.  If Your

5   Honor is concerned with further notice to Mr. Goldstein, I will

6   do it again by Federal Express if Your Honor requires.

7          He is collecting his FedEx's because that is where the

8   checks are, and he is ignoring the mail.  That is his address

9   because the money is being collected and cashed every month.

10  $39,000.  So there is something very curious going on, but

11  again, it is all part I think of --

12         THE COURT:  Yes.  Yes.  I mean, it sounds like if he

13  looks at the envelope and it has got the U.S. Court or you

14  guys, your return address, he is not picking it up.

15         MR. REYES:  Right.  He is ignoring it, but when he

16  sees FedEx, that means payment.

17         THE COURT:  Right.

18         MR. REYES:  He has his daughter pick it up, and then

19  it is deposited into an account, and then that money is

20  distributed, you know, to North Star.

21         Now, curiously the disposal of this lien was valid.

22  They seized his stocks and they now run his company.  Why it is

23  that his daughter collects the money for them or some of the

24  money gets to them, there clearly is some kind of relationship

25  going on here which undermines the validity of that judgment

1    that they obtained for which they say they seized his stock.

2           That's not for my issue.  That is what Mr. Shalek

3    brought up, but I previously discussed with Your Honor some of

4    the facts that relate to the suspicious nature of this

5    arrangement between the principal of North Star who is this

6    gentleman Yelizarov which is Mr. Goldstein's business partner,

7    and Mr. Goldstein and how they raced to the courthouse to get a

8    judgment ahead of this plaintiff to try to avoid this plaintiff

9    from seizing assets.

10          THE COURT:  Okay.  I don't want to hear about the

11   case.

12          MR. REYES:  No.  I understand, Your Honor.  We are

13   concerned obviously about the issue of paying twice.  Paying

14   the right party and an allegation being made.

15          THE COURT:  Right now we are here to discuss the fact

16   that he was ordered to do something and he didn't do it, right?

17          MR. REYES:  Yes.

18          THE COURT:  So you want an order to show cause why he

19   shouldn't be held in contempt or be arrested?

20          MR. REYES:  Why he shouldn't be arrested or held or

21   fined or do both until he makes discovery.

22          THE COURT:  Okay.  Do you want to be heard about that?

23          MR. SAYRE:  Yes.  I mean, this is exactly what I am

24   talking about.  Your Honor, just so you know, I mean this story

25   has been told repeatedly.

1      That story has nothing to do with what we are here on

2 today.  Now, Mr. Reyes will readily admit that Pinnicle 3, or I

3 am sorry, North Star does have a judgment against Pinnicle 3 to

4 whom the checks are directed.  Okay.  So we have every right to

5 that money, and to the extent Mr. Reyes says otherwise, it is

6 untrue.

7      THE COURT:  Have you spoken to Mr. Goldstein?

8      MR. SAYRE:  Have I spoken to Mr. Goldstein?

9 Mr. Goldstein did call me about a week ago and said, "I've been

10 out of the country," and that's about it.

11      THE COURT:  Did you tell him about this hearing?

12      MR. SAYRE:  I told him -- well, I told him that, well,

13 he has got some issues.  People are requesting discovery of

14 him, and that he should -- well, that he should comply with the

15 discovery request.  That's essentially what I said.

16      THE COURT:  Okay.

17      MR. SAYRE:  And I told him he should get an attorney.

18      THE COURT:  That's good advice.  All right.

19      Well, I am going to issue an order to show cause why

20 he shouldn't be held in contempt and/or arrested and fined for

21 failing to provide the documents and for failing to show up

22 here today at this hearing, as well as for failing to maintain

23 with the clerk an appropriate address where he can receive

24 mail.

25      MR. REYES:  Your Honor, may I ask Mr. Sayre to help us

1   get notice to Mr. Goldstein, since they are in communication

2   with him?

3           I will FedEx your order if Your Honor instructs me to

4   do so, but since they are in communication with him, perhaps

5   they could assist us in getting notice to him of your ruling.

6           MR. SAYRE:  Your Honor, he called me.  You know, I was

7   contacted.  He called me.  That's it.  Okay.

8           Now, to the extent that Mr. Reyes thinks that I have

9   some sort of special access to Mr. Goldstein, that is not

10  accurate.  Okay.  If he gives me a FedEx, I would have to go

11  hunt him down, and it is not my job to do that.

12          THE COURT:  Do you have any contact information for

13  him?

14          MR. SAYRE:  He called me.  I would have to see if I

15  could --

16          THE COURT:  That's not the question.  The question is

17  do you have any contact information for him?

18          MR. SAYRE:  I actually have to check whether I have

19  his telephone number.  I actually do, because I never reach out

20  to him.  Okay.  So I would have to contact him.  I would have

21  to figure out whether I have his cell phone number or not.

22          MR. REYES:  Mr. Yelizarov, the principal of North

23  Star, he is in regular contact with Mr. Goldstein.  I would

24  think your client would be able to reach him and let you know

25  how to reach Mr. Goldstein very easily.  They are in business

1    together.

2           MR. SAYRE:  But, Your Honor --

3           MR. REYES:  Mr. Goldstein testified at the last

4    deposition that he lives with Mr. Yelizarov.

5           MR. SAYRE:  If you want to order my client to somehow

6    reach out to him, I mean this is not, if that is the case then

7    I would like to --

8           THE COURT:  You guys need to talk to me and not to

9    each other.

10          MR. SAYRE:  I am sorry.

11          THE COURT:  This is a discovery hearing where you are

12   asking me for relief.  Beforehand, before you come in here you

13   could discuss all of this stuff yourselves.

14          MR. SAYRE:  Correct.  You are right.

15          THE COURT:  And try to get it resolved, but if you

16   want to make an argument, make it to me.  Not to each other.

17   Okay?

18          MR. SAYRE:  I understand.  Then I would like to find,

19   you know, Mr. Chaban in case I want to serve him with service

20   who is plaintiff.  Can I get counsel to agree to that?

21          MR. SHALEK:  I will agree to accept service of process

22   for anything from Mr. Chaban.

23          THE COURT:  Okay.  Good.  Here is what I am concerned

24   about:  Mr. Goldstein is going to get arrested if he does not

25   show up here at the show cause hearing.

```
1          MR. SAYRE:  Right.

2          THE COURT:  And I would rather not have to impose that

3  upon him.  However, if he is not, in other words, even though

4  he has a duty to maintain an address with the court and it is

5  appears it is apparent to me that at least somebody related to

6  him is getting this mail, if you have another address for him I

7  would rather, you know, send it to him and he can show up here

8  now that he is back from Europe, and he can clear this whole

9  thing up, or he can provide the documents, rather than me

10  getting the United States Marshals to go sit on his house and

11  arrest him and drag him over here and him spend a couple of

12  days in jail until we get a conference, and then bring him in

13  and explain to him that he has got to obey the court's orders

14  or he is going to stay in jail until he does.

15          So, you know, we can save him a lot of bother and a

16  lot of time.  We can save the U.S. Marshals bother and time and

17  we would save all of these attorneys here bother and time if

18  your client has an address for him or can call him and say,

19  "Hey, the marshals are going to come arrest you if you don't

20  show up at this hearing."

21          MR. SAYRE:  The fact is I don't know.  You are asking

22  me, and I don't know.

23          THE COURT:  Okay.

24          MR. SAYRE:  Your Honor asked me a direct question.  I

25  gave you a direct answer.
```

1      Have I heard from Goldstein?  I got a call from him a

2  week ago.  That's it.

3           THE COURT:  Okay.

4           MR. SAYRE:  Okay.

5           THE COURT:  All right.  So we are going to have a

6  hearing.  I am going to set the date in a second.

7           Also in the order I am going to require, who is the

8  person that you represent that was just mentioned?

9           MR. REYES:  Well, I represent a corporation.

10          THE COURT:  Okay.  And who is the individual?  Is he

11  the owner of the corporation or an officer?

12          MR. SAYRE:  I think he is a principal.  His name is

13  Alexander Yelizarov.

14          THE COURT:  Okay.

15          MR. SAYRE:  By the way, he is in the Ukraine.

16          THE COURT:  Okay.

17          MR. SAYRE:  He is not local.

18          THE COURT:  Do you know where to go ahold of him?

19          MR. SAYRE:  I have got an e-mail address.

20          THE COURT:  Okay.  You are to make efforts to contact

21  Mr. Yelizarov.  How do you spell that?

22          MR. SAYRE:  Yelizarov.  Y-e-l-i-z-a-r-o-v.

23          THE COURT:  Okay.  And attempt to obtain any current

24  contact information, including address and phone number, and if

25  you obtain that, you are to provide it to all opposing counsel.

1              In fact, you are to file it with the Clerk of the

2      Court in a notice and then, you know, both counsel will get it

3      at the same time.

4              MR. SAYRE:  I don't want to get in trouble.  Should I

5      do it under seal?

6              THE COURT:  No.  Well, you should do the address.  On

7      the address I believe he is required and I believe the phone

8      number he is also required to provide for the court.

9              So he is not a witness.  He is a party who is

10     representing himself.  So he is required to keep that on file

11     with the court.  So I don't think it should be filed under

12     seal.

13             All right.  And when do you want to have this show

14     cause hearing?

15             MR. SAYRE:  In 10 or 14 days, Your Honor.

16             THE COURT:  All right.  Well, let me take a look.

17     How about Tuesday, October 28th?  That will be two weeks from

18     now in the afternoon at 2:30.

19             MR. REYES:  Your Honor, I know I have an oral argument

20     before the 4th District that day, but I think it is in the

21     morning.  I may be here, but I hate to end up like today

22     running from Palm Beach.

23             THE COURT:  Well, I can do it later in the day if you

24     want, or we can do it on that Friday, which is Halloween

25     October 31st.

1       MR. REYES:  Do you know what?  The oral argument is at

2  10:30 a.m. in the 4th District.  So if it was in the afternoon

3  I should be fine.

4       MR. SAYRE:  That's fine.  They give you an hour.

5       THE COURT:  Okay.  All right.  So we will keep it on

6  at 2:30 then on October 28th, and we will see what happens.

7       I am going to require him to appear at that time to

8  show cause why he shouldn't be held in contempt, as I said to

9  obey my discovery order for failing to be here today and for

10 failing to provide a proper address to the court.

11      All right.  Anything else we can talk about today?

12      MR. SHALEK:  No, sir.

13      MR. SAYRE:  Thank you.

14      MR. REYES:  Thank you for your time, Your Honor.

15      THE COURT:  All right.  Thanks a lot.  We will see you

16 guys in two weeks.

17      MR. SAYRE:  All right.

18      (Whereupon the proceedings were concluded)

19

20

21

22

23

24

25

1

2

3                    C E R T I F I C A T E

4        I hereby certify that the foregoing is an accurate

5    transcription of proceedings in the above-entitled matter.

6

     OCTOBER 24, 2014          S/JERALD M. MEYERS

7    _____          _____

8        DATE                    JERALD M. MEYERS, RPR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25