```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION

 3            Case No. 10-CV-21612-ALTONAGA/SULLIVAN

 4  PALADIN SHIPPING CO., LTD.,
    a Foreign Corporation,
 5  et al.,

 6                 Plaintiff,

 7  vs.                                      MIAMI, FLORIDA,
                                             DECEMBER 11, 2014
 8

 9  STAR CAPITAL FUND, LLC.,
    a Florida Limited Liability
10  Company and LEON GOLDSTEIN,

11

12                 Defendants.

13

14              DISCOVERY HEARING TRANSCRIPT
          BEFORE THE HONORABLE JOHN J. O'SULLIVAN,
15             UNITED STATES MAGISTRATE JUDGE

16
    APPEARANCES:
17

18
    FOR THE PLAINTIFF:
19

20                          PHILLIPS, CANTOR & SHALEK, P.A.
                            Suite 300 North
21                          Hollywood, Florida 33021
                            BY: JEFFREY B. SHALEK, ESQ.
22

23

24
    REPORTED BY:            JERALD M. MEYERS, RPR.
25  TELEPHONE:              954-431-4757
```

```
1

2

3

4   PRESENT FOR THE IMPLEADED PARTIES:

5

6

7

8                           TOBIN & REYES, P.A.
                            225 N.E. Mizner Boulevard
9                           Suite 510
                            Boca Raton, Florida 33432
10                          BY: RICARDO A. REYES, ESQ.

11

12

13

14                          MAYERSOHN LAW GROUP
                            101 N.E. 3rd Avenue
15                          Suite 1250
                            Fort Lauderdale, Florida 33131
16                          BY: LEAH H. MAYERSOHN, ESQ.

17

18

19

20

21
    REPORTED BY:            JERALD M. MEYERS, RPR.
22                          J.M. COURT REPORTING, INC.
                            1601 N.W. 109TH TERRACE
23                          Pembroke Pines, FL 33026-2717
                            Telephone: 954-431-4757
24                          E-Mail Address: CRJM@AOL.COM

25
```

1  (Call to order of the Court)

2          THE CLERK:  All rise.

3          THE COURT:  Good morning.

4          MR. SHALEK:  Good morning, Your Honor.

5          THE COURT:  We are here today in the case of Paladin

6  Shipping versus Star Capital and other impleaded folks, case

7  number 10-Civil-21612.

8          We are here on a discovery hearing set by a group of

9  impleaded defendants.

10          Can I have appearances.  For the impleaded defendants

11  first.

12          MR. REYES:  Yes, Your Honor.  Ricardo Reyes on behalf

13  of 75 Retail, 40 Retail, Century Drive and Sterlington Retail

14  Corporation.

15          THE COURT:  Okay.  Is anybody here for Paladin?

16          MR. SHALEK:  May it please the court, Jeffrey Shalek,

17  Phillips Cantor Shalek on behalf of Paladin Shipping and

18  Anatolly Chaban.

19          THE COURT:  Okay.  And then you are here on behalf of

20  Mr. Goldstein?

21          MS. MAYERSOHN:  Yes, Your Honor.  Leah Mayersohn on

22  behalf of Mr. Goldstein.

23          THE COURT:  Is it Mayers?  M-a-y-e-r-s?

24          MS. MAYERSOHN:  S-o-h-n.

25          THE COURT:  S-o-h-n.  Okay.  What do you say,

1    Mr. Reyes?

2          MR. REYES:  Yes, Your Honor.

3          Your Honor, may it please the court, we are here today

4    for our request for sanctions and that Mr. Goldstein be held in

5    contempt of court after the many hearings that we have had, and

6    his failure to comply with your most recent order where you

7    very clearly ordered him to produce all responsive documents,

8    find them from other sources and that all of his objections

9    were waived, and I have prepared a small hearing notebook for

10   Your Honor.  If I could approach?

11         THE COURT:  Sure.  Thanks.

12         MR. REYES:  As I am sure Your Honor remembers, we have

13   had multiple hearings to attempt to obtain Mr. Goldstein's

14   compliance with discovery, and Your Honor had to go as far as

15   issuing an order to show cause against Mr. Goldstein on October

16   14th, which is at tab 1 in the book that I gave the court, and

17   we had a hearing on October 28th.

18         Your Honor entered an amended order in which you were

19   very clear that all objections had been waived; that

20   Mr. Goldstein was to produce all documents and was to respond

21   to all discovery that has been propounded on him, and if

22   records were not within his possession, custody and control

23   Goldstein was to make every attempt possible to obtain the

24   records, and obviously under the rules what is in his

25   possession, custody and control must be produced.

1          Your Honor's order required compliance in two weeks,

2    and that's at tab 2.

3          I have put in the book at tab 3 the request for

4    production that was pending against Mr. Goldstein in this

5    matter for a number of months when we propounded this request

6    back in June of 2014.

7          If Your Honor looks at tab 4, there is Mr. Goldstein's

8    response in which he ignores Your Honor's order and serves a

9    response that is virtually all objections, after Your Honor

10   could not have been more clear, both in your oral pronouncement

11   at the hearing, if we were to look at the transcript, and in

12   your order that all objections were waived.

13          He produced to us virtually nothing.  A handful of

14   documents.  K-1's that were issued by our companies to him.

15   Not what we were looking for in this case.  The loan agreement

16   that Mr. Shalek is suing on as being a fraud on the court which

17   is already a part of the pleadings, but very few -- oh.  The

18   note under our original settlement.  None of the documents that

19   we were asking for which was the underlying transaction that

20   Mr. Goldstein and North Star claimed to be a valid transaction

21   for which they purportedly have a judgment with priority over

22   the Chaban judgment which this court entered.

23          Before coming to Your Honor, if you look at tab 5, my

24   office attempted to obtain compliance.  There are two e-mails

25   here.

1          My associate, Stefanie Shelley, wrote an e-mail on

2   November 17th about the objections, and that's on the second

3   page of that e-mail string where Mr. Goldstein's counsel was

4   reminded that Your Honor had been clear about the waiver of

5   objections and that the response was all objections and

6   demanding by Friday, November 21st that all of those objections

7   be withdrawn, and that we get a proper response.

8          I followed up to assist counsel in what must exist, if

9   this is a valid loan.  I mean, you know, we don't leave our

10  common sense at the door, and I listed in an e-mail to

11  Mr. Goldstein's counsel what Mr. Goldstein should be gathering

12  at a minimum in this matter with respect to this alleged

13  transaction that supposedly defaulted on and supposedly

14  resulted in a valid judgment against him with priority.

15         I listed here just as some examples, I said, if

16  Yelizarov actually made a loan to Leon.  Leon should have, at a

17  minimum, and I listed it here in the e-mail --

18              THE COURT:  Which e-mail are we talking about?

19              MR. REYES:  This is tab 5.

20              THE COURT:  The first page?

21              MR. REYES:  Yes.  The very first page, and I list

22  there, in an informal sense, but I said, "Evidence that the

23  loan advances.  Evidence of payments.  Income tax records

24  relating to the loan.  Correspondence regarding payments.

25              Correspondence regarding demands for payments.

1   Default notices.  Correspondence regarding the agreement to

2   reaffirm the debt, which I am going to explain to Your Honor

3   the re-affirmance.

4         Correspondence regarding the agreement to file a

5   friendly lawsuit.  Allow entry of judgment.  Correspondence

6   regarding the agreement to allow North Star to seize the

7   shares.  Records that shows Pinnacle's shares were seized.

8   Records to show that Leon no longer owns or control Pinnacle.

9         Correspondence regarding the agreement to have Leon's

10  daughter to continue to collect and deposit payments for North

11  Star.

12        All of the matters that we have talked about in this

13  court at every hearing which is the crux of this matter as to

14  whether or not a fraud has been committed on the court as the

15  counterclaim filed by Chaban in this matter alleges, and the

16  concern we have.

17        We are dragged in here, and Your Honor knows we have a

18  state court proceeding in which we are suing to enforce the

19  settlement against Pinnacle because of the suspect nature of

20  this transaction and the concern that we have of being in the

21  middle and remitting $40,000 payments every month and the

22  concern that that money is going to the wrong party is being

23  hijacked by what I call the Yelizarov companies, when it should

24  be going to Pinnacle in which case, and that should be going to

25  satisfy the Chaban judgment versus what may be a fraud on the

1    court, but we are not here to decide whether it was a fraud on

2    the court, but this information ought to exist, none of which

3    has been produced to us.

4         Okay.  Now, just to give Your Honor where

5    Mr. Goldstein should be able to obtain records if, in fact,

6    this is a valid transaction, if you look rather tab 6 of the

7    book, Your Honor, I try to the court a kind of a cast of

8    characters of people who would be within his possession,

9    custody and control to obtain records or entities.

10        Let's start with Pinnacle.  According to Sunbiz, as of

11   April of 2014, he is still a director and a shareholder of

12   Pinnacle, even though allegedly his ownership of Pinnacle was

13   seized by --

14        THE COURT:  Director.  Well, you didn't say

15   shareholder here.  You say director and secretary.

16        MR. REYES:  Director and secretary, even though his

17   shares were allegedly seized, and I think I have, if you look

18   down at tab 10, I just printed from Sunbiz the last filing from

19   Pinnacle III Corporation where Mr. Goldstein filed to make

20   Mr. Yelizarov the president of Pinnacle.

21        That was filed on April 16th of 2014, and he files it

22   as director, president and secretary.  So even if the president

23   was replaced, he remains director and secretary according to

24   those filings.

25        So the records of Pinnacle ought to be within his

1    possession, custody and control.

2        If we go back to the source documents, Your Honor,

3    Glenn Haft is the CPA-accountant for Mr. Goldstein personally

4    and the Pinnacle companies.  Clearly somebody that he could

5    have access to for records to produce to us responsive to this

6    request.

7        All of the Yelizarov companies that are involved in

8    these proceedings, North Star Maritime, North Star Maritime

9    Miami, Vernal U.S.A., he clearly has access to them.

10       His daughter is picking up these checks.  They are

11   being deposited in Pinnacle which supposedly these entities

12   own.  So they are taking the cash.

13       These entities, the principal of these entities is

14   Mr. Yelizarov, which is now the principal, the president of

15   Pinnacle.

16       He is the principal of all of those entities.  He is

17   Mr. Goldstein's personal friend and business partner for over

18   20 years.

19       So he would have access to this information, or at

20   least should try to get all of these records from them if he

21   claims not to have them in his own possession.

22       Then I listed Michael Kivitz.  Your Honor, Mr. Kivitz

23   has been given a power of attorney.  He is a member of the bar.

24       He is an attorney here in Florida, and he has been

25   appointed as attorney in fact to act as the president of both

1   North Star Maritime Miami, LLC and Pinnacle III Corporation.

2          I have attached those powers of attorney at tab 9 to

3   show Your Honor that this attorney has the power of attorney to

4   actually act as the president of the company.  It is a query

5   whether that is a proper power of attorney to act in a capacity

6   versus for a person, but that is what they say, and so here is

7   another source of documents for him.

8          Then I listed his former counsel, Mr. Sexton.  He was

9   counsel at the point in time this 2007 loan to an entity that

10  didn't exist was allegedly made.  I am sorry.  When that debt

11  was reaffirmed in 2013.

12         So there is the 2007 loan to Pinnacle Florida when

13  Pinnacle Florida didn't exist and was reaffirmed in January of

14  2013 when he was represented by Mr. Sexton.

15         You would think there would be communications about

16  reaffirming the debt, admitting the liability, agreeing to a

17  judgment, et cetera.

18         I am sorry.  I wanted to give Your Honor an

19  understanding of who that person was, and then we know Pinnacle

20  banks, from the payments we have made with Capital Bank and

21  Chase Bank.

22         So I listed all of these to Your Honor because I

23  created, if you look at tab 7, I tried to summarize what we

24  were looking for, including who would have access to those

25  records that Mr. Goldstein could have accessed and get these

1  records.

2          These are things that we haven't received in discovery

3  in this matter yet.  Any documents that would show liens or

4  encumbrances on his assets or Pinnacle's assets other than the

5  suspect mortgage, and I get objections, and then we got the

6  suspect mortgage produced to us and nothing else.

7          I asked for records showing sales or transfers or

8  assignments or on execution on Pinnacle or Goldstein's assets,

9  and I got answers "none" or "not in the possession, custody or

10  control except for number 5.

11          Again, all of the people I listed would be accessible

12  to him for those records.  And if Your Honor jumps down just

13  for a second to number 11 in this book, this is really the crux

14  of it.

15          This is a letter from Michael Sayre that was here at

16  the last hearing.  He represents the various Yelizarov

17  companies, and this is what precipitated our having to sue to

18  enforce the settlement to find out what had occurred with

19  respect to assignment of the payable from us to another entity.

20          He wrote a letter to us and he said, "North Star

21  loaned money to Leon Goldstein pursuant to a loan agreement in

22  March of '07 as collateral for the loan Goldstein pledged among

23  other assets his shares of stock in Pinnacle III Corporation.

24          Now, Pinnacle III Florida didn't exist then.

25          When Goldstein failed to repay the loan, North Star

1   executed on the collateral the shares of Pinnacle III stock.

2          Since North Star is the owner of the shares of

3   Pinnacle III stock, it controls all of the assets of Pinnacle

4   which includes the note referenced in your letter."

5          Your Honor, common sense and logic would dictate that

6   there would be records that would substantiate those

7   allegations that must be within Mr. Goldstein's possession,

8   custody or control.  It defies logic that he borrowed millions,

9   defaulted, reaffirmed, let his shares get seized, and there

10  would be nothing that existed in that regard.  I just don't

11  think that that is credible.

12         So we go back to the list of things we have requested.

13  Again, sale, transfer, assignment or execution of assets.  Then

14  I listed loans to Pinnacle or Goldstein.  Again, they only

15  produced the mortgage to me.

16         I asked for payments or transfers of funds to or from

17  Pinnacle or Goldstein.

18         Your Honor, if you lent millions of dollars you would

19  think there would be wire transfers or checks showing that

20  money went in, and theoretically if they waited 6 years to

21  enforce the loan, that payments were being made at some point

22  in time, or why did 6 years pass before they stopped to enforce

23  the loan?  Was it because Chaban was getting a judgment?  But,

24  again, nothing produced to us as to payments.

25         Any payment defaults or judgments against Pinnacle or

1  Goldstein.  Other than the judgments themselves, I have got a

2  docket given to me.  Not even the judgments, but there was no

3  correspondence saying, "Hey, you are in default, and we are

4  calling the loan.  We are accelerating the obligation."

5  Nothing of that nature.

6          Then I asked for communications between Pinnacle and

7  Goldstein and Yelizarov companies about the loans.  Nothing

8  produced.  Alleged not to be in his possession, custody or

9  control.

10         The ownership of the Pinnacle shares on March 27th of

11 '13, that is the day of the settlement, Your Honor, when we

12 entered into this agreement to repay these existing loans that

13 Pinnacle had made to my client's companies which we are happy

14 to make, and we are happy with that settlement.

15         We asked for evidence of ownership of the stock, and I

16 get Mr. Goldstein, who supposedly was the 100 percent owner,

17 has nothing in his possession, custody or control, or it is a

18 public record.

19         Well, ownership is not a public record.  Officers and

20 directors may be a public record, but not ownership.

21         Again, listing, you know, Mr. Kivitz or Pinnacle or

22 Mr. Haft were all sources of documents.

23         I asked for corporate records and documents about

24 approving the assignment of the Pinnacle stock.  Objections and

25 not in his possession, custody and control.  Yet his shares,

1    his primary assets were seized.

2          His home is held in Pinnacle's name.  So theoretically

3    the ownership of his home was taken, and there would be no

4    records allegedly, or not in his possession.

5          Documents evidencing directors, shareholders, owners

6    or principals of Pinnacle.  Again, we have the Sunbiz record,

7    but not anything as to who the shareholders are or who the

8    owners are.

9          I asked for documents evidencing members, managers,

10   owners or principals of the various Yelizarov companies.  He

11   said not in the possession, custody and control, and then I

12   asked for communications between the Yelizarov companies and

13   his banks.

14         Clearly it could be something he could ask his banks

15   for or Yelizarov, but I got an answer of "none."

16         I asked about the powers of attorney granted to

17   Kivitz.  He says not in the possession, custody or control.

18         His power of attorney for someone acting as president

19   of Pinnacle, a company he is still the director of and used to

20   be the owner.  The 100 percent owner.

21         I asked for tax returns for 2012 and 2013.  Now, they

22   said they were not filed, but they gave me the K-1's for our

23   companies that we had mailed to him.  Obviously, we don't need

24   those, but where are the K-1's for Pinnacle from before his

25   shares were seized, or was a K-1 issued in '13 to him, even

1  though his shares were allegedly seized?

2       That would be very telling evidence as to whether or

3  not his shares really were seized and whether he is still the

4  owner and whether this is a ruse.

5       So I wanted to show Your Honor first the

6  non-compliance and what is within his possession, custody and

7  control that he has said and I don't believe has failed to meet

8  that test.

9       I put in the pocket part of the book a case I gave

10 counsel, you know, what the Southern District has said what

11 control means, you know, and the court said, Control within the

12 meaning of the rule governing production of documents in civil

13 matters does not require that the party have legal ownership or

14 actual physical possession of the documents at issue.

15      Indeed, documents can be considered to be under a

16 party's control for discovery purposes when that party has the

17 right, authority or practical ability to obtain the materials

18 sought on demand."

19      Now, when I got this non-responsive, and I got

20 virtually no documents and all of these objections, I

21 immediately said, "I want to take Mr. Goldstein's deposition on

22 his compliance with your order," and I was thwarted.  It wasn't

23 agreed to.  They would not agree to have his deposition.

24      They didn't say I had a right to it, and I wanted to

25 inquire of him on his possession, custody and control what

1  efforts were made to comply with Your Honor's order, and I

2  wasn't permitted to do so.

3         I am told me is not here.  I have asked when is he

4  going to be back.  When can I take his deposition so I can see

5  what efforts he made to comply with the order.

6         Did he ask Yelizarov or the Yelizarov companies?  Did

7  he ask Mr. Haft, his accountant?  Did he ask Mr. Sexton, his

8  former lawyer?

9         Did he ask his attorney in fact for records?  What

10 effort was made to obtain these documents.  What documents.

11        Let him tell me what documents ought to exist that are

12 not in his possession, custody or control, and I have been

13 prevented from doing that.

14        So, Your Honor, here we stand.  Your Honor awarded us

15 fees last time.  We don't have an agreement on the fees.

16        As Your Honor instructed, we were to try to work it

17 out.  We gave the records of what we spent in the various

18 hearings and fights to get here.

19        Mr. Goldstein does not agree to pay that, so we will

20 have to a hearing with Your Honor as to an award.

21        We are at the point, Your Honor, where Mr. Goldstein

22 should be held in contempt of court.  This is a mockery of the

23 system, and it took Judge Altonaga previously to get a writ of

24 bodily attachment to comply with some discovery that Chaban had

25 served early on in this case, and I think we are there.

```
 1              I don't think he is going to take Your Honor
 2      seriously.  I don't think he is going to do what the rules
 3      require him to do until he is facing a similar consequence.
 4              So I think we are there where Your Honor should have
 5      him arrested.  I think he should be held until he purges the
 6      contempt.
 7              I think he should pay all of our fees, and if in fact
 8      he swears that he doesn't have possession, custody or control
 9      that we be allowed to test that and depose him on exactly what
10      records existed and why he doesn't have access to them.
11              THE COURT:  Okay.  What do you say?
12              MS. MAYERSOHN:  Your Honor, let me start off by
13      referring you to the e-mail that is in tab 5 of Mr. Gaines, my
14      e-mail back to Ms. Shelley.
15              "Rick, I have not heard back," and to Mr. Reyes.
16              "Rick, I have not heard back from you.  I have not
17      held any documents back.  I even did public records searches
18      which I thought were unnecessary, as the judge said I couldn't
19      hold anything back.  Please give me a call to discuss this."
20              Mr. Goldstein takes this matter very seriously.  As I
21      was explaining to Mr. Reyes prior to this hearing, not everyone
22      papers every single deal, and I gave him an example of a client
23      of mine that I have had as a long term client who owns 600 gas
24      stations throughout the U.S. and Canada.
25              This is not Mr. Goldstein, and this client of mine,
```

1   until I got involved in his matters, related not to a breach of

2   one of his leases, but related to someone who stole money from

3   him, he had never had any leases.  All of his bills was done on

4   a handshake because that's how things are done in his

5   community.

6         Mr. Reyes is expecting for documents to exist which

7   are not necessarily in existence.  Everything that I have been

8   able to get in this particular case has been produced.

9         I have gone above and beyond to try to obtain

10  additional documentation for Mr. Reyes, as has Mr. Goldstein.

11        I have contacted all prior counsel of Mr. Goldstein.

12  One prior counsel refused to deal with us at all.  Mr. Bushell

13  provided whatever documents he had within his possession, and

14  anything that was compliant I went pled and provided.

15        A lot of it was just pleadings in that particular

16  case.  We contacted Mr. Sayre's office.  Mr. Sayre advised that

17  he was not going to turn over any documents regarding this

18  particular matter.

19        THE COURT:  Who is Mr. Sayre?

20        MS. MAYERSOHN:  I am sorry.  Mr. Sayre is counsel for

21  Pinnacle.

22        Now, they have indicated, Mr. Reyes has suggested that

23  Mr. Goldstein is still involved in Pinnacle.  He is not an

24  officer of Pinnacle.  I think it looks like there is a mistake.

25  Let me pull it up.  I think it is question 13.  Your Honor, if

1  I might approach?

2          THE COURT:  Okay.

3          MS. MAYERSOHN:  And I showed this to counsel on my

4  cell phone before.  I didn't realize that I had a copy printed

5  out, and this is the latest file of Pinnacle III Corporation,

6  and it indicates that Mr. --

7          THE CLERK:  Counsel, wait.  You have to get to the

8  microphone.

9          THE COURT:  Hand it to me and then go back to the

10  microphone.

11          THE CLERK:  You have to speak into the microphone.

12          MS. MAYERSOHN:  As Your Honor can see from this

13  filing, Mr. Goldstein is not listed as an officer or director.

14          I think what Mr. Reyes provided to you seems to be a

15  mistake, and what I found from clicking on the ling in my

16  phone, they did change, Mr. Kivitz changed the officers and

17  directors of the corporation, but when they renewed they

18  probably just left the names that are in Sunbiz when you check

19  into it, and that's why it shows they are disparate officers.

20          What I was told from Mr. Sayre's office is that I

21  could not go to the bank, since my client was no longer on the

22  accounts.

23          My client is not entitled to get their banking

24  records.  It is their corporation, and that that would be a

25  problem if we attempted to do so.

1        He is not an officer of the corporation.  They are

2   entirely separate entities, and I appreciate the fact that

3   Mr. Reyes has in his mind a thought process that all of these

4   other people are available to provide records to Mr. Goldstein,

5   but if these individuals don't want to comply, they don't have

6   to.

7        Mr. Kivitz is a lawyer for someone else.  If his

8   client doesn't want to turn over the records, it would be a

9   breach of his ethical duties to do that.

10       Pinnacle has their own records.  Unfortunately,

11  Mr. Goldstein, when he had provided, when everything was I

12  guess executed on per the letter from Mr. Sayre's office, from

13  Heller Waldman saying what had happened when he failed to repay

14  the loan, North Star executed on the collateral the shares of

15  the Pinnacle III stock.

16       They took possession of all of the records.  If they

17  are not turning them over, I cannot produce something that is

18  not in my possession that the counsel for that company refuses

19  to provide to me.

20       We put some objections just for record purposes, but

21  we have provided every single document to try to comply,

22  including public records requests that Mr. Reyes could do.

23       Some of the records that they requested I think were

24  disingenuous.  For example, question 20, they had wanted the

25  original note to be produced.

1        We provided a copy of that, plus I provided a copy of

2   the transcript whereby the original note was turned over to the

3   court in the state court case, and they were present at the

4   hearing.

5        So they were aware that my client is not in possession

6   of the original note and could not produce it because the judge

7   in the other case is in possession of the note, and that's an

8   ongoing matter.

9        My client has tried to do everything possible to go

10  ahead and comply with these orders.

11       He has not shown a contumacious disregard for

12  anything.

13       Now, with respect to his taxes, his accountant

14  confirmed that he has not filed taxes for several years.

15       I cannot produce something that Mr. Goldstein has not

16  filed.  His record keeping, you know, it is abominable, but

17  there are many people that are not good with records.

18       Just because he does not have records in his

19  possession, and Mr. Reyes thinks that there should be certain

20  types of records doesn't mean that they exist.  We have

21  responded fully.

22       THE COURT:  Well, how come your client is not

23  appearing for deposition so he can explain what he did?

24       MR. REYES:  Mr. Reyes tried to set a deposition when I

25  was unavailable.

```
 1              THE COURT:  When is your client available?

 2              MS. MAYERSOHN:  I am sorry?

 3              THE COURT:  When is your client available?  If he

 4    doesn't have any records, let's be practical.  All right?

 5              MS. MAYERSOHN:  Yes.

 6              THE COURT:  This guy is in all of these transactions,

 7    right, somehow, somewhere  at some time?

 8              MS. MAYERSOHN:  Yes.

 9              THE COURT:  Maybe now he is not with Paladin.  Maybe

10    he is.  That is what this fellow needs to find out.

11              MS. MAYERSOHN:  Yes, Your Honor.

12              THE COURT:  Okay.  Mr. Goldstein, first of all, I said

13    that he could have no objections.  Yet you decided to respond

14    to everyone.  First, you responded with general objections.

15              Then you responded to virtually everyone of them with

16    other objections.  Now, how is the other side, Mr. Reyes,

17    supposed to know whether you are withholding stuff as a result

18    of objections?

19              So, first of all, everyone of your objections is

20    stricken.  Are you clear?

21              MS. MAYERSOHN:  Yes, Your Honor.

22              THE COURT:  You are to re-respond.  In your response

23    you are to list the question that they ask for, the request for

24    production.  You are to write that in or type it in and then

25    you are to give a responsive, if it exists or if it doesn't
```

1    exist.

2         If it doesn't exist, and he has any knowingly of it

3    ever existing, he is to give an explanation of where it is

4    today.

5         "In other words, I had the loan agreement, but I no

6    longer have it because I put it through the shredder or because

7    I gave it to the folks who own another company, or because I

8    left it in my house and it burned down or because my dog ate

9    it."  All right?  Is that clear?

10        MS. MAYERSOHN:  Yes, Your Honor.

11        THE COURT:  And he is also to sit for deposition.

12   When can he appear for deposition?

13        MS. MAYERSOHN:  I can check and find out.

14        THE COURT:  No, not check and find out.  I will set

15   the date right now, and if he doesn't appear he can go to jail

16   or you can give me a date that you think is appropriate.  I

17   mean, you came here --

18        MS. MAYERSOHN:  Yes.

19        THE COURT:  -- knowing that that is what this fellow

20   was asking for.  You didn't ask your client ahead of time, "Mr.

21   Goldstein, when are you going to be here?  You are probably

22   going to have a judge who is going to be upset," because for

23   the last 6 months he has been meeting with these folks trying

24   to get some records and nobody in this case seems to think it

25   is appropriate to provide any."

1          Tell Mr. Goldstein.  He was here last time.  I would

2     be very happy to put him in jail if he wants to disobey my

3     orders.

4          MS. MAYERSOHN:  Your Honor, I don't believe

5     Mr. Goldstein is trying to disobey your orders.

6          THE COURT:  Well, he is not giving me a real good

7     feeling right now.  I can tell you that.

8          MS. MAYERSOHN:  On December 22nd I am free.

9          THE COURT:  Are you free then, Mr. Reyes?

10         MR. REYES:  I am, Your Honor.

11         THE COURT:  What time do you want to conduct the

12    deposition and where do you want to conduct it?

13         MR. REYES:  I would like to do it in my office.

14         THE COURT:  Okay.  Where is that located?

15         MR. REYES:  Boca Raton.  225 Northeast Mizer

16    Boulevard, suite 510, Boca Raton, Florida 33432.

17         THE COURT:  That is where the deposition is to occur.

18    If you agree on a time, that's fine.  If you can't agree on a

19    time, it is 10:00 o'clock in the morning December 22nd, 2014 at

20    that address.

21         If Mr. Goldstein does not show up, tell him to be

22    prepared for the marshals to come to his door to arrest him.

23    Do you understand that, Ms. Mayersohn?

24         MS. MAYERSOHN:  Yes, Your Honor.

25         THE COURT:  Prior to that, one week prior to that,

1   which would be December 15th, you are to again provide answers

2   to the request for production.  None of your responses are to

3   have any objections in them.

4           MS. MAYERSOHN:  Yes, Your Honor.

5           THE COURT:  You are to clearly answer it.  If

6   Mr. Goldstein is aware that the documents existed at one time,

7   he is to indicate where the documents are today.  Not just that

8   it is not in his custody or control.

9           Rather it is now with, you know, Mr. so and so with

10  Paladin or, you know, "It was destroyed, or I never had it.  It

11  is not in my possession, custody or control."

12          He is to give a detailed answer for any document that

13  he does not have that at one time existed in his knowledge, and

14  he is to be prepared at the deposition.

15          So he needs to do some research ahead of time.  He is

16  to be prepared to answer questions as to each of these requests

17  and where he believes the documents are.  What steps he took to

18  obtain those documents and what the results of those steps

19  were.

20          I mean, I agree with you.  You are correct.  If he

21  went to Mr. whoever is in charge of Paladin now or he contends

22  is in charge of Paladin and said, "Hey, I would like these

23  documents," and they say, "Sorry.  You are no longer an officer

24  of this company, we are not giving it to you," then that's

25  fine.

1          Then he is prepared to tell these gentlemen who he has

2     talked to and who he has made those requests of, and responding

3     that it is available in the public records, if it is available

4     in the public records, he is to go get it and provide it.

5          Okay.  That means it is available to him, not telling

6     them to go to the public records and get it.

7          By the way, stock ownership is not available in public

8     records.  At least not available through Sunbiz.  I mean, it

9     could be in some public records somewhere that somebody filed

10     in some lawsuit, but generally stock ownership is not something

11     that is open to the public for a non-traded company.

12          MR. SHALEK:  Your Honor?

13          THE COURT:  What?

14          MR. SHALEK:  May it please the court, Jeffrey Shalek

15     for the plaintiffs in this matter, Chaban and Paladin.

16          With regard to the others, the attorney, in fact,

17     Kivitz, North Star, North Star Maritime, Vernal, I have sent

18     the identical requests that Mr. Reyes has asked to them through

19     subpoenas or requests for production.

20          THE COURT:  Yes.

21          MR. SHALEK:  As Your Honor knows, we have had many

22     discovery hearings on getting them because the entity North

23     Star Miami has objected.  You have overruled the objection

24     once.  Judge Altonaga asked you to have a second hearing.

25          THE COURT:  Right.  Right.  They are not here now, so

1    I don't know if this is the appropriate time to discuss that.

2              MR. SHALEK:  Well, I understand that.

3              THE COURT:  Hold on.

4              MR. SHALEK:  Go ahead.

5              THE COURT:  My understanding is that they are now

6    required to provide those documents because Judge Altonaga has

7    denied their objection to my prior rulings.

8              MR. SHALEK:  Your Honor, nothing.  Still not a single

9    document to any of them.

10             THE COURT:  Right.  You can talk to them.  You need to

11   talk to them.  If they don't provide it, you need to set it

12   down for a hearing and they need to come in.

13             I mean, it is not appropriate to discuss that in any

14   detail today because their attorney is not here.

15             MR. SHALEK:  I agree, and I don't want to discuss it

16   in detail, but all I am saying is that if Mr. Reyes says that

17   these are in the control as defined by the Southern District of

18   Florida of Goldstein because of his relationship with entities,

19   you know, at the very least all I want because Judge Altonaga

20   did not put a date in her order is give them until the same

21   15th to produce the documents that they are supposed to produce

22   so at least there is a date so that Mr. --

23             THE COURT:  I told you I am not ruling on that without

24   opposing counsel here.

25             What you need to do is you need to call opposing

1    counsel.  You need to try to resolve that issue with him.  If

2    you are unable to, then you need to come back to me.

3          I am not going to rule on, you know, you asking me to

4    order him to provide something at a particular time when he is

5    not here to tell me why he can or can't.

6          MR. SHALEK:  That's fine.  Thank you, Your Honor.

7          MR. REYES:  One other housekeeping matter, Your Honor.

8          THE COURT:  You know, I will tell you something,

9    Mr. Reyes:  I mean, the fact that that he happens to know

10   Mr. Yelizarov, you know, generally would not come within the

11   definition of custody, possession or control.

12         What I am requiring him to do in this case, because of

13   how long we have been going through this, is to be prepared to

14   tell me to attempt to obtain those documents from each of the

15   people listed by Mr. Reyes, and then he can come and say, I

16   "contacted Mr. Yelizarov and he told me to go take a hike.  I

17   am not giving him the documents."

18         Then that's fine.  I mean, that's not good for them, I

19   guess, but if that is what happens, that is what happens.

20         MR. REYES:  Well, if he does that under oath, Your

21   Honor, then given what you just heard from Mr. Shalek because

22   they are at the point where there they need to produce it, and

23   Mr. Sayre is blocking it, then we will have to deal with

24   Mr. Sayre and/or Mr. Yelizarov, but I need that under oath.

25         THE COURT:  Yes.

1          MR. REYES:  And so I appreciate Your Honor giving us

2     the deposition.

3          One housekeeping matter, Your Honor.  You were using

4     the reference to Paladin when we are talking about Pinnacle.

5          THE COURT:  Yes.  I meant Pinnacle.

6          MR. REYES:  I just wanted the record to be clear in

7     case we order the transcript.

8          THE COURT:  Okay.  My mistake.

9          MR. REYES:  Not a problem.  Your Honor, on the motion

10    for the fees the first time --

11         THE COURT:  Yes.

12         MR. REYES:  -- Your Honor, I don't know what your

13    procedure is.  Do you rule on the paper or do you have a

14    hearing?

15         THE COURT:  Well, you are going to have to file.  Have

16    you discussed it with opposing counsel?

17         MR. REYES:  Yes.

18         MS. MAYERSOHN:  Yes.  I got a bill from opposing

19    counsel for almost $22,000.

20         THE COURT:  Okay.

21         MS. MAYERSOHN:  My client agreed to pay for his time

22    going to the hearing, for, you know, for his parking, for that

23    stuff, but not all of the other stuff that he didn't believe

24    was directly related to this.

25         THE COURT:  Okay.

1          MS. MAYERSOHN:  Mr. Reyes turned down the offer that I

2     had and wants that amount of money.

3          THE COURT:  Okay.

4          MS. MAYERSOHN:  And I can certainly understand

5     Mr. Goldstein being concerned that he be paying more money then

6     his lawyer is retained for an entire case for one hearing, and

7     the amounts.

8          Now, I know Your Honor had cautioned them the last

9     time to be, you know, careful in reference to the billing.

10         MS. REYES:  I mean, I don't have them with me.  I gave

11    them to counsel, but I will certainly file it with my motion.

12         It is itemized billings dealing with whether it be by

13    correspondence or motion or hearings, et cetera, all of the

14    time that we spent up until the October 28th hearing.

15         What I think Mr. Goldstein was offering was a partial

16    fee for that day and not any of the rest, and that's just not

17    acceptable to us.

18         THE COURT:  Well, I mean I don't think you get all of

19    the past.  You get the past from when he was not in substantial

20    compliance with either an order or, you know, your request.  So

21    for your original discovery request you don't get fees for the

22    subpoena, or I forget how you were again bringing him into the

23    case.

24         MR. REYES:  I did a request for production.  What I

25    did was from the moment that the request for production was

1    ignored and we had to enforce the time I spent as to him, not

2    everybody else in these matters, as to him I itemized and I

3    gave counsel time entries for all of those.

4            So we will file a motion so Your Honor can see those,

5    and I will do an affidavit explaining those fees.  I guess they

6    can respond and we will have a hearing or Your Honor will rule

7    on the paper.

8            THE COURT:  Yes.  Well, I mean I will have to decide

9    it after I see the paperwork.

10           MR. REYES:  Okay.  Then I will get that in.  What

11   about --

12           THE COURT:  Hold on.  Let me hear from Ms. Mayersohn

13   about this.

14           MS. MAYERSOHN:  I was just going to say some of the

15   time, for example, his conferring with Mr. Shalek regarding

16   discovery matters and strategy, I just don't see how that is

17   related to the last hearing.

18           Also, you know, I guess they had two different

19   attorneys, you know, working on this in reference to

20   everything, I mean, like I said, I don't have a problem.

21           Some of it just seemed related to the state court case

22   and some of it seemed to be related to other matters, and I can

23   certainly understand being a little shocked at an almost

24   $22,000 bill.

25           THE COURT:  Yes.  I agree.  All right.  Well, here is

1   what you are to do, Ms. Mayersohn:  How did you provide the

2   records?  Did you provide your billing records?

3       MR. REYES:  I gave my billing records.  I gave a draft

4   affidavit that I would be signing the file with Your Honor.  I

5   e-mailed it, and I said, "let me know about the fees," and I

6   didn't hear anything until about two minutes before this

7   hearing started.

8       THE COURT:  Okay.  So, Ms. Mayersohn, what you need to

9   do is for each entry on his billing records, you are to

10  indicate whether or not you are in agreement that your client

11  should compensate for that.

12      MS. MAYERSOHN:  Yes.

13      THE COURT:  Or you are not in agreement.  If you are

14  not in agreement, you are to give an indication of why you

15  believe that it is not relevant to the fees that I have ordered

16  in this matter.

17      MR. REYES:  And for today?

18      THE COURT:  And then you are to, after receiving that

19  you are to respond to her.  There may be some of them you agree

20  to.

21      MR. REYES:  Sure.  If she points out a mistake on my

22  part, Your Honor, I will absolutely take it out.

23      THE COURT:  Withdraw those and attempt to resolve the

24  matter.  If you can't, then file a motion with the Court.

25      MR. REYES:  Okay.  And is Your Honor awarding today,

1  the costs associated with our presentation today?

2          THE COURT:  What do you say about that?

3          MS. MAYERSOHN:  Respectfully, I would object to that

4  because, you know, I tried to contact Mr. Reyes.

5          MR. REYES:  When?

6          MS. MAYERSOHN:  In the e-mail that you provided.

7          THE COURT:  You need to talk to me and not to her.

8  The time to talk to her is before you come into the hearing.

9          MS. MAYERSOHN:  The e-mail was provided, I think it

10  was tab number 6.  If Your Honor takes a look at that, I said

11  to Mr. Reyes once briefly when I was putting together the drop

12  box and explaining to him how to get the documents, it might

13  not have been 6.

14          THE COURT:  It was 5.

15          MS. MAYERSOHN:  It was 5, I believe, and then if you

16  look at my e-mail, "I have not heard back from you.  I haven't

17  held any documents back."

18          MR. REYES:  And then there is my response, Your Honor.

19          MS. MAYERSOHN:  And I understand, but I don't have any

20  of those records, you know.  So I don't think that today's

21  hearing was necessitated.

22          I was unavailable last week myself personally, which

23  is when he wanted to take Mr. Goldstein's depo.  I had other

24  matters previously scheduled outside of the office.

25          Had Mr. Reyes, you know, contacted me and spoken to me

1   by phone, we could have certainly discussed, you know,

2   everything rather than having a hearing today, Your Honor.

3            MR. REYES:  Your Honor, you have confirmed the

4   violation of your order.  You had to strike the objections

5   again.

6            You had to order Mr. Goldstein to file a proper

7   response, all of which he should have done on his own without

8   me having to coerce counsel to do so.

9            Clearly we should be awarded fees for now having to

10  now obtain yet in order number 5 which I think it is against

11  him to comply with discovery, and Your Honor has been very

12  clear on the non-compliance on what you have asked him to do

13  and force the deposition because of the incredulous nature of

14  the responses.

15           So I mean I think it is unfair.  I don't want to be

16  here, but I have to put these materials together to show Your

17  Honor how unbelievable the responses are so Your Honor can see

18  what we are dealing with here, and you can see the responses

19  were clearly violative of your order.

20           I think that should be the beginning and the ending of

21  the analysis that my client should be awarded fees for having

22  to be here today.

23           I even asked counsel two days ago, I said, "Are you

24  going to withdraw the objections and produce the documents" in

25  an e-mail.  There was no response.

1          As I walked in today, I wrote that e-mail to

2    Ms. Mayersohn.  I wanted to have it in writing so we would not

3    have any issues.

4          So it would be unfair that I am here forcing

5    Mr. Goldstein, he has now had since June.  We are now at

6    Christmas to comply with discovery, and that we would bear

7    those fees, it seems unfair.

8          MS. MAYERSOHN:  Respectfully, Your Honor, I contacted

9    pretty much not every single person, but pretty much every

10   person on the list in reference to all of these things.

11         We filed objections for record purposes, but as I

12   explained to Mr. Reyes, we provided every single document

13   within our possession or control.

14         I attempted to get additional documentation.  I

15   understand he wants to depose Mr. Goldstein.  That is a

16   separate issue.  Coordination with my office would be, you

17   know, appreciated.

18         You know, Your Honor, respectfully in this particular

19   case he is an impleaded defendant.  His client owes my client

20   money.  Not the other way around.

21         I feel he is trying to use -- I mean, I know we are

22   past the discovery objections.  He is trying to use this to

23   assist Mr. Shalek's client.

24         It seems like the same discovery they are trying to

25   get.  That being said, we are trying to comply.

```
 1         Mr. Goldstein has taken this very seriously.  I don't
 2   think, you know, we should have had to have had a hearing in
 3   this particular case.  Certainly this could have been resolved
 4   by a call.  I don't think fees should be awarded against
 5   Mr. Goldstein, Your Honor.
 6         THE COURT:  Okay.  I think fees should be awarded in
 7   part.  I think that you should have been able to have better
 8   communications regarding the deposition of Mr. Goldstein, but I
 9   do find that your response to the requests for production is
10   violative of my order in which I indicated that all objections
11   were waived.
12         There was a specific request by I think Mr. Reyes'
13   associate or partner asking you to withdraw those objections
14   which you did not do, and I find that that was not
15   substantially justified.  So as a result of that, what is your
16   hourly fee, Mr. Reyes?
17         MR. REYES:  $400 in this matter, Your Honor.
18         THE COURT:  All right.  I am going to order that
19   Mr. Goldstein pay 3 hours of compensation to Mr. Reyes for his
20   preparation for this hearing and travel to the hearing and
21   attendance at the hearing today.
22         So that would be $1,200 to be paid within 4 weeks of
23   to today's date because I find that your position as to that
24   matter is not substantially justified.
25         There is a small part regarding the subpoena that I
```

1    find that, you know, as I said, there was substantial

2    justification for not having the deposition when Mr. Reyes

3    wanted it, and that is the kind of thing that should not have

4    come before me.  It should have been resolved by the parties.

5            All right.  What else can I help you with?  Anything

6    else?

7            MR. REYES:  No.

8            THE COURT:  Okay.  All right.  How much time do you

9    need to respond to her so I can get the attorney's fees thing

10   on track?

11           MS. MAYERSOHN:  I have a bunch of trials in the next

12   couple of weeks, and stuff.

13           MR. REYES:  I didn't hear the clerk's question, Your

14   Honor.

15           THE COURT:  About when she needs to let you know.

16           MS. MAYERSOHN:  Can we do that after the first of the

17   year, Your Honor?

18           THE COURT:  Give me a date.

19           MR. SHALEK:  To respond to your billing.

20           MR. REYES:  Oh.  Respond to my billings.  I am sorry.

21           MS. MAYERSOHN:  Like the 6th of January I should be

22   back in.

23           THE COURT:  By the 6th of January you are to provide

24   him with a detailed explanation if you agree or disagree with

25   each of his entries.  Within a week of it then, the two parties

1   are to confer in an attempt to resolve those disputes.  If you

2   are unable to, how much time do you want to file a motion?

3        MR. REYES:  At the conclusion of those 14 days I will

4   file a motion.  So January 20th?

5        THE COURT:  Okay.  So by January 12th you are, it was

6   the 6th.  By January 13th you are to confer.  If you are unable

7   to resolve whatever, in your motion, in other words, I don't

8   want to address the stuff that she is agreeing to.  You can

9   indicate in there that she has agreed to that, but I want to

10   know what is left, and I will make a decision on that.

11        MS. MAYERSOHN:  Your Honor?

12        THE COURT:  Yes.

13        MS. MAYERSOHN:  One thing that was brought to my

14   attention, I understand from Mr. Sayre's office that there is a

15   mediation that is supposed to happen.  I think it is on or

16   before January 15th.

17        Can we push the date so that this is afterwards?

18   Because if there is a mediation, perhaps these issues could be

19   resolved.  I don't know.

20        MR. REYES:  We are not invited to that, Your Honor, if

21   there is a mediation.  So I don't know anything about it.

22        THE COURT:  When is the mediation?

23        MS. MAYERSOHN:  I don't know.  Mr. Sayre's office,

24   when I spoke to him --

25        MR. SHALEK:  May it please the court, in the

1  intervention claim between North Star and my clients, Judge

2  Altonaga has ordered that a mediation be held to try and

3  resolve those claims.

4       MR. REYES:  Your Honor, it is curious that

5  Mr. Goldstein supposedly has had his shares taken and he is now

6  Pinnacle, and yet he is going to participate in the mediation,

7  and counsel made a comment a moment ago that he is owed money

8  from us.

9       It is all just very, very unusual.  I mean, he still

10  claims that he is Pinnacle and he is at the mediation, and the

11  money is owed to him.  Yet supposedly --

12       THE COURT:  Well, I don't know who is going to be at

13  the mediation.  I don't really care about it.  I don't want to

14  hear about that.  Well, I mean how is that going to affect your

15  impleaded defendants at the mediation?

16       MR. REYES:  Your Honor, I don't know.  I mean, I guess

17  if the lawsuit goes away we won't be impled defendants, but

18  that was not coordinated with us.  I didn't even know it was

19  going forward.

20       MS. MAYERSOHN:  I haven't been invited to the party,

21  either, but I was told it might resolve all outstanding issues

22  in the case.

23       THE COURT:  All right.  I am going to require that --

24  I mean, that way you will know what the attorneys' fees are, if

25  it becomes an issue, assuming Mr. Reyes wants to be paid by,

1  you know, I think we should go ahead and try to define the fees

2  that are requested.  It might be helpful in resolving the case.

3  So I am going to keep it on the time line I just set.

4          MR. REYES:  Okay, Your Honor.

5          THE COURT:  Obviously if the case revolves, then, you

6  know, you can withdraw your motion or not file your motion and

7  indicate it to the court that it has been resolved.

8          MR. REYES:  Yes, sir.

9          THE COURT:  Okay.  I will give you your notebook back

10 here.  Ms. Mayersohn, this is yours.

11         MS. MAYERSOHN:  Oh.  Thank you, Your Honor.

12         THE COURT:  All right.  You all have a good holiday.

13         MR. REYES:  You, too, Your Honor.

14         THE COURT:  Okay.  Court is in recess.

15         (Whereupon the proceedings were concluded)

16

17

18

19

20

21

22

23

24

25

```
1
2
3                    C E R T I F I C A T E
4          I hereby certify that the foregoing is an accurate
5     transcription of proceedings in the above-entitled matter.
6
      DECEMBER 21, 2014          S/JERALD M. MEYERS
7     _____          _____
8          DATE                  JERALD M. MEYERS, RPR-CM
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```